Case 1.18-cv-04115-PAE    Document 12-1    Filed 05/16/18    Page 1 of 157

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ALEXANDRA CANOSA,

Plaintiff,

-against-

DIRK ZIFF, TIM SARNOFF, MARC LASRY,
TARAK BEN AMMAR, LANCE MAEROV,
RICHARD KOENIGSBERG, PAUL TUDOR JONES,
JAMES L. DOLAN, JEFF SACKMAN, THE
WEINSTEIN COMPANY HOLDINGS, LLC, THE
WEINSTEIN COMPANY, LLC, HARVEY
WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10

Defendants.

---

Index No. 161254/2017

**SUMMONS**

---

Plaintiff designates New York County as the place of trial, based on location of occurrence, Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC county of incorporation, Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC, Defendants' place of business, and Defendants' county of residence

**TO THE ABOVE-NAMED DEFENDANTS:**

　　　　**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, NY
　　　　April 30, 2018

　　　　　　　　　　RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
　　　　　　　　　　Attorneys for Plaintiff


　　　　　　　　　　_____
　　　　　　　　　　By:　　Jeremy A. Hellman, Esq.
　　　　　　　　　　551 Fifth Avenue, 29th Floor
　　　　　　　　　　New York, NY 10176
　　　　　　　　　　Tel: (212) 684-1880
　　　　　　　　　　Fax: (212) 689-8156
　　　　　　　　　　jhellman@rheingoldlaw.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| ALEXANDRA CANOSA,<br><br>Plaintiff,<br><br>-against-<br><br>DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10<br><br>Defendants. | Index No. 161254/2017<br><br><br>**COMPLAINT**<br><br><br>PLAINTIFF DEMANDS<br>A TRIAL BY JURY |

Plaintiff ALEXANDRA CANOSA, complaining of Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 (hereinafter referred to as "Defendants") by her attorneys Rheingold Giuffra Ruffo & Plotkin, LLP, respectfully sets forth and alleges the following, upon information and belief:

## PARTIES

1. Plaintiff, Alexandra Canosa has worked for or with Harvey Weinstein, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC in various capacities since 2010.

2. Plaintiff designates New York County as the place of trial, based on location of some of the occurrences complained of herein, Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's county of incorporation, Defendants' place of business, and Defendants' county of residence.

- 2 -

Case 1.18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 3 of 157

3.      That at all times hereinafter mentioned, Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC. was and still is a foreign limited liability company, duly organized and existing under and by virtue of the laws of the State of Delaware.

4.      That at all times hereinafter mentioned, Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC was and still is a business entity, doing business in the State of New York.

5.      That at all times herein mentioned, Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC regularly did and/or solicited business and/or engaged in a persistent course of conduct or derived substantial revenue from goods used or consumed or services rendered within the State of New York.

6.       That at all times herein mentioned, Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC derived substantial revenue from interstate and/or international commerce and expected and/or should reasonably have expected that if it committed a tortious act without the State of New York that said tortious act would have consequences within the State of New York.

7.      That at all times hereinafter mentioned, Defendant THE WEINSTEIN COMPANY, LLC. was and still is a foreign limited liability company, duly organized and existing under and by virtue of the laws of the State Delaware.

8.      That at all times hereinafter mentioned, Defendant THE WEINSTEIN COMPANY, LLC was and still is a business entity, doing business in the State of New York.

9.      That at all times herein mentioned, Defendant THE WEINSTEIN COMPANY, LLC regularly did and/or solicited business and/or engaged in a persistent course of conduct or derived substantial revenue from goods used or consumed or services rendered within the State of New York.

10.     That at all times herein mentioned, Defendant THE WEINSTEIN COMPANY, LLC derived substantial revenue from interstate and/or international commerce and expected and/or should reasonably have expected that if it committed a tortious act without the State of New York that said tortious act would have consequences within the State of New York.

11.     Defendant Harvey Weinstein is a citizen of the United States and a resident of New York, New York. He is a former co-chairman of Miramax, and was a director and employee of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC from 2005 to October 2017.

12.     Harvey Weinstein was an agent, director, owner and employee of the Weinstein Company from 2010 through October 2017. At the time of the time of the acts alleged herein there was an actual or assumed agency relationship between Harvey Weinstein and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, as well as between Harvey Weinstein and its Board of Directors.

13.     Defendant Robert Weinstein is a citizen of the United States and a resident of Greenwich, Connecticut. Robert Weinstein is the brother of Harvey Weinstein, the former chairman of Miramax, and is and was a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC from 2005 to the present.

14.     Robert Weinstein has known of Harvey Weinstein's pattern and practice of predatory sexual conduct toward women, including during the time the brothers worked at Miramax and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

15.     Defendant Dirk Ziff is a citizen of the United States and a resident of New York, New York. Dirk Ziff was a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. Ziff knew of Harvey Weinstein's pattern and practice of

- 4 -

predatory sexual conduct toward women from both his personal relationship with Harvey Weinstein and his position as a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

16.     Defendant Tim Sarnoff is a citizen of the United States and a resident of Westlake Village, California. Tim Sarnoff was a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. Sarnoff knew of Harvey Weinstein's pattern and practice of predatory sexual conduct toward women from both his personal relationship with Harvey Weinstein and his position as a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

17.     Defendant Marc Lasry is a citizen of the United States and resident of New York, New York. Marc Lasry was a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. Lasry knew of Harvey Weinstein's pattern and practice of predatory sexual conduct toward women from both his personal relationship with Harvey Weinstein and his position as a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

18.     Defendant Tarak Ben Anmar is a citizen of Tunisia and currently resides in France. Tarak Ben Anmar was a director at THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. Anmar knew Harvey Weinstein's pattern and practice of predatory sexual conduct toward women from both his position as a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. Anmar admitted that he and the THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC Board were aware that Weinstein had been accused of groping model Anmar Gutierrez in 2015. According to Anmar, the majority of the then-THE WEINSTEIN COMPANY

Case 1:18-cv-04115-PAE  Document 12-1  Filed 05/16/18  Page 6 of 157

HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC Board members supported renewing Harvey Weinstein's contract despite the serious assault allegations.

19.     Defendant Lance Maerov is a citizen of the United States and a resident of Bedford, New York. Lance Maerov was a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, including as a non-voting observer from 2005 to 2013 and then as a voting member through the present. Maerov Knew of Harvey Weinstein's pattern and practice of predatory sexual conduct toward women from his position as a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. According to Maerov, for years prior to the 2015 Gutierrez allegations, he had heard from THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees about complaints against Harvey Weinstein.

20.     Defendant Richard Koenigsberg is a citizen of the United States and a resident of Franklin Lakes, New Jersey. Richard Koenigsberg was a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC from 2005 through October 2017. Koenigsberg Knew of Harvey Weinstein's pattern and practice of predatory sexual conduct toward women from his personal relationship with Harvey Weinstein and his position as a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

21.     Defendant Jeff Sackman is a citizen of the United States and, on information and belief, a resident of Toronto, Canada. Sackman was a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC from, on information and belief, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's inception to 2015. Sackman Knew of Harvey Weinstein's pattern and practice of predatory sexual conduct toward women from his personal relationship with Harvey Weinstein and his position as

a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

22.     Defendant James L. Dolan is a citizen of the United States and a resident of Miller Place, New York. Dolan was a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. Dolan Knew of Harvey Weinstein's pattern and practice of predatory sexual conduct toward women from his personal relationship with Harvey Weinstein and his position as a director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

23.     By virtue of their positions as a board member of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, each of the Director Defendants availed themselves of the laws of New York and are subject to jurisdiction in New York.

24.     This Court has jurisdiction and venue over this case because it is a court of general jurisdiction in law and equity in the State of New York.

25.     Venue is proper pursuant to CPLR 503(a) because substantial parts of the event or commissions giving rise to the claims occurred in this jurisdiction, the corporate Defendants, The Weinstein Company and Weinstein Company Holdings, LLC maintain their principal offices in New York City and are incorporated therein, and individual defendants including Harvey Weinstein reside in this County.

26.     That Defendants are in violation of, among other things, New York City Human Rights Law § 296.1(a), New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* which prohibits sexual harassment in the workplace and New York Consolidated Laws NY CPLR § 213-C, Sexual Harassment, New York Penal Code § 240.30 (Assault and Battery).  The causes of action are based on repeated sexual harassment, sexual intimidation, emotional abuse, assault and battery of

Case 1.18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 8 of 157

Plaintiff by Defendant Harvey Weinstein over a period of years through 2015. The foregoing events and actions of Harvey Weinstein took place in conjunction with Plaintiff's employment, in various capacities, for Harvey Weinstein and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

### ACTIONS OF HARVEY WEINSTEIN

27.     Over the course of his misconduct and up to September 2017, Harvey Weinstein constantly threatened Plaintiff and made it clear that if she did not succumb to his demands for sexual contact or if she exposed his unwanted conduct there would be retaliation, including humiliation, the loss of her job and loss of any ability to work in the entertainment business.

28.     That on August 12, 2010, in the Tribeca Grand hotel in Manhattan, New York, Harvey Weinstein sexually assaulted plaintiff.

29.     That from November, 2011 to March, 2012, Harvey Weinstein sexually assaulted, verbally assaulted, bullied and intimidated plaintiff multiple times in Los Angeles, California, in the Montage Hotel or Peninsula Hotel.

30.     That on or about May 2, 2012, in the Tribeca Grand hotel in Manhattan, New York, Harvey Weinstein sexually assaulted and/or assaulted plaintiff.

31.     That on or about October 22, 2012, Harvey Weinstein sexually assaulted plaintiff at the Peninsula Hotel in Los Angeles, California.

32.     That on or around December 20, 2012, in the Tribeca Grand Hotel in Manhattan, New York, Harvey Weinstein intimidated plaintiff and forced plaintiff to perform oral sex and threatened and bullied plaintiff.

33.     That between 2010 and 2014, Harvey Weinstein sexually assaulted, raped, forced plaintiff into sex acts, verbally abused and threatened plaintiff numerous times.

34.     That on May 29, 2014, in Malaysia, Harvey Weinstein sexually assaulted and raped plaintiff.

35.     That in the week following December 2, 2014, Harvey Weinstein threatened and verbally abused Plaintiff in Manhattan, New York.

36.     That on or about December 21, 2014, in the Peninsula Hotel in Beverly Hills, California, Harvey Weinstein forced plaintiff into performing a sex act.

37.     That on or about June 24, 2015, in Harvey Weinstein's room in the Four Seasons Hotel in Budapest, Hungary, Harvey Weinstein physically assaulted and verbally abused plaintiff.

38.     That on August 29, 2017, Harvey Weinstein verbally threatened plaintiff not to speak to anyone about his abuse of plaintiff, which was one of many such occurrences starting in 2010.

39.     On many occasions, Harvey Weinstein insisted on meeting with Plaintiff in isolated environments for business purposes, made sure that no other persons or bystanders were around when having business meetings with plaintiff, demanded sexual contact, and threatened plaintiff if she would not give him what he wanted, and forcing himself on plaintiff despite repeated requests to stop.

40.     Defendants, knew or should have known about Harvey Weinstein's conduct, and did not act to correct or curtail such activity.  Instead, Defendants facilitated, hid, and supported his unlawful conduct.

41.     HARVEY WEINSTEIN made *quid pro quo* offers or demands of sexual favors in exchange for career advancement at THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, and in general, or to avoid adverse employment consequences at THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC or anywhere else. HARVEY WEINSTEIN's overt *quid pro quo* sexual harassment further

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 10 of 157

contributed to the hostile work environment within THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and its subsidiaries.

42.     The *quid pro quo* harassment took several forms, including demands for sex or intimate physical contact in exchange for career advancement, or qualifying career opportunities on flirtatious or otherwise attractive dress and behavior.

43.     Individuals who complained to Harvey Weinstein or to the Human Resources Department of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, for similar transgressions as those complained of herein were subject to retaliation by HARVEY WEINSTEIN as a result of their complaints.

44.     Defendant Harvey Weinstein treated plaintiff and other women less well than others, because of their gender.

45.     Defendant Harvey Weinstein repeatedly and persistently treated female employees less well than male employees through gender-based hostile workplace harassment, quid pro quo harassment, and discrimination.

46.     Defendant Harvey Weinstein similarly sexually assaulted and threatened numerous other women similarly situated to plaintiff Alexandra Canosa, before these aforesaid acts to Plaintiff Alexandra Canosa, yet nothing was done to prevent future acts, including those complained of herein.

47.     Harvey Weinstein used his power in the movie industry, physical power and personality to overwhelm and subdue and threaten Plaintiff so that she would not refuse his advances.  Any objections to his conduct were met with anger and demands immediately to accede to his wishes or to face adverse consequences. Harvey Weinstein created an environment in which there was no choice but to do his bidding or suffer dire consequences both physically and to plaintiff's career.

48.     Pursuant to the doctrine of equitable estoppel, all of plaintiff's claims alleged herein are timely made as, for as long as Harvey Weinstein was in power (until less than a year ago) at THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, plaintiff was induced by fraud, misrepresentations or deception to refrain from filing any lawsuit, as she received numerous verbal threats to her career by Harvey Weinstein if she were to say anything to anyone about Harvey Weinstein's illicit conduct complained of herein, as well as physical threats to her well-being if she did so.

49.     As described herein, all defendants were aware of, ratified and condoned said threats that were ever received from any other victim, and worked to cover up any wrongdoing.

50.     All of plaintiff's claims are further timely as all of the acts committed by Harvey Weinstein, and acts/inactions by all defendants herein, were interrelated, a collective act, and were a continuous violation and abuse.

## COMPANY FAILURES AND ACTS

51.     THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC were aware of Harvey Weinstein's history of sexual misconduct but facilitated his conduct by, among other things: (1)  using employees to arrange for meeting in Weinstein's hotel rooms even though he had a history of misconduct in "business meetings" in such places; (2) paying off multiple claims of sexual misconduct without adequate corrective actions; (3) continuing to allow Weinstein to operate improperly, and (4) attempting to keep Weinstein's misconduct a secret thereby allowing Weinstein to continue his predatory and threatening behavior to Plaintiff who thought her circumstance was one that she suffered alone and therefore no one would believe her.

52.     That Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC solicited, requested, commanded, importuned, or intentionally aided Harvey Weinstein in engaging in the illicit conduct complained of herein.

53.     That Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC omitted discharging a specific duty of affirmative performance imposed on corporations by law.

54.     That Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC had notice of Harvey Weinstein's repeated unlawful conduct with plaintiff and other women which amounted to a recurring issue, yet failed to investigate further, and/or failed to take reasonable steps to become aware of such recurring issues, or to do anything about them.

55.     That the illicit acts of Harvey Weinstein complained of herein were authorized, solicited, requested, commanded, or recklessly tolerated by Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

56.     That the illicit actions of Harvey Weinstein complained of herein were engaged in by Harvey Weinstein as an agent of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC while acting within the scope of his employment and in behalf of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, and the offense committed by Harvey Weinstein was a crime and/or violation, one defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation, or an offense set forth in title twenty-seven of article seventy-one of the environmental conservation law.

57.     That Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC caused to be performed the illicit acts of Harvey Weinstein complained of herein, in the name of or in behalf of Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

58.     Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC was aware of the illicit activities committed by HARVEY WEINSTEIN complained of herein, and numerous other instances of similar conduct committed against other women, and failed to do anything about same or to investigate further.

59.     That Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC solicited, requested, commanded, importuned, or intentionally aided Harvey Weinstein in engaging in the illicit conduct complained of herein.

60.     That Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC omitted discharging a specific duty of affirmative performance imposed on corporations by law.

61.     That the illicit acts of Harvey Weinstein complained of herein were authorized, solicited, requested, commanded, or recklessly tolerated by the Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

62.     That the illicit actions of Harvey Weinstein complained of herein were engaged in by Harvey Weinstein as an agent of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC while acting within the scope of his employment and in behalf of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, and the offense committed by Harvey Weinstein was a crime and/or violation defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation, or an

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 14 of 157

offense set forth in title twenty-seven of article seventy-one of the environmental conservation law.

63.     That Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC caused to be performed the illicit acts of Harvey Weinstein complained of herein, in the name of or in behalf of Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

64.     THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC failed to: further investigate to discover the nature and extent of the misconduct; absolutely prohibit such misconduct; restrict HARVEY WEINSTEIN's ability to hire or supervise employees and his use of corporate resources in order to avoid future recurrence of such misconduct; or terminate HARVEY WEINSTEIN's employment altogether.

65.     Instead of investigating and taking prompt corrective action, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC used settlements that contained strict Non-Disclosure Agreements to keep law enforcement, the public, and even other THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees from discovering the extensive allegations of misconduct against HARVEY WEINSTEIN.

66.     THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC itself entered into several of these Non-Disclosure agreements -containing settlements with company employees. Many witnesses to HARVEY WEINSTEIN's unlawful conduct separately were subject to broad Non-Disclosure Agreements pursuant to their THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employment agreements, preventing them from revealing their own observations of misconduct to law

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 15 of 157

enforcement as well. In this way, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN enabled HARVEY WEINSTEIN's unlawful conduct to continue far beyond the date when, through reasonable diligence, it should have been stopped.

67.     That THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC lacked an effective process for reporting and investigating complaints of sexual harassment or other sexual misconduct, as is required by law: it did not train employees on sexual harassment policies or laws; it did not have a meaningful or consistent process for documenting and preserving claims of sexual harassment or other misconduct; and, when individuals did complain, Human Resources was not empowered to address claims related to HARVEY WEINSTEIN.

68.     THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC did not adequately investigate complaints made regarding acts of wrongdoing committed by HARVEY WEINSTEIN, did not act to protect employees and persons such as plaintiff, or prevent HARVEY WEINSTEIN from engaging in recurring conduct.

69.     HARVEY WEINSTEIN was only able to engage in repeated and persistent unlawful conduct because of the failure of key members of Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's failing to ensure that the company complied with relevant nondiscrimination laws and prevent its executives from engaging in unlawful conduct while representing the company. Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's acquiescence renders it responsible for HARVEY WEINSTEIN's misconduct on separate grounds.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 16 of 157

70.     Individuals who complained to Harvey Weinstein or to the Human Resources Department of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, for similar transgressions as those complained of herein were subject to retaliation by HARVEY WEINSTEIN as a result of their complaints.

71.     THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's decision to avoid utilizing their power to investigate credible claims of misconduct, and to shield HARVEY WEINSTEIN from consequences of that misconduct, enabled HARVEY WEINSTEIN to continue victimizing employees of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and coworkers.

72.     THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC failed to undertake efforts that would have resulted in discovery of even more of HARVEY WEINSTEIN's prior misconduct, or to do anything about said instances that they did know about.

73.     Through the actions and inactions described above, Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC repeatedly and persistently violated the New York State Human Rights Laws and New York City Human Rights Laws by subjecting employees to a sex-based hostile work environment, targeting female employees for *quid pro quo* harassment, and otherwise discriminating against female employees in the terms, conditions, and privileges of employment.

74.     The conduct and inactions of Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC complained of herein was willful, wanton, and malicious.

75.     Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC repeatedly and persistently aided and abetted wrongful conduct, namely, the

Case 1:18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 17 of 157

gender-based hostile work harassment of, *quid pro quo* harassment of, and discrimination against female employees by HARVEY WEINSTEIN.

76.     Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC condoned and/or acquiesced in HARVEY WEINSTEIN's sexual harassment of and gender-based discrimination against female employees.

77.     Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC knowingly, repeatedly, and persistently, deprived women of equal treatment in terms, conditions, and privileges of employment and of the right to be free from severe or pervasive hostile treatment because of their sex.

78.     By reason of the conduct alleged above, Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC discriminated against persons based on sex in violation of New York Civil Rights Law §40-c.

79.     Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC negligence in supervising and/or retaining HARVEY WEINSTEIN was a substantial factor in causing Plaintiff harm.

80.     It was foreseeable that Harvey Weinstein would engage in sexual and physical misconduct if Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC continued to allow Harvey Weinstein to have private business meetings with women.

81.     Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC knew that Harvey Weinstein was using his power and position to coerce women into engaging in physical and sexual contact and knew that this physical and sexual misconduct would cause harm.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 18 of 157

82.     Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC failed to institute corrective measures to protect women coming into contact with Harvey Weinstein, including Plaintiff, from sexual misconduct despite Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC possessing actual notice of Harvey Weinstein's sexually inappropriate behavior. Such acts and omissions demonstrate a conscious disregard of the safety of others.

83.     Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC were aware of the probable dangerous consequences of failing to remove or adequately supervise Harvey Weinstein. In failing to do so, Defendants THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC acted with actual malice and with conscious disregard to Plaintiff Alexandra Canosa's safety.

84.     As a direct and proximate result of Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC conduct and failure to act, Plaintiff was a victim of Harvey Weinstein's sexual and physical misconduct.

85.     The sexual misconduct has caused Plaintiff to suffer continuing, severe and permanent psychological, pain and suffering and emotional stress, and the loss of enjoyment of life.

## ROBERT WEINSTEIN'S FAILURES AND ACTS

86.     That Defendant ROBERT WEINSTEIN solicited, requested, commanded, importuned, or intentionally aided Harvey Weinstein in engaging in the illicit conduct complained of herein.

87.     That Defendant ROBERT WEINSTEIN omitted discharging a specific duty of affirmative performance imposed on corporations by law.

88.     That Defendant ROBERT WEINSTEIN had notice of Harvey Weinstein's repeated unlawful conduct with plaintiff and other women which amounted to a recurring issue, yet failed

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 19 of 157

to investigate further, and/or failed to take reasonable steps to become aware of such recurring issues.

89.     That the illicit acts of Harvey Weinstein complained of herein were authorized, solicited, requested, commanded, or recklessly tolerated by the Defendant ROBERT WEINSTEIN.

90.     That the illicit actions of Harvey Weinstein complained of herein was engaged in by Harvey Weinstein as an agent of ROBERT WEINSTEIN while acting within the scope of his employment and in behalf of ROBERT WEINSTEIN, and the offense committed by Harvey Weinstein was a crime and/or a violation, defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation, or an offense set forth in title twenty-seven of article seventy-one of the environmental conservation law.

91.     That Defendant ROBERT WEINSTEIN caused to be performed the illicit acts of Harvey Weinstein complained of herein, in the name of or in behalf of Defendant ROBERT WEINSTEIN.

92.     Defendant ROBERT WEINSTEIN was aware of the illicit activities committed by HARVEY WEINSTEIN complained of herein, and numerous other instances of similar conduct committed against other women, and failed to do anything about same or to investigate further.

93.     That Defendant ROBERT WEINSTEIN solicited, requested, commanded, importuned, or intentionally aided Harvey Weinstein in engaging in the illicit conduct complained of herein.

94.     That Defendant ROBERT WEINSTEIN omitted discharging a specific duty of affirmative performance imposed on corporations by law.

95.     That the illicit acts of Harvey Weinstein complained of herein were authorized, solicited, requested, commanded, or recklessly tolerated by the Defendant ROBERT WEINSTEIN.

96.     That the illicit actions of Harvey Weinstein complained of herein was engaged in by Harvey Weinstein as an agent of ROBERT WEINSTEIN while acting within the scope of his

employment and in behalf of ROBERT WEINSTEIN, and the offense committed by Harvey Weinstein was a crime and/or violation, one defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation, or an offense set forth in title twenty-seven of article seventy-one of the environmental conservation law.

97.    That Defendant ROBERT WEINSTEIN caused to be performed the illicit acts of Harvey Weinstein complained of herein, in the name of or in behalf of Defendant ROBERT WEINSTEIN.

98.    ROBERT WEINSTEIN failed to: further investigate to discover the nature and extent of the misconduct; absolutely prohibit such misconduct; restrict HARVEY WEINSTEIN's ability to hire or supervise employees and his use of corporate resources in order to avoid future recurrence of such misconduct; or terminate HARVEY WEINSTEIN's employment altogether.

99.    Instead of investigating and taking prompt corrective action, Robert Weinstein used settlements that contained strict Non-Disclosure Agreements to keep law enforcement, the public, and even other THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees from discovering the extensive allegations of misconduct against HARVEY WEINSTEIN. THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC itself entered into several of these Non-Disclosure agreements - containing settlements with company employees.

100.    Many witnesses to HARVEY WEINSTEIN's unlawful conduct separately were subject to broad Non-Disclosure Agreements pursuant to their THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employment agreements, preventing them from revealing their own observations of misconduct to law enforcement as well. In this way, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and

ROBERT WEINSTEIN enabled HARVEY WEINSTEIN's unlawful conduct to continue far beyond the date when, through reasonable diligence, it should have been stopped.

101. Defendant ROBERT WEINSTEIN did not adequately investigate complaints made regarding acts of wrongdoing committed by HARVEY WEINSTEIN, did not act to protect employees and persons such as plaintiff, or prevent HARVEY WEINSTEIN from engaging in recurring conduct.

102. HARVEY WEINSTEIN was only able to engage in repeated and persistent unlawful conduct because of the failure of ROBERT WEINSTEIN to ensure that he and the aforesdaid companies complied with relevant nondiscrimination laws and prevent their executives from engaging in unlawful conduct while representing the company.

103. Defendant ROBERT WEINSTEIN's acquiescence also renders him responsible for HARVEY WEINSTEIN's misconduct.

104. ROBERT WEINSTEIN, as co-owner, co-Chairman, and co-CEO, was responsible for maintaining a safe workplace, free of sexual harassment and other unlawful conduct. Yet instead of doing so, ROBERT WEINSTEIN acquiesced in allowing HARVEY WEINSTEIN to create a hostile work environment and engage in sexual misconduct that was known to ROBERT WEINSTEIN, of which he was responsible for preventing.

105. ROBERT WEINSTEIN's decision to avoid utilizing his power to investigate credible claims of misconduct, and to shield HARVEY WEINSTEIN from consequences of that misconduct, enabled HARVEY WEINSTEIN to continue victimizing employees of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and coworkers.

106.    ROBERT WEINSTEIN failed to undertake efforts that may have resulted in discovery of at least a portion of HARVEY WEINSTEIN's prior misconduct.

107.    Through the actions and inactions described above, Defendant ROBERT WEINSTEIN repeatedly and persistently violated the New York State Human Rights Laws and New York City Human Rights Laws by subjecting employees to a sex-based hostile work environment, targeting female employees for *quid pro quo* harassment, and otherwise discriminating against female employees in the terms, conditions, and privileges of employment.

108.    The conduct and inactions of ROBERT WEINSTEIN complained of herein were willful, wanton, and malicious.

109.    Defendant ROBERT WEINSTEIN repeatedly and persistently aided and abetted wrongful conduct, namely, the gender-based hostile work harassment of, *quid pro quo* harassment of, and discrimination against female employees by HARVEY WEINSTEIN.

110.    Defendant ROBERT WEINSTEIN condoned and/or acquiesced in HARVEY WEINSTEIN's sexual harassment of and gender-based discrimination against female employees.

111.    Defendant ROBERT WEINSTEIN has knowingly, repeatedly, and persistently, deprived women of equal treatment in terms, conditions, and privileges of employment and of the right to be free from severe or pervasive hostile treatment because of their sex.

112.    By reason of the conduct alleged above, Defendant ROBERT WEINSTEIN discriminated against persons based on sex in violation of New York Civil Rights Law §40-c.

113.    Defendant ROBERT WEINSTEIN's negligence in supervising and/or retaining HARVEY WEINSTEIN was a substantial factor in causing Plaintiff harm.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 23 of 157

114.    It was foreseeable that Harvey Weinstein would engage in sexual misconduct if Defendant ROBERT WEINSTEIN continued to allow Harvey Weinstein to have private business meetings with women.

115.    Defendant ROBERT WEINSTEIN knew that Harvey Weinstein was using his power and position to coerce women into engaging in sexual contact and knew that this sexual misconduct would cause harm.

116.    Defendant ROBERT WEINSTEIN failed to institute corrective measures to protect women coming into contact with Harvey Weinstein, including Plaintiff, from sexual misconduct despite Defendant ROBERT WEINSTEIN possessing actual notice of Harvey Weinstein's sexually inappropriate behavior. Such acts and omissions demonstrate a conscious disregard of the safety of others.

117.    Defendant ROBERT WEINSTEIN was aware of the probable dangerous consequences of failing to remove or adequately supervise Harvey Weinstein. In failing to do so, Defendant ROBERT WEINSTEIN acted with actual malice and with conscious disregard to Plaintiff Alexandra Canosa's safety.

118.    As a direct and proximate result of Defendant ROBERT WEINSTEIN's conduct and failure to act, Plaintiff was a victim of Harvey Weinstein's sexual misconduct. The sexual misconduct has caused Plaintiff to suffer continuing, severe and permanent psychological, pain and suffering and emotional stress, and the loss of enjoyment of life.

### BOARD OF DIRECTORS' FAILURES AND ACTS

119.    That Defendant DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN

solicited, requested, commanded, importuned, or intentionally aided Harvey Weinstein in engaging in the illicit conduct complained of herein.

120.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN omitted discharging a specific duty of affirmative performance imposed on corporations/directors by law.

121.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN had notice of Harvey Weinstein's repeated unlawful conduct with plaintiff and other women which amounted to a recurring issue, yet failed to investigate further, and/or failed to take reasonable steps to become aware of such recurring issues.

122.    That the illicit acts of Harvey Weinstein complained of herein were authorized, solicited, requested, commanded, or recklessly tolerated by the Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN.

123.    That the illicit actions of Harvey Weinstein complained of herein were engaged in by Harvey Weinstein as an agent of DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN while acting within the scope of his employment and in behalf of DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN, and the offense committed by Harvey Weinstein was a crime and/or violation, one defined by a statute which clearly indicates a

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 25 of 157

legislative intent to impose such criminal liability on a corporation, or an offense set forth in title twenty-seven of article seventy-one of the environmental conservation law.

124.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN caused to be performed that illicit acts of Harvey Weinstein complained of herein, in the name of or in behalf of Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN.

125.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN was aware of the illicit activities committed by HARVEY WEINSTEIN complained of herein, and numerous other instances of similar conduct committed against other women, and failed to do anything about same or to investigate further.

126.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN solicited, requested, commanded, importuned, or intentionally aided Harvey Weinstein in engaging in the illicit conduct complained of herein.

127.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN omitted discharging a specific duty of affirmative performance imposed on corporations and their directors by law.

128.    That the illicit acts of Harvey Weinstein complained of herein were authorized, solicited, requested, commanded, or recklessly tolerated by the Defendants DIRK ZIFF, TIM SARNOFF,

- 25 -

MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN.

129.    That the illicit actions of Harvey Weinstein complained of herein were engaged in by Harvey Weinstein as an agent of DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN while acting within the scope of his employment, and the offense committed by Harvey Weinstein was a crime and/or violation, one defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation, or an offense set forth in title twenty-seven of article seventy-one of the environmental conservation law.

130.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN caused to be performed that illicit acts of Harvey Weinstein complained of herein, in the name of or in behalf of Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN.

131.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN failed to: further investigate to discover the nature and extent of the misconduct; absolutely prohibit such misconduct; restrict HARVEY WEINSTEIN's ability to hire or supervise employees and his use of corporate resources in order to avoid future recurrence of such misconduct; or terminate HARVEY WEINSTEIN's employment altogether.

132.    Instead of investigating and taking prompt corrective action, Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD

KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN used settlements that contained strict Non-Disclosure Agreements to keep law enforcement, the public, and even other THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees from discovering the extensive allegations of misconduct against HARVEY WEINSTEIN. THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC itself entered into several of these Non-Disclosure agreements containing settlements with company employees. Many witnesses to HARVEY WEINSTEIN's unlawful conduct separately were subject to broad Non-Disclosure Agreements pursuant to their THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employment agreements, preventing them from revealing their own observations of misconduct to law enforcement as well. In this way, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN enabled HARVEY WEINSTEIN's unlawful conduct to continue far beyond the date when, through reasonable diligence, it should have been stopped.

133.   Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN had power to supervise HARVEY WEINSTEIN, to limit his contact with female employees and third parties, and to take concrete steps to stop illicit conduct.

134.   Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN also had the power to refuse to renew HARVEY WEINSTEIN's employment contract in 2015 and earlier, but failed to act, in part out of HARVEY WEINSTEIN's power and influence and in part due to concern that HARVEY WEINSTEIN's departure or a public battle over his contract would

inflict financial harm on THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

135.   HARVEY WEINSTEIN and Board members loyal to HARVEY WEINSTEIN, defeated any efforts by independent Board members to investigate claims of sexual misconduct, or to remove HARVEY WEINSTEIN or prevent him from continuing to sexually harass and harm women.

136.   Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN did not adequately investigate complaints made regarding acts of wrongdoing committed by HARVEY WEINSTEIN, did not act to protect employees and persons such as plaintiff, or prevent HARVEY WEINSTEIN from engaging in recurring conduct.

137.   HARVEY WEINSTEIN was only able to engage in repeated and persistent unlawful conduct because of the failure of key members of Defendant THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's Board of Directors, including Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN, and in failing to ensure that the company complied with relevant nondiscrimination laws and prevent its executives from engaging in unlawful conduct while representing the company.

138.   Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN acquiescence renders it responsible for HARVEY WEINSTEIN's misconduct on separate grounds.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 29 of 157

139.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN's decision to avoid utilizing their power to investigate credible claims of misconduct, and to shield HARVEY WEINSTEIN from consequences of that misconduct, enabled HARVEY WEINSTEIN to continue victimizing employees of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and coworkers.

140.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN failed to undertake efforts that may have resulted in discovery of at least a portion of HARVEY WEINSTEIN's prior misconduct.

141.    Through the actions and inactions described above, Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN repeatedly and persistently violated the New York State Human Rights Laws and New York City Human Rights Laws by subjecting employees to a sex-based hostile work environment, targeting female employees for *quid pro quo* harassment, and otherwise discriminating against female employees in the terms, conditions, and privileges of employment.

142.    The conduct and inactions of Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN complained of herein were willful, wanton, and malicious.

143.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN and persistently aided and abetted wrongful conduct, namely, the gender-based hostile work

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 30 of 157

harassment of, *quid pro quo* harassment of, and discrimination against female employees by HARVEY WEINSTEIN.

144.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN condoned and/or acquiesced in HARVEY WEINSTEIN's sexual harassment of and gender-based discrimination against female employees.

145.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN have knowingly, repeatedly, and persistently, deprived women of equal treatment in terms, conditions, and privileges of employment and of the right to be free from severe or pervasive hostile treatment because of their sex.

146.    By reason of the conduct alleged above, Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN discriminated against persons based on sex in violation of New York Civil Rights Law §40-c.

147.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN's negligence in supervising and/or retaining HARVEY WEINSTEIN was a substantial factor in causing Plaintiff harm.

148.    It was foreseeable that Harvey Weinstein would engage in sexual misconduct if Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN continued to allow Harvey Weinstein to have private business meetings with women.

149.  Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN knew that Harvey Weinstein was using his power and position to coerce women into engaging in sexual contact and knew that this sexual misconduct would cause harm.

150.  Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN failed to institute corrective measures to protect women coming into contact with Harvey Weinstein, including Plaintiff, from sexual misconduct despite Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN possessing actual notice of Harvey Weinstein's sexually inappropriate behavior. Such acts and omissions demonstrate a conscious disregard of the safety of others.

151.  Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN were aware of the probable dangerous consequences of failing to remove or adequately supervise Harvey Weinstein. In failing to do so, Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN acted with actual malice and with conscious disregard to Plaintiff Alexandra Canosa's safety.

152.  As a direct and proximate result of Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN and JEFF SACKMAN conduct and failure to act, Plaintiff was a victim of Harvey Weinstein's sexual misconduct. The sexual misconduct has caused Plaintiff to suffer continuing,

Case 1.18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 32 of 157

severe and permanent psychological, pain and suffering and emotional stress, and the loss of enjoyment of life.

**HARVEY WEINSTEIN'S AFORESAID ACTS
PERFORMED WITHIN SCOPE OF EMPLOYMENT**

153.    Harvey Weinstein acted as an executive, agent, management employee and officer of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

154.    Harvey Weinstein committed the unlawful acts complained of herein in his capacity as co-owner and co-CEO of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, making him the most senior person in the company.

155.    Harvey Weinstein's meetings with Plaintiff as alleged herein occurred within the course and scope of his employment for THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

156.    In that role, Harvey Weinstein used THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's corporate resources and employees to facilitate the unlawful conduct. Thus, as a matter of law, Harvey Weinstein's unlawful activities are attributable to THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

157.    THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees facilitated the meetings that lead to illicit sexual activity complained of herein, while knowing that same was unwanted.

158.    That THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC paid for hotel rooms for HARVEY WEINSTEIN while knowing that same were intended for the purpose of facilitating the illicit acts complained of herein.

159.    That expenses arising from an illicit sexual encounter with plaintiff and others were treated as a business expense of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

160.    THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC is responsible for the unlawful conduct described herein. When the legal violations described herein were committed, HARVEY WEINSTEIN was a high-ranking officer of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. As the most senior member of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC management, the actions taken by HARVEY WEINSTEIN in the course of managing THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and conducting THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC business are attributable to THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

161.    Defendants also understood that HARVEY WEINSTEIN was using company resources to facilitate his sexual exploits, including his employment on the payroll of the "roster" of women described above and his use of company resources for sexual encounters.

162.    Harvey Weinstein was an agent, director, owner and employee of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC from 2010 through October 2017.  At the time of the time of the acts alleged herein there was an actual or assumed agency relationship between Harvey Weinstein and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, as well as between Harvey Weinstein and the Board of Directors of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. All acts or omissions alleged herein were ratified by THE WEINSTEIN

Case 1.18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 34 of 157

COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and Board of Directors of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC. THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, THE WEINSTEIN COMPANY HOLDINGS, LLC's Board of Directors and THE WEINSTEIN COMPANY, LLC's Board of Directors knew of the acts and omissions of Harvey Weinstein, and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's employee, managers, supervisors, executives and directors had investigated or knew of the acts and omissions of Harvey Weinstein and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC failed and chose not to take steps against him.

## PRIOR NOTICE

163.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are liable because they were aware of and acquiesced in repeated and persistent unlawful conduct by failing to investigate or stop it.

164.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 were aware of and acquiesced in repeated persistent unlawful conduct committed by Harvey Weinstein by failing to investigate or stop it.

165.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY

WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 were repeatedly presented with credible evidence of Harvey Weinstein's sexual harassment/assault of employees, interns and colleagues, and his use of corporate employees and resources to facilitate sexual activity with third parties, amidst allegations that HARVEY WEINSTEIN had engaged in unlawful sexual conduct.

166.     Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 were aware of or had access to numerous complaints of HARVEY WEINSTEIN's misconduct as well as access to THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees and records which could have confirmed the accuracy of the complaints and the scope of misconduct. Yet the company failed to adequately investigate claims, take common-sense measures to protect female employees and third parties from HARVEY WEINSTEIN's illegal conduct, or terminate HARVEY WEINSTEIN's employment.

167.     When employees complained about serious misconduct by HARVEY WEINSTEIN, Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 took steps to separate the employee from the company while securing a non-disclosure agreements that would prevent the employee from disclosing the misconduct to others or warning others about the misconduct. These Non-Disclosure Agreements were contained within settlement agreements entered into by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC itself. While the source

FILED: NEW YORK COUNTY CLERK 04/30/2018 05:35 PM

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 36 of 157

of the funds used to pay for the monetary component of any settlement remains under investigation, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's participation as a party to settlements, and its receipt of complaints concerning misconduct leading to those settlements, reflect that Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 were fully aware of numerous settlements involving claims of misconduct by HARVEY WEINSTEIN brought by employees and others, which was therefore a recurring problem, and put Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 on notice of all similar future occurrences as well.

168.    In support of plaintiff's contentions that the actions by Harvey Weinstein described herein were not isolated instances, and were part of a constant and recurring issue for which all Defendants were abundantly aware and attempted to conceal, annexed herewith are copies of the Summons and Complaints in the following matters:

> Exhibit 1.    *People v. Weinstein*, Index No. 450293/2018
> Supreme Court, New York County
>
> Exhibit 2.    *Rehal v. Weinstein*, Index No. 151738/2018
> Supreme Court, New York County
>
> Exhibit 3.    *Huett v. Weinstein*, Case No. BC680869
> Superior Court, Los Angeles County
>
> Exhibit 4.    *Doe v. Weinstein*, Case No. BC683411
> Superior Court, Los Angeles County

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 37 of 157

## DAMAGES

169.    As a result of the foregoing unlawful conduct, Plaintiff incurred substantial physical injury, pain, suffering, loss of enjoyment of life, humiliation, mental anguish, and emotional distress, and claims monetary, compensatory and punitive damages herein for each cause of action.

### AS AND FOR A FIRST CAUSE OF ACTION FOR:
### BATTERY

170.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

171.    Harvey Weinstein intended to commit and committed acts of unwanted contact with Plaintiff.

172.    Harvey Weinstein committed unwanted contact with Plaintiff in a harmful and offensive manner, including but not limited to inflicting unwanted sexual contact with Plaintiff.

173.    Harvey Weinstein's battery on Plaintiff caused physical, mental and emotional distress.

174.    Harvey Weinstein used his power and personality to overwhelm, subdue and threaten Plaintiff so that she would not refuse his advances.  Any objections to his conduct were met with anger and demands immediately to accede to his wishes. Harvey Weinstein created an environment in which there was no choice but to do his bidding or suffer dire consequences both physically and to plaintiff's career.

175.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 38 of 157

176.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

177.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

178.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

179.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 39 of 157

180.     That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

181.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### AS AND FOR A SECOND CAUSE OF ACTION FOR: ASSAULT

182.     Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

183.     As described at length above, Harvey Weinstein intended to cause apprehension of harmful or offensive conduct against Plaintiff.

184.     Harvey Weinstein committed unwanted contact with Plaintiff in a harmful and offensive manner, including but not limited to inflicting unwanted sexual contact with Plaintiff.

185.     Harvey Weinstein's assault of Plaintiff caused physical, mental and emotional distress, pain and suffering and loss of enjoyment of life.

186.     As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

187.      Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV,

RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

188.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

189.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

190.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

191.    That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 41 of 157

fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

192.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

**AS AND FOR A THIRD CAUSE OF ACTION FOR:**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

193.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

194.    Harvey Weinstein's conduct as aforesaid, was extreme and outrageous and intentionally caused severe emotional distress to Plaintiff.

195.    Harvey Weinstein's conduct, as aforesaid, was outrageous and exceeded all possible bounds of decency.

196.    Harvey Weinstein acted with intent and recklessness with the intent and knowledge that Plaintiff had suffered emotional distress and was subject to his ongoing demands and control.

197.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

198.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 42 of 157

and ROBERT WEINSTEIN, DOES 1-10, which facilitated Harvey Weinstein's unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

199.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

200.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

201.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

202.    That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 43 of 157

fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

203.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR:
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

204.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

205.    Harvey Weinstein's conduct negligently causes emotional distress to Plaintiff.

206.    Harvey Weinstein could reasonably foresee that his actions would result in the infliction of emotional distress upon Plaintiff.

207.    Plaintiff suffered emotional distress as a result of Harvey Weinstein's actions.

208.    Harvey Weinstein's conduct was committed within the scope of his employment with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

209.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

Case 1:18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 44 of 157

210.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

211.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

212.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

213.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 45 of 157

214.     That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

215.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR:**
**NEGLIGENT SUPERVISION AND RETENTION**

216.     Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

217.     At all times material, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employed Harvey Weinstein and Harvey Weinstein was an executive and/or director of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

218.     Harvey Weinstein was unfit or incompetent to work directly with Plaintiff and posed a risk of sexually harassing and assaulting her.

219.     Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN owed the plaintiff a cognizable duty of care.

220.     Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN breached the aforesaid duty.

221.    As a result of the aforesaid breach, plaintiff suffered damage as a proximate result.

222.    Harvey Weinstein and DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN were in an employee-employer relationship.

223.    That Defendant Harvey Weinstein was incompetent, of vicious propensities, of bad disposition, and a violent sexual predator.

224.    That defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN had knowledge of that aforesaid fact which would cause a reasonably prudent person to investigate the employee's capacity and disposition, and to terminate said employee's employment.

225.    That defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN could reasonably have anticipated that Harvey Weinstein's incompetence and disposition would be likely to result in injury to others.

226.    That defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN failed to use reasonable care to correct or remove Harvey Weinstein.

227.   DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN knew or should have known of the Harvey Weinstein's propensity for the conduct which caused the injuries, assaults, and other misconduct of Harvey Weinstein complained of herein, prior to same occurring.

228.   The injuries, assaults, and other misconduct of Harvey Weinstein complained of herein, were committed on the premises completely owed or completed controlled by DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN,  or with their chattels.

229.   Based on his long history of misconduct, Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN knew or should have known not only that Weinstein was unfit or incompetent to work with Plaintiff.

230.   DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN were given specific information about Harvey Weinstein's inappropriate conduct involving Plaintiff and disregarded the information.  As a result, Harvey Weinstein continued to threaten Plaintiff and engage in sexual assault and battery among other misconduct.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 48 of 157

231.    Harvey Weinstein was an agent, director, owner and employee of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC from 2010 through October 2017.

232.    At the time of the time of the acts alleged herein there was an actual or assumed agency relationship between Harvey Weinstein and DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN.

233.    All acts or omissions alleged herein were ratified by DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN.

234.    DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN knew of the acts and omissions of Harvey Weinstein, and THE WEINSTEIN COMPANY HOLDINGS, LLC and DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN'S employees, managers, supervisors, executives and directors had investigated or knew of the acts and omissions of Harvey Weinstein and failed and chose not to take steps against Harvey Weinstein.

235.   Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN had actual or constructive knowledge of specific prior acts or allegations that made Harvey Weinstein's wrongful conduct complained of herein foreseeable.

236.   No meaningful disciplinary action was taken and Harvey Weinstein was allowed to continue to use THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC resources and his position at THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC to facilitate his sexual misconduct.

237.   DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN are responsible for Harvey Weinstein's acts alleged herein.

238.   Harvey Weinstein's conduct was committed within the scope of his employment with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

239.   As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE

WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

240.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

241.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

242.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

243.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless

disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

244.    That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

245.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR:**
**AIDING AND ABETTING**

246.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

247.    Weinstein was an agent, director, owner and employee of the Weinstein Company from 2010 through October 2017.  At the time of the time of the acts alleged herein there was an actual or assumed agency relationship between Weinstein and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, as well as between Weinstein and its Board of Directors.

248.    All acts or omissions alleged herein were ratified by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's Board of Directors. THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, THE WEINSTEIN COMPANY HOLDINGS, LLC's Board of Directors and THE WEINSTEIN COMPANY, LLC's Board of Directors knew of the acts and omissions of Harvey Weinstein, and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC's

Case 1:18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 52 of 157

employee, managers, supervisors, executives and directors had investigated or knew of the acts and omissions of Harvey Weinstein and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC failed and chose not to take steps against him.

249.    No meaningful disciplinary action was taken and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC knowingly allowed Weinstein to use THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC resources and his position at THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC to facilitate his sexual misconduct.

250.    THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, THE WEINSTEIN COMPANY HOLDINGS, LLC's Board of Directors and THE WEINSTEIN COMPANY, LLC's Board of Directors are responsible for Weinstein's acts of assault, battery, and intentional or negligent infliction of emotional distress.

251.    Harvey Weinstein's conduct was committed within the scope of his employment with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

252.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

253.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

254.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

255.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

256.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

257.     That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

258.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR:**
**<u>SEXUAL HARASSMENT</u>**

259.     Plaintiff repeats and realleges each of the preceding paragraphs as if set forth at length herein.

260.     That Defendant Harvey Weinstein engaged in sexual intercourse with plaintiff by forcible compulsion and/or when plaintiff was incapable of consent by reason of being physically helpless.

261.     That Defendant Harvey Weinstein engaged in oral sexual conduct or anal sexual conduct with plaintiff by forcible compulsion and/or when plaintiff was incapable of consent by reason of being physically helpless.

262.     Harvey Weinstein actions, described above, created a hostile work environment.

263.     In addition, Harvey Weinstein engaged in quid pro quo harassment by promising employee benefits and contacts in the industry in exchange for sexual favors.

264.     Using his authority and power in THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and in the entertainment business, Harvey Weinstein abused his position of power and authority over Plaintiff, who was his subordinate and in no position to reject his demands and advances.  Weinstein made it clear that Plaintiff was expected to give in to sexual advances and demands, expected to keep silent, and even expected to pretend to like it,  in order to maintain her position and status in the workplace and the industry.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 55 of 157

265.    Harvey Weinstein's harassment and quid pro quo demands upon Plaintiff was severe and pervasive and caused physical, mental and emotional distress.

266.    Harvey Weinstein's conduct was committed in the scope of his employment at THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC.

267.    Harvey Weinstein's sexual misconduct was known to THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, which facilitated his unlawful and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

268.    Harvey Weinstein was an agent, director, owner and employee of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC from 2010 through October 2017. At the time of the time of the acts alleged herein there was an actual or assumed agency relationship between Harvey Weinstein and THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, as well as between Weinstein and its Board of Directors.

269.    Harvey Weinstein's conduct was committed within the scope of his employment with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

270.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

271.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

272.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 57 of 157

273.     That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and

suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and

claims compensatory and punitive damages herein.

274.     That this action falls within one or more of the exceptions set forth in CPLR §1602,

specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless

disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or

intentionally, and in concert).

275.     That this action falls within one or more of the exceptions set forth in CPLR §1601, as with

due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any

fault in this matter aside from Defendants herein, and in that Defendants were vicariously

responsible for any possible additional parties with liability herein.

276.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts

which would otherwise have jurisdiction.

### AS AND FOR AN EIGHTH CAUSE OF ACTION FOR:
### <u>VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAWS</u>

277.     Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully

set forth herein.

278.     The Human Rights Law (<u>Executive Law § 290 *et seq.*</u>) declares that it "shall be an unlawful

discriminatory practice … [f]or an employer … because of the … sex … of any individual, to

refuse to hire or employ or to bar or to discharge from employment such individual or to

discriminate against such individual in compensation or in terms, conditions or privileges of

employment" (<u>Executive Law § 296 [1] [a]</u>)

279.     That Plaintiff was an employee of Defendants.

280.     That Plaintiff is a female.

281.   That Harvey Weinstein physically, sexually, verbally and mentally abused  and harassed plaintiff as described at length above.

282.   That the aforesaid conduct was unwanted by plaintiff.

283.   That plaintiff was subjected to the conduct complained of herein because she is a female.

284.   That the conduct was so severe or widespread or persistent that a reasonable woman would consider the work environment to be hostile.

285.   That plaintiff actually considered that she was subjected to the conduct because she is a female.

286.   That defendants knew or, in the exercise of reasonable care, should have known about the conduct and either accepted or approved it.

287.   That at the time of the conduct complained of herein as aforesaid, Harvey Weinstein was a high-level managerial employee.

288.   That plaintiff was harmed because of the aforesaid conduct.

289.   That defendant's conduct included intimidation, ridicule or insults, and was so severe or widespread or persistent that a reasonable woman in plaintiff's circumstances would have considered the work environment to be hostile.

290.   That Harvey Weinstein's derelict behavior was frequent, highly persistent, and widespread and was severely offensive in nature.

291.   That said behavior and conduct had an effect on Plaintiff's well-being.

292.   That the conduct was humiliating or physically threatening to plaintiff.

293.   That the conduct unreasonably interfered with plaintiff's work performance.

294.   Harvey Weinstein's conduct was committed within the scope of his employment with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 59 of 157

MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE

WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY

WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

295.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed

in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF,

MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG,

JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE

WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-

10.

296.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants

DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV,

RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN

COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN

and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory

sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS,

LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and

allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE

WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing

to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by

Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

297.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE

MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE

WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY

Case 1:18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 60 of 157

WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

298.     That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

299.     That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

300.     That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

301.     The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### AS AND FOR A NINTH CAUSE OF ACTION FOR: <u>VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAWS</u>

302.     Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

303.     Plaintiff was treated less well than other employees because she was a female, and subjected to the conduct described above.

304.     At the time of the subject occurrences and acts, Harvey Weinstein was exercising managerial or supervisory responsibilities over plaintiff.

305.     DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE

MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN knew of Harvey Weinstein's conduct and either accepted it or failed to take immediate and appropriate corrective action.

306.   DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN are considered to have had knowledge of Harvey Weinstein's discriminatory conduct since an employee with supervisory or managerial responsibility knew of it.

307.   In the exercise of reasonable care, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN should have known of Harvey Weinstein's conduct and failed to exercise reasonable diligence to prevent such conduct.

308.   Plaintiff was an employee of HARVEY WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN.

309.   That Plaintiff was known to defendants to be a woman.

310.   That as described above, plaintiff was subjected to abuse and sexual and physical harassment and harm by Harvey Weinstein, and vicariously by defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 62 of 157

KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN.

311.   That Defendants' conduct was unwanted.

312.   That Plaintiff was subjected to the aforesaid conduct because she was a woman.

313.   That as a result of the aforesaid conduct, a reasonable woman would consider that she was being treated less well than other employees under all of the circumstances.

314.   That plaintiff actually considered that she was being treated less well than other employees because she was a woman.

315.   That Harvey Weinstein was exercising managerial or supervisory responsibilities at plaintiff's workplace.

316.   That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN knew of Harvey Weinstein's aforesaid conduct and either accepted it or failed to take immediate and appropriate corrective action.

317.   In the exercise of reasonable care, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN should have known of Harvey Weinstein's aforsaid conduct and failed to exercise reasonable diligence to prevent such conduct.

318.   Harvey Weinstein's conduct was committed within the scope of his employment with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE

WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

319.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

320.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

321.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY

Case 1:18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 64 of 157

WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

322.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

323.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

324.    That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

325.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### AS AND FOR A TENTH CAUSE OF ACTION FOR:
### QUID PRO QUO HARASSMENT

326.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

327.    Harvey Weinstein committed unwelcome sexual conduct, including sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature against Plaintiff.

328.    That said actions were performed explicitly or implicitly, as the basis for employment decisions affecting compensation, terms, conditions, or privileges of Plaintiff.

Case 1:18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 65 of 157

329.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN and HARVEY WEINSTEIN expressly or tacitly linked tangible job benefits to the acceptance or rejection of sexual advances.

330.    Harvey Weinstein's conduct was committed within the scope of his employment with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

331.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

332.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and

allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE

WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing

to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by

Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

333.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE

MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE

WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY

WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of

Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

334.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and

suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and

claims compensatory and punitive damages herein.

335.    That this action falls within one or more of the exceptions set forth in CPLR §1602,

specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless

disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or

intentionally, and in concert).

336.    That this action falls within one or more of the exceptions set forth in CPLR §1601, as with

due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any

fault in this matter aside from Defendants herein, and in that Defendants were vicariously

responsible for any possible additional parties with liability herein.

337.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts

which would otherwise have jurisdiction.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR:
### HOSTILE WORK ENVIRONMENT

338.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

339.    That Harvey Weinstein's conduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance or creating an intimidating, hostile, or offensive working environment.

340.    That Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment.

341.    That said conduct of Harvey Weinstein was known to defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN, who failed to do anything about same.

342.    That Harvey Weinstein, as plaintiff's supervisor, used his actual or apparent authority to engage in the harassment complained of herein.

343.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN aided in creating a hostile work environment by their agency relationship to Harvey Weinstein as described herein.

344.    That Harvey Weinstein was able to commit the wrongful acts described above because of the power of he wielded as granted to him by his position with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD

KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY

HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN.

345.    Harvey Weinstein's conduct was committed within the scope of his employment with

Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE

MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE

WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY

WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

346.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed

in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF,

MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG,

JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE

WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-

10.

347.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants

DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV,

RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN

COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN

and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory

sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS,

LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and

allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE

WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 69 of 157

to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

348.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

349.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

350.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

351.    That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

352.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### AS AND FOR A TWELFTH CAUSE OF ACTION FOR: RATIFICATION

353.    Plaintiff restates and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 70 of 157

354.   The actions of Harvey Weinstein complained of herein were performed by a "superior officer" of defendants in the course of his employment, and are therefore considered acts of the employer itself for which it is additionally held liable.

355.   Defendant DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN ratified Harvey Weinstein's wrongful conduct complained of herein.

356.   That there was a principal-agent relationship between defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN and Harvey Weinstein.

357.   That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN had full knowledge of the material facts concerning Harvey Weinstein's prior misconduct which would put them on actual or constructive notice of the propensity for Harvey Weinstein to commit the wrongs complained of herein against plaintiff, and of those acts committed by Harvey Weinstein to Plaintiff complained of herein.

358.   That there was acceptance by DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN of Harvey Weinstein's acts as complained of

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 71 of 157

herein, and those that preceded same which would put said defendants on notice of the proneness for said acts to occur.

359.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN intended to ratify the wrongful actions of Harvey Weinstein complained of herein.

360.    The underlying tortious conduct was done or professedly done on Defendant DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN's account.

361.    Harvey Weinstein committed unwelcome sexual conduct, including sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature explicitly or implicitly, as the basis for employment decisions affecting compensation, terms, conditions, or privileges of plaintiff's employment.

362.    That plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

363.    Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN's agents or supervisory employees knew or should have known of the conduct complained of herein.

364.    That Defendant Harvey Weinstein was an official at a sufficiently high level in the company's management hierarchy to qualify as a proxy for defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN.

365.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN were charged with a duty to act on the knowledge and stop the harassment complained of herein.

366.    That Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC and ROBERT WEINSTEIN were charged with a duty to inform the company of the harassment, but failed to do so, or same failed to act on said information in any meaningful matter, and thus showed acceptance and ratification of the propriety of said acts.

367.    Harvey Weinstein's conduct was committed within the scope of his employment with Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, who are vicariously liable for same.

368.    As described at length above, Harvey Weinstein's conduct as alleged herein was committed in the scope and furtherance of his employment for Defendants DIRK ZIFF, TIM SARNOFF,

MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10.

369.    Harvey Weinstein's misconduct as alleged herein was previously known to Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, which facilitated his unlawful, abusive and predatory sexual misconduct by, among other things using THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC employees to lure victims to private meetings, and allowing Harvey Weinstein to conduct business in his hotel room or other places paid for by THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC, failing to discipline or remove Harvey Weinstein despite prior knowledge of recurring such actions by Harvey Weinstein, all the while taking steps to hide his misconduct and silence victims.

370.    That DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10 are vicariously responsible for the acts of Harvey Weinstein as alleged herein as they ratified and condoned same, as aforesaid.

371.    That as a result of the subject incidents, Plaintiff has sustained injury, emotional pain and suffering, physical pain, emotional distress, pain and suffering and loss of enjoyment of life, and claims compensatory and punitive damages herein.

372.    That this action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5) (due to Defendant's intentional conduct), (7) (as Defendants acted with reckless disregard), (8) Article Ten of the Labor Law, (11) (as Defendant's acted knowingly or intentionally, and in concert).

373.    That this action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

374.    The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

WHEREFORE, plaintiff demands judgment and monetary damages against Defendants DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JAMES L. DOLAN, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN, DOES 1-10, and each of them, and punitive damages, in such sums as a jury may find fair, reasonable and just, together with costs, interests and disbursements of this action and attorneys fees.

Pursuant to 22 NYCRR § 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in this Summons and Complaint are not frivolous;

Dated:  New York, NY
        April 30, 2018

RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorneys for Plaintiff

By:     Jeremy A. Hellman, Esq.

- 74 -

551 Fifth Avenue, 29th Floor
New York, NY 10176
Tel: (212) 684-1880
Fax: (212) 689-8156
jhellman@rheingoldlaw.com

# EXHIBIT

# A

RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorney for Plaintiff
551 Fifth Avenue, 29th Floor
New York, N.Y. 10176
Tel:    (212) 684-1880
Fax:    (212) 689-8156

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

THE PEOPLE OF THE STATE OF
NEW YORK, by ERIC T.
SCHNEIDERMAN, Attorney General
of the State of New York,

Petitioner,

v.

THE WEINSTEIN COMPANY LLC,
THE WEINSTEIN COMPANY
HOLDINGS LLC,  HARVEY
WEINSTEIN, and ROBERT
WEINSTEIN,

Respondents.

VERIFIED PETITION

Index No.
IAS Part
Assigned to Justice

The People of the State of New York, by their attorney, ERIC T. SCHNEIDERMAN, Attorney

General of the State of New York, respectfully allege, upon information and belief:

## INTRODUCTION

1.      The Attorney General, on behalf of the People of the State of New York, brings

this action to remedy a years-long gender-based hostile work environment, a pattern of *quid pro*

*quo* sexual harassment, and routine misuse of corporate resources for unlawful ends that

extended from in or about 2005 through at least in or about October 2017. The Attorney General

seeks to hold accountable Harvey Weinstein ("HW"), his brother Robert Weinstein ("RW"), and

the company for which they served as co-owners, co-Chairmen of the Board, and co-Chief

Executive Officers ("co-CEOs"), The Weinstein Company LLC and its parent holding company,

The Weinstein Company Holdings LLC (collectively, "TWC" or "The Company"), for repeated,

persistent, and egregious violations of law, to vindicate the rights of TWC's employees, and to

prevent future recurrence of such misconduct.

1

2.      TWC is a company headquartered in New York, New York, that produces and distributes films and television shows. At times relevant to this Petition, TWC employed upwards of 250 people in its New York office and satellite offices in Los Angeles, California, and London, England. TWC was at all times required to comply with New York State and New York City laws prohibiting sexual harassment and discrimination on the basis of gender.  HW and RW, as the company's owners and co-CEOs, were bound to abide by these laws and ensure that they were enforced at TWC. In addition, HW was prohibited from engaging in unlawful sex offenses, such as sexual misconduct, forcible touching, and coercion, and attempts to commit the same, in violation of various provisions of the New York Penal Law, and from using TWC employees, resources, and business opportunities to facilitate repeated and persistent illegality of this nature. *See* N.Y. Exec. Law § 63(12).

3.      The Attorney General initiated this investigation after learning of published reports that HW used his role as TWC's co-CEO and his power within the entertainment industry to sexually harass employees and abuse women. HW and TWC sought to shield these and additional facts from disclosure through routine use of Non-Disclosure Agreements ("NDAs") prohibiting individuals from speaking about their experiences at TWC. The Attorney General has used investigative authorities granted to the Office of the Attorney General ("OAG") under Section 63(12), including the OAG's investigative subpoena power, to begin uncovering these facts. While the OAG's investigation is ongoing, it has obtained documents and interviewed witnesses confirming that Respondents repeatedly and persistently violated the law.

4.      The unlawful conduct took two primary forms:

   i.   ***First***, HW, as co-CEO of TWC, repeatedly and persistently sexually harassed female employees at TWC by personally creating a hostile work environment

2

that pervaded the workplace and by demanding that women engage in sexual or demeaning conduct as a *quid pro quo* for continued employment or career advancement. Some of HW's sexual harassment involved unlawful sexual contact.

ii. **Second,** HW repeatedly and persistently used his position at TWC, female employees at TWC, and the resources at his disposal as a co-CEO of TWC, to serve his interests in sexual contact, some of which upon information and belief was unlawful in nature, with women seeking employment or business opportunities with TWC.

5. TWC is responsible for the unlawful conduct described herein. HW committed these unlawful acts in his capacity as TWC's co-owner and co-CEO, making him the most senior person in the company. In that role, HW used TWC's corporate resources and employees to facilitate the unlawful conduct. Thus, as a matter of law, HW's unlawful activities are attributable to TWC.

6. In addition, TWC and RW are liable because they were aware of and acquiesced in repeated and persistent unlawful conduct by failing to investigate or stop it. As described herein, RW, TWC's management, and TWC's Board of Directors (the "Board") were repeatedly presented with credible evidence of HW's sexual harassment of TWC employees and interns, and his use of corporate employees and resources to facilitate sexual activity with third parties, amidst allegations that HW had engaged in unlawful sexual conduct.

7. RW and TWC's Board failed to: further investigate to discover the nature and extent of the misconduct; absolutely prohibit such misconduct; restrict HW's ability to hire or

supervise employees and his use of corporate resources in order to avoid future recurrence of such misconduct; or terminate HW's employment altogether.

8.    Instead of investigating and taking prompt corrective action, TWC and RW used settlements that contained strict NDAs to keep law enforcement, the public, and even other TWC employees from discovering the extensive allegations of misconduct against HW. TWC itself entered into several of these NDA-containing settlements with company employees. Many witnesses to HW's unlawful conduct separately were subject to broad NDAs pursuant to their TWC employment agreements, preventing them from revealing their own observations of misconduct to law enforcement as well. In this way, TWC and RW enabled HW's unlawful conduct to continue far beyond the date when, through reasonable diligence, it should have been stopped.

## PARTIES

9.    Petitioner is the People of the State of New York, by its attorney, Eric T. Schneiderman, the Attorney General of the State of New York.

10.    Respondents The Weinstein Company LLC and its parent company The Weinstein Company Holdings, LLC (collectively, "TWC" or the "Company") are companies that were founded in or about 2005, with their principal offices and places of business at 99 Hudson Street, New York, New York, 10013, from which they have transacted business at all times mentioned herein. TWC also maintains office space at 375 Greenwich Street, New York, New York, and satellite offices in Los Angeles, California and London, England.

11.    Respondent HW is the co-founder, and was the co-Chairman and co-CEO of TWC from its inception in or about 2005 until his termination in October 2017. HW was terminated from the TWC Board and as co-CEO in October 2017. HW currently owns approximately 21% of the voting shares of TWC. As co-Chairman and co-CEO, HW also drew a

4

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 81 of 157

salary from TWC and had expenses covered by TWC. HW regularly transacted TWC business at TWC's headquarters in New York, New York, primarily using office space at TWC's 375 Greenwich Street location.

12.     Respondent RW is the co-founder and was co-Chairman and co-CEO of TWC with HW until HW's termination. RW remains on the TWC Board and owns approximately 21% of the voting shares of TWC. RW regularly transacted TWC business at TWC's headquarters in New York, New York.

## JURISDICTION AND VENUE

13.     The Attorney General brings this action on behalf of the People of the State of New York under the New York State Executive Law.

14.     Under the Executive Law, the Attorney General is authorized to bring a special proceeding in this Court seeking injunctive relief, restitution, damages, disgorgement, civil penalties where applicable, and costs on behalf of the People of the State of New York "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business." N.Y. Exec. Law § 63(12).

15.     Venue is properly laid in New York County because Respondent TWC has its principal office within the county, and many of the events and omissions giving rise to the claims took place in the county.

16.     This Court may exercise personal jurisdiction over Respondents HW and RW because they conducted the business of TWC in New York, New York, and because they participated in events and omissions giving rise to the violations while in New York County.

5

17.     The Court may exercise personal jurisdiction over Respondent TWC because it is a company with its principal office and place of business in New York County.

## OVERVIEW OF ATTORNEY GENERAL INVESTIGATION

18.     On October 23, 2017, the OAG issued a subpoena to TWC pursuant to Executive Law 63(12), for documents and testimony. The subpoena was issued as part of the OAG's investigation into reports that HW engaged in sexual harassment and sexual misconduct in the workplace, including at TWC's headquarters in New York; that TWC employees were enlisted to further and conceal the sexual harassment; and that all of this misconduct was hidden from law enforcement authorities and the public through aggressive use of NDAs and other efforts to conceal or distort the truth.

19.     The OAG has reviewed documentary evidence produced by Respondents and obtained from other sources, including correspondence, business records, financial records, and thousands of pages of documents produced pursuant to third-party subpoenas. It continues to receive documents responsive to its subpoenas and to review those documents. The OAG also has interviewed current and former employees, executives, and Board members of TWC, and it continues to interview additional witnesses. Its investigation remains ongoing.

20.     The OAG's ongoing investigation has so far confirmed that Respondents have engaged in multiple, repeated, and persistent violations of law that have harmed TWC employees, as well as individuals seeking business opportunities with TWC. These violations include unlawful gender discrimination and sexual harassment in violation of New York Executive Law § 296 *et seq*., New York Civil Rights Law § 40-c, New York City Human Rights Law, New York City Administrative Code § 8-107(1)(a), and violations of provisions of the New York Penal Law prohibiting forcible touching (Penal Law § 130.52), sexual abuse (Penal Law

§ 130.55), and coercion (Penal Law § 135.60), and attempts to commit the same, and upon information and belief, other sexual offenses.

21.     Even while its investigation continues, the OAG has instituted this proceeding at the present time in light of its factual and legal findings, and the possible imminent sale of TWC and/or its assets to purchasers in a transaction that could leave survivors of Respondents' unlawful conduct without adequate redress, enable perpetrators or enablers of misconduct to obtain unwarranted financial benefits, and fail to protect adequately TWC employees who would be reporting to some of the same managers (including TWC's Chief Operating Officer ("COO")) who failed to investigate HW's ongoing misconduct or adequately protect female employees from HW when HW served as co-CEO of TWC.

## FACTUAL ALLEGATIONS

22.     From the creation of TWC in 2005 through his forced exit from the company in October 2017, HW held extensive power and influence in the film and television industry. HW's support could open doors and launch award-winning careers, while his disapproval could permanently tarnish reputations and essentially blacklist a person across the industry.

23.     As described herein, HW repeatedly and persistently misused his power within TWC and in the film and television industry, and the employees and resources of TWC, to harm and exploit both TWC workers and third parties seeking to do business with TWC. Within TWC, HW wielded this power in a sexually discriminatory manner.

24.     HW personally created and perpetuated a work environment permeated with gender-based hostility and inequality. As described in Sections A and B below, HW engaged in *quid pro quo* sexual harassment; subjected female TWC employees and women seeking business or job opportunities with TWC to unwelcome and inappropriate physical contact and touching; subjected employees to a persistent stream of threats and verbal abuse, much of which was

sexual or gendered in nature; and menaced female employees with threats to their careers and of physical harm.

25.     HW also required multiple groups of TWC employees to facilitate his sexual encounters with women. In part, HW required executive assistants to schedule and help arrange sexual (or possible sexual) encounters for HW, even directing them to essentially badger women who refused or expressed reluctance into accepting a "meeting" with HW. Additionally, on multiple occasions, HW required junior executives to meet a woman and discuss working in the entertainment industry generally or on specific TWC projects, because he was interested in her sexually and wanted the executives to help put the woman at ease before he made any sexual advances or because she had already submitted to his advances.

26.     Through such conduct and other behavior detailed below, HW created what one former employee described as a "toxic environment for women" at TWC that persisted from the early days of TWC in 2005 to at least HW's termination as TWC co-CEO in 2017.

27.     HW's and TWC's unlawful activity persisted, at least in part, due to the effective acquiescence of RW and certain other members of TWC's management and Board. As explained in Sections C and D below, members of TWC's management and Board were aware of or had access to numerous complaints of HW's misconduct as well as, to TWC employees and records which could have confirmed the accuracy of the complaints and the scope of misconduct—yet the company failed to adequately investigate any of the claims, take common-sense measures to protect female employees and third parties from HW's illegal conduct, or terminate HW's employment. Furthermore, TWC lacked an effective process for reporting and investigating complaints of sexual harassment or other sexual misconduct, as is required by law: it did not train employees on sexual harassment policies or laws; it did not have a meaningful or consistent

8

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 85 of 157

process for documenting and preserving claims of sexual harassment or other misconduct; and, when individuals did complain, Human Resources was not empowered to address claims related to HW.

28.     TWC's corporate governance was made aware of but chose not to end the abuse being facilitated through its company. TWC's Board had power to supervise HW, to limit his contact with female employees and third parties, and to take concrete steps to stop it. The Board also had the power to refuse to renew HW's employment contract in 2015, but failed to act, in part out of HW's power and influence on the Board and in part due to concern that HW's departure or a public battle over his contract would inflict financial harm on TWC. HW and Board members loyal to HW defeated any efforts by independent Board members to investigate claims of sexual misconduct, or to remove HW or prevent him from continuing to sexually harass and harm women.

A.     **Hostile Work Environment**

       <u>**Obscenities and Insults**</u>

29.     To work for Harvey Weinstein was to work under a persistent barrage of gender-based obscenities, vulgar name-calling, sexualized interactions, threats of violence, and a workplace generally hostile to women.  This conduct occurred throughout the relevant time period.

30.     For instance, HW regularly berated women using gender-based obscenities and stereotypes.  He directed these comments to female employees and peppered ordinary conversation with vulgarities and gendered insults.

31.     HW regularly called female employees "cunt" or "pussy" when he was angry with them or felt they had done a task poorly or incorrectly, or even just instead of calling them by their first names.

32.     When HW wanted to particularly degrade or scold men, he called them cunt or pussy as well, and otherwise denigrated them in sexualized terms. For example, at a meeting attended by several TWC executives, HW criticized a male executive in the room for his alleged weakness. During the course of the criticism, HW turned to another TWC employee and said, "Can you smell [his] pussy?"

33.     On another occasion, HW told a male assistant he was fired for—as reflected in an email sent by the assistant to the head of Human Resources about the incident—being "just a fucking faggot boy, a stupid fucking faggot boy." HW routinely used similar epithets attacking employees' masculinity.

34.     HW regularly used gender stereotypes to insult and belittle female employees. For example, in a fit of rage against one female employee, he yelled that she should leave the company and make babies since that was all she was good for. He belittled other female employees using similar language.

35.     On other occasions, he asked female employees if they had their period, including asking an employee if her tampon was "up too far." He also accused female employees of wanting special treatment because of their gender.

36.     HW made these comments in one-on-one conversations, as well as in front of other TWC employees, including the company's most senior executives.

37.     Despite knowledge of HW's use of sexualized obscenities and gendered insults, TWC executives with responsibility for the matter and the Board failed to take any meaningful

10

steps to investigate allegations of such conduct or take remedial action to protect TWC employees or stop such behavior.

**Intimidation**

38.     HW, who stands over six feet tall, used his stature and threatening statements on numerous occasions to demean and frighten female employees. Multiple female employees have described HW's regular use of physical intimidation and threats to terrorize female employees generally, deter them from making formal or informal workplace complaints, and prevent them from describing his conduct to anyone outside TWC.

39.     Female employees described HW as yelling at them for purported incompetence, cursing in their faces, threatening to end their careers, and describing his intent to harm them, all while walking into them until his face was only inches from theirs.

40.     TWC's management was presented with several allegations of such misconduct. According to information contained within HW's personnel file, on one occasion in 2011, HW violently punched the back of a female employee's car seat while berating her. On a separate occasion, he backed the same employee up against a wall, standing intimidatingly close while berating her. This as well as other misconduct prompted the female employee to file a formal complaint with TWC. TWC resolved the complaint via an agreement that contained an NDA. TWC did not adequately investigate the complaint, act to protect employees, or prevent HW from engaging in recurring conduct.

41.     On another occasion in 2012, according to a formal complaint made to Human Resources, HW launched into a tirade against a female employee before a media interview in which he berated her viciously and at length in front of other TWC employees and threatened to "cut [her] loins," traumatizing the employee, making her feel "forced out" of her job, and

11

causing her "severe stress." TWC resolved the complaint via an agreement that contained an NDA. TWC did not adequately investigate the complaint, act to protect employees, or prevent HW from engaging in recurring conduct.

42.    HW cornered another female employee in a hotel lobby in 2014, coming so close to her and screaming at her so loudly about being a failure that a patron and hotel staff member came to ask if she needed assistance after HW left. The female employee was traumatized by the interaction and felt physically unsafe around HW after its conclusion, as reflected in a formal complaint to Human Resources in 2015 that described this incident and other misconduct. TWC resolved the complaint via an agreement that contained an NDA. TWC did not adequately investigate the complaint, protect employees, or prevent HW from engaging in recurring conduct.

43.    HW told several employees throughout the relevant time period that, in substance, "I will kill you," "I will kill your family," and "You don't know what I can do," or words to that effect. HW touted his connection to powerful political figures and asserted that he had contacts within the Secret Service that could take care of problems. Female employees knew from observations of HW and from the experiences of other TWC employees that he was capable of fits of rage, including infliction of physical injury, and that he was sexually aggressive. Thus, they became fearful that they could suffer physical injury or worse if they did not satisfy his demands. With respect to all of these matters, TWC did not adequately investigate repeated credible complaints of misconduct or prevent HW from engaging in recurring conduct.

**Forcing Women to Serve in Sexualized and Demeaning Roles**

44.    HW forced female TWC employees to serve in in humiliating and demeaning roles that required them to facilitate and support his sexual activity with third parties or support

"domestic" activities. TWC employed one group of female employees whose primary job it was to accompany HW to events and to facilitate HW's sexual conquests. These women were kept on TWC's payroll in TWC's New York, Los Angeles, and London offices. While they had different titles, as a practical matter their primary responsibility included taking HW to parties at which he could meet young women, and introducing him to young women seeking opportunities at TWC with whom he could attempt to engage in sexual relations. These women were described by some witnesses as members of HW's TWC "roster" or his "wing women." One of the members of this entourage was flown from London to New York to teach HW's assistants how to dress and smell more attractive to HW, as described further herein.

45.     A second group of employees served as his assistants. Predominantly female assistants were compelled to take various steps to further HW's regular sexual activity, including by contacting "Friends of Harvey" ("FOH") and other prospective sexual partners via text message or phone at his direction and maintaining space on his calendar for sexual activity. Two TWC employee witnesses described having to procure HW's erectile dysfunction shots, one of whom received a TWC bonus for obtaining them and was at times directed by HW to administer the injections. Another TWC witness described how she had to ensure HW had an adequate supply of them in his travel bag—referred to within the company as his "go bag"—at all times. One TWC employee was tasked with preparing a room in TWC's offices for HW's sexual activity when he wished to have sexual encounters in the office, and with cleaning up when it was over. Articles of women's clothing were left behind on occasion after these incidents, making clear what transpired during these encounters and requiring TWC employees to make arrangements for their return.

46.     The common occurrence of sexual activity in the workplace by TWC's co-CEO, sometimes while or immediately after employees were working in office space adjacent to the room where the activity occurred, contributed to the hostile work environment.

47.     Certain of HW's assistants were threatened with termination of employment if they did not serve in gendered roles such as providing childcare to his young children, obtaining prescriptions for medicine, and performing other domestic labor such as assisting HW's wife or one of HW's adult daughters. One employee formally complained of this conduct to Human Resources in 2015, noting that she did "not appreciate being given work that my male counterparts are never asked to complete." Human Resources replied to this complaint as follows: "Please keep me updated on this…." The employee received no follow-up communications from TWC executives and no remedial actions was taken as a result of the complaint, reflecting that TWC conducted no meaningful investigation of the complaint.

48.     That same employee followed up the next month with an email entitled "Well, you asked me to keep you updated . . . ." in which the employee stated that rather than obtaining a promotion to executive, she was threatened with termination if she did not start taking care of personal tasks for HW such as dealing with HW's doctors—work that "the boys" at TWC were never asked to perform. When the employee refused to assume this domestic role, HW stated, according to the second written complaint to Human Resources, "if that's your attitude fuck you and get out." The employee received no response from TWC executives and no remedial action was taken as a result of the complaint, reflecting TWC conducted no investigation of this complaint either. The employee left the company, having been retaliated against for refusing to accede to HW's demands.

14

49.     A third group of predominantly female TWC employees—a group of female executives—also were forced to facilitate HW's sexual conquests. These female employees' job responsibilities should have been confined to using their expertise to help TWC produce films and television projects. Yet despite their skills and stated job responsibilities, HW required them to meet with prospective sexual conquests in order to facilitate HW's sexual activity, and to follow through on HW's promise of employment opportunities to women who met with HW's favor. This compelled service demeaned and humiliated the female executives, contributing to the hostile work environment.

50.     The practice of sending female TWC executives to meetings with HW's prospective sexual conquests was overt within the company. HW's assistants were aware that HW would want a female executive to be present at the outset of any such meeting with a prospective sexual conquest, and were trained to ask HW which executives HW would want to have present at the meetings.

51.     One female executive described her dismay at being compelled to take meetings clearly not for business purposes but for the purpose of facilitating HW's sex life. Male creative executives were not forced to take these kinds of meetings. As the executive reported to TWC's Human Resources department: "only female executives are put in these positions with actresses with whom HW has a 'personal friendship,' which to my understanding means he has either had or wants to have sexual relations with them. Female TWC employees are essentially used to facilitate his sexual conquests of vulnerable women who hope he will get them work." TWC took no steps to investigate these allegations or to prevent future recurrence of such conduct.

**B.**     *Quid Pro Quo* **Sexual Harassment**

52.     HW made *quid pro quo* offers or demands of sexual favors in exchange for career advancement at TWC, or to avoid adverse employment consequences at TWC. HW's overt *quid pro quo* sexual harassment further contributed to the hostile work environment within TWC.

53.     The *quid pro quo* harassment took several forms, including demands for sex or intimate physical contact in exchange for career advancement, or qualifying career opportunities on flirtatious or otherwise attractive dress and behavior.

54.     According to information provided to TWC employees interviewed by the OAG, in one instance in late 2014, HW approached a young female TWC intern, and told her to write her name and phone number on a slip of paper. The intern, who had not had interactions with HW before, was surprised and complied. HW asked her to join him for dinner that night but she declined, citing pre-existing plans. He told her to cancel them and that he would call her that night. When HW called, the employee again refused to meet him, and he ultimately proposed a meeting at 7:30a.m. at the Peninsula Hotel where he was staying. When she arrived at the hotel, HW made clear that he wanted a sexual relationship and proceeded to name famous actresses whose careers he purportedly had advanced after they agreed to his proposition. HW proposed a similar *quid pro quo* relationship to the intern. The intern spent an hour repeatedly saying no to his entreaties and refusing to come up to HW's hotel room. After the incident, the intern left the company. The complaint was reported to Human Resources and to company executives, but TWC took no institutional action to protect interns from HW or prevent future recurrence of such conduct.

55.     On another occasion in 2015, HW asked a female TWC employee to go to his hotel room at the end of the day to set up his phone and devices for the next day or some other alleged work reason (work that TWC employees referred to as "turndown service," and that was

16

generally assigned to female TWC employees). Upon her arrival at his hotel room, HW appeared naked under a bathrobe and asked her for a massage. When the employee said no, HW cajoled, badgered, and insisted until she relented and, against her wishes, submitted to massaging him out of fear of employment-based retaliation by HW. The incident was reported to Human Resources and to TWC executives and Board members in November 2015, but TWC took no action to formally investigate the complaint, to protect employees from HW, or to prevent future recurrence of such conduct.

56.     On other occasions in 2014 and 2015, HW exposed himself to a female employee and made her take dictation from him while he leered at her, naked on his bed. That same employee described how HW would insist that she sit next to him in the back seat of his chauffeured vehicle and would place his hand on her upper thigh and buttocks near her genitalia and rub her body without her consent. When she attempted to place bags or other barriers between them to make it harder for him to reach her, he moved the barriers or repositioned himself so that the unwelcome sexual contact could continue. This employee, and other TWC employees, believed that they would face adverse employment consequences unless they acquiesced to such demands.

57.     On one occasion, HW asserted that he might have to fire a female employee because his daughter (for whom the employee was providing assistance at HW's direction) was angry with her, and he asked the employee what she was "prepared to do" to keep her job—a proposition that the female employee understood as a demand for *quid pro quo* sexual activity. The employee quit rather than submit to the demand for sex in exchange for continued employment.

58.     Another TWC employee did succumb to HW's demands for sex. The former employee informed the OAG that the sexual activity was forced and unwelcome, and was compelled out of fear of career repercussions and HW personally.

59.     To avoid unwanted touching, leering, or remarks by HW, some female TWC employees took to wearing pants instead of skirts or dresses, or wearing clothes that provided greater physical coverage.

60.     To this HW made comments such as, "why don't you dress cute?," "you walk like a man," or "you can be pretty," making clear that physical attractiveness and femininity were necessary in order for the employee to be successful at TWC. As reported to Human Resources, company executives, and the Board in 2015, and as was known more generally within TWC, HW rewarded some female TWC employees with opportunities for career advancement (including access to meetings and other business opportunities) based on how attractive they appeared to him on that day, as he himself told the women. TWC did not take adequate steps to investigate these allegations or to prevent future recurrence of such conduct.

61.     At one point, as recounted by one witness, HW brought in a female member of the "roster" from TWC's London office to teach his female assistants in the New York City office on how to make him "happy." Her tips included wearing skirts or dresses, looking feminine, showing more leg or a shoulder, wearing high heels, smelling "good," and introducing him to women. Female assistants were thus made to understand that career opportunities were connected to the degree to which they were attractive to HW and facilitated HW's sexual contact with women.

**C.     HW's Use of TWC Employees and Resources in Supporting His Sexual Misconduct**

18

62.     HW's assistants were exposed to and required to facilitate HW's sex life as a condition of employment. HW employed a team of up to five assistants at any given time. Over the relevant time period, over a dozen people served in these positions due to frequent turnover and promotions of assistants who met with his favor. HW typically tasked his female assistants with scheduling, arranging, and facilitating his sexual encounters, which were referred to within the company as "personals."

63.     HW's assistants learned of two categories of HW's prospective or consummated sexual encounters. Over time, the assistants had compiled one list that was maintained on TWC's electronic shared directory and consisted of names of women, organized by city, whom HW contacted regularly for sexual encounters. This list was known internally as the "Friends of Harvey" or "FOH" list. This list was maintained in the HW Office electronic shared folder, and was accessible to TWC employees. This list categorized women by city, so that upon arriving in a particular city with HW, his assistants could readily find the contact information for the women he demanded that the assistants contact on his behalf.

64.     The assistants also utilized a second common method for keeping track of the women in whom HW was interested sexually or with whom HW had had a sexual liaison, noting them in HW's electronic TWC contact list with an asterisk. The asterisk was used by assistants to make it easier to distinguish women with whom HW typically scheduled "personals" and people with whom HW had non-sexual relationships.

65.     HW's assistants developed these methods of tracking of the objects of HW's sexual desire because they were keenly aware that an inability to quickly identify and contact the specific woman HW referenced posed a risk to their careers. HW made this clear by regularly threatening assistants and their jobs for any perceived mistakes.

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 96 of 157

66.     In HW's schedule, maintained collectively by his assistants, meetings with "FOHs" or other would-be sexual contacts were explicitly dubbed "HW personal" or were deliberately excluded from his schedule; in the latter case other communications among assistants and HW made clear that a time slot had to remain open for HW's "personal."

67.     All HW assistants were required to send emails dictated by HW as part of their job duties. However, in addition to sending emails to business contacts or as part of business operations, HW required his assistants to send emails and text messages, sometimes dictated, to would-be sexual partners and relay their responses to him, using TWC email accounts and phones.

68.     At times, assistants were required to write multiple emails or text messages in the course of a single hour—using TWC equipment and email accounts—to an intended sexual interest if she did not respond or if she rebuffed HW's initial advances.

69.     HW required his assistants to schedule "personals" for sexual activity both during the workday and after work. Upon arranging a "personal," assistants were required to clear or adjust any and all other scheduled plans that potentially conflicted with the "personal," sometimes at great difficulty. If an assistant failed to do so, HW became enraged and made clear to assistants that compromising a "personal" appointment also compromised their careers.

70.     Assistants possessed copies of a document known as the "Bible," an assistant-created guide to working for HW that was passed down through Assistants. The document sat in hard copy on several Assistants' desks, and was accessible to and known to exist by some TWC executives. The Bible included information about HW's likes and dislikes, and a list of his "friends" with directions for assistants on how to arrange HW's extensive and frequent "personals."

71.     Knowledge of "personals" was not limited to HW's assistants or HW's office suite.  As co-Chair and co-CEO of TWC, HW's unavailability for periods of time during the workday for "personals" was well known to TWC executives. According to one witness who handled calls from TWC executives to HW, executive staff became familiar enough with "personals" to know that they generally lasted anywhere from twenty-five minutes to one hour. Thus, upon learning HW was with a "friend," some executives who reached his assistants during "personals" often inquired what time his "personal" began in order to estimate when HW's sexual encounter would conclude and contact him at that time.

72.     TWC funds paid for the office space and for the hotel rooms used for many of these personal encounters, which were booked using TWC's travel agent. In addition, while HW often initially held out job opportunities, invitations or tickets to events, and other access to the entertainment industry to young women in exchange for sexual relations, he also required that assistants help purchase flowers, gifts, robes, lingerie, and other gifts for his "friends." These purchases frequently were made on TWC corporate credit cards.

73.     A female employee who was once responsible for coding HW's expenses as "business" or "personal" recounted being told by HW to categorize as many of HW's expenses as "business" as possible. She gave the example that if HW had a sexual encounter with a woman, and that same woman had once auditioned for a TWC project, then she understood that she was expected to categorize expenses related to the sexual encounter as "business."

74.     HW made it clear to his female employees that anyone who protested his demands to orchestrate these encounters would suffer retaliation.

75.     Several of TWC's female creative executives were exposed to and required to facilitate HW's sex life as a condition of employment. HW demanded that female executives

21

fulfill tasks for him such as obtaining the contact information of his sexual targets and meeting with these women in order to put them at ease and facilitate them into private meetings with him.

76.      Additionally, female executives were frequently forced to meet with women with whom HW had sexual relations or hoped to have sexual relations, in order to discuss their "career trajectory" and opportunities that HW instructed them to address with the women.

77.      HW frequently targeted vulnerable, aspiring models, actresses, and entertainers as sexual conquests, using access to TWC and other industry opportunities that purportedly would be made available by his female executives, acting at his direction, as a bargaining chip in return for sexual favors. HW used female executives' participation in these meetings to make clear that his contact with these women was in his professional capacity as CEO of TWC and to lend an "official" air to the encounters.

78.      Female executives quickly came to understand that some of the meetings that they were required to attend were not for legitimate business purposes. For example, on some occasions, female executives were instructed to discuss with HW's actual or intended sexual conquests career opportunities that the executives knew were not appropriate for the women, *e.g.*, English-speaking roles with women who did not speak fluent English.

79.      Other women came onto TWC payroll at HW's demand, upon information and belief because HW had or sought to have sexual relations with them and promised them a position at TWC. It was not uncommon for young women to appear at TWC's New York City or Los Angeles office on the understanding that they were to be given a paid position, although they did not appear to have participated in standard interview processes and to fill an unspecific job position with no clear role or responsibilities. These women would then be given a desk and put on payroll, much to the dismay and annoyance of other TWC employees. Upon information and

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 99 of 157

belief, TWC's management asked for a list of these women at one point, pursuant to a review of company finances. These women, however, were not immediately removed from payroll by TWC upon completion of the review.

80.   HW also used TWC's financial resources to fly women with him or to him for engaging in or facilitating sexual encounters.

81.   Additionally, HW's drivers in both New York City and Los Angeles were required to keep condoms and erectile dysfunction injections in the car, in order to provide them to HW as needed.

82.   Certain of HW's erectile dysfunction injections were charged to HW's corporate credit card, and at least one bonus paid by TWC to an assistant for her assistance in procuring HW's erectile dysfunction drugs for him.

83.   It is during these TWC-funded and -facilitated "personal" encounters in his office and hotel rooms that, upon information and belief, HW engaged in unlawful sexual conduct with numerous women.

**D.    TWC and RW Acquiesced to HW's Misconduct**

84.   TWC is responsible for the unlawful conduct described herein. When the legal violations described herein were committed, HW was a co-owner, co-CEO, and co-Chairman of TWC. As the most senior member of TWC management, the actions taken by HW in the course of managing TWC and conducting TWC business are attributable to TWC.

85.   Moreover, HW was only able to engage in repeated and persistent unlawful conduct because of the failure of key members of TWC's management and Board to ensure that the company complied with relevant nondiscrimination laws and prevent its executives from engaging in unlawful conduct while representing the company. The company's acquiescence

renders it responsible for HW's misconduct on separate grounds. RW also is liable as a co-owner and co-CEO of TWC who was aware of HW's misconduct and who failed to take reasonable steps to investigate and end it.

**Failures of Management**

86.    Key members of TWC management were fully aware of HW's creation of a hostile work environment and his sexual harassment of others, yet they did not take reasonable steps to investigate or stop it, or to protect TWC employees from ongoing victimization. To the contrary, certain members of TWC management deliberately looked the other way or took actions that enabled HW to retaliate against employees who complained of misconduct.

87.    The OAG has learned that, while TWC had a policy manual that contained a policy prohibiting sexual harassment and discrimination, the policy was flouted in practice. Employees who might have had reporting responsibilities, such as employees with supervisory responsibilities, did not receive any training or guidance about TWC's sexual harassment and discrimination policies, including what constituted unlawful harassment or discrimination, how to assist or personally report or otherwise handle a harassment or discrimination complaint, how investigations were conducted, or what remedial actions and privacy or anti-retaliation protections existed, were provided to any employees interviewed by the OAG.

88.    According to the policy manual, complaints of harassment were to be submitted to the head of Human Resources (the "Human Resources Director"), who had the authority to decide whether a complaint had sufficient merit to warrant investigation. The Human Resources Director's regular practice was to escalate any complaints deemed to be significant to the TWC COO, to whom the Human Resources Director directly reported.

89.     For example, in a May 2015 email obtained by the OAG, the Human Resources Director forwarded a complaint to the COO from a woman who worked for TWC, but who was expected primarily to serve as assistant to HW's daughter. In the email, the Human Resources Director stated to the COO: "we need to discuss a settlement and nda." According to material in HW's personnel file, such a settlement agreement was negotiated soon after the email from the Human Resources Director to the COO.

90.     On more than one occasion, upon forwarding a complaint or information about a complaint to the COO, the Human Resources Director was not involved in any investigation or resolution process. Based on documents obtained by the OAG to date, such matters were handled by the COO and other members of TWC senior management, as well as counsel retained to contact victims of misconduct.

91.     On numerous occasions during the relevant time period, victims of HW's misconduct complained to the Human Resources Director or to other TWC management about various aspects of the conduct described herein. On not a single occasion was HW subject to a formal investigation or to restrictions on his behavior or adverse employment consequences, as a result of any complaint.

92.     Evidence gathered during the course of the investigation reflects that the Human Resources Director was not empowered to take any steps to address HW's ongoing sexual harassment of female employees. Victims of HW's misconduct have stated that when they complained to Human Resources about HW's efforts to intimidate them, use sexually demeaning language to refer to them, and issue verbal threats of sexual or physical harm, the Human Resources Director stated, in substance, that he "sympathized" with their plight, that they had a "tough job" working for HW, but that there was nothing he could do to address the misconduct.

25

93. On another occasion, a complainant who described serious misconduct was informed, in substance, that the Human Resources Director was "going to have to speak to HW" about the complaint. When the complainant expressed concern that she would be subjected to retaliation by HW if he were informed about the complaint, the Human Resources Director said that while "technically" HW could not retaliate in this manner, he could not prevent HW from doing so, stating, in substance "but I mean his name is on the sign." Individuals who complained to Human Resources were in fact subject to retaliation by HW as a result of their complaints.

94. On certain occasions when individuals did complain to Human Resources, those complaints were not treated confidentially, nor were they investigated. For example, on one occasion, an assistant to HW wrote an email to Human Resources complaining of certain misconduct by HW. Soon thereafter, the assistant, who had access to HW's email account due to her role at TWC, saw that her complaint had been forwarded directly to HW via HW's email account.

95. On several occasions when TWC employees complained about serious misconduct by HW, TWC took steps to separate the employee from the company while securing an NDA that would prevent the employee from disclosing the misconduct to others or warning others about the misconduct. These NDAs were contained within settlement agreements entered into by TWC itself. While the source of the funds used to pay for the monetary component of any settlement remains under investigation, TWC's participation as a party to settlements, and its receipt of complaints concerning misconduct leading to those settlements, reflect that members of TWC's management were fully aware of numerous settlements involving claims of misconduct by HW brought by TWC employees.

96. Members of company management also understood that HW was using company resources to facilitate his sexual exploits, including his employment on the payroll of the "roster" of women described above and his use of company resources for sexual encounters. On certain occasions, company employees expressed concerns about HW's improper charges to company accounts, but would be dissuaded from following through by fear of angering HW. At a meeting in 2015, TWC's management requested that HW take his "roster" of women off of the payroll, and that he desist from using corporate cards and accounts for inappropriate expenses. While HW's use of corporate cards after this 2015 meeting remains under investigation, certain members of the "roster" remained on staff after that date, and HW suffered no adverse employment consequences as a result of his misuse of corporate resources.

97. RW, as co-owner, co-Chairman, and co-CEO, was responsible for maintaining a safe workplace, free of sexual harassment and other unlawful conduct. Yet instead of doing so, RW acquiesced in allowing HW to create a hostile work environment and engage in sexual misconduct that was known to RW, or which he was responsible for preventing.

98. For example, RW knew that HW used sexually explicit and demeaning slurs to refer to female employees, having participated in meetings in which HW used those terms. Upon information and belief, RW also has admitted to the press that he paid for prior settlements of claims made by women against HW, after those claims were made known to him as a member of management of RW's and HW's prior company, Miramax.

99. RW also received by email in late 2014 and 2015, and was otherwise informed of, claims of repeated and persistent sexual harassment and misconduct, but he took no measures to further investigate the claims of misconduct, to terminate HW's employment, to restrict or prohibit HW from supervising women or having or seeking sexual contact with TWC employees

or women seeking to do business with TWC, or from HW having private meetings with employees or women seeking opportunities in hotel rooms or TWC office space, or any other concrete measure that may have avoided HW's ongoing misconduct.

100.    In addition, other members of company management understood that HW acted inappropriately towards women and sexually harassed them. They personally observed numerous occasions on which HW referred to women using sexually demeaning terms in front of others. They had opportunity to observe the presence of the "roster" on TWC's payroll. They also received or otherwise were made aware of information from complainants. Yet no adverse employment action was taken against HW due to his power within the company and his perceived importance to the company's financial results.

### Failures of Corporate Oversight

101.    TWC's Board also failed to inquire adequately into, or to restrain or prevent, the repeated and persistent unlawful conduct occurring at TWC. In part this was due to HW's and RW's effective control of the Board through their own participation on the Board and their ability to appoint or influence the appointment of others to the Board, leaving a small minority of the Board truly independent of HW and RW. In part these failings were due to concerns that HW's removal, or even exposure of his misconduct, would risk harming the financial interests of company ownership, which included Board members or Board members' employers. Finally, in part the reluctance to restrict or remove HW was due to personal relationships that many Board members had with HW. The Board's decision to avoid investigating credible claims of misconduct, and to shield HW from consequences of that misconduct, enabled HW to continue victimizing employees of TWC until his misconduct was revealed by press reports.

28

102.   Reflecting the failings of the Board, the Board failed to investigate adequately credible claims of HW's misconduct presented to it by members of TWC management and an independent Board member, and to terminate or place meaningful restrictions on HW's continued employment at TWC when presented with the opportunity to do so.

103.   Specifically, by early 2015, certain corporate executives at TWC who had received and handled numerous claims of misconduct from TWC employees, including the COO, became so concerned about HW's misconduct towards women, as well as his expenditure of company resources on improper items, that they decided they needed to notify an independent member of the Board about the misconduct.

104.   In the private meeting with an independent Board member, certain members of TWC management carried with them and described complaints contained in HW's personnel file, as well as their general concerns about HW's treatment of women and his financial misconduct. They suggested that HW had become harmful to TWC and his conduct presented a risk to the company. This information should have been cause for immediate follow-up interviews and investigation, but no such investigation took place.

105.   Instead, that information became relevant to negotiations between the Board and HW concerning extension of HW's employment contract.  HW's original employment contract with TWC, entered into in or about 2005, explicitly provided for his termination from the company only in extreme circumstances, including conviction of a felony offense. (It did not explicitly prevent the Board from taking actions that would help prevent future recurrence of misconduct, such as limiting his managerial authority or restricting his ability to supervise employees or interact with women in his hotel room, but the Board did not undertake any of these actions.) That original employment contract expired at the end of 2015. The Board was

29

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 106 of 157

under no obligation to renew the contract; thus, HW's continued employment could have been terminated in 2015, or the Board could have insisted that HW take a reduced non-supervisory role with greater oversight that presented lower risk to the company.

106.   In response to the information obtained from TWC management, independent Board members sought access to HW's personnel file so that counsel representing it could use the personnel file and other information to evaluate whether the Board would recommend renewal of HW's contract. HW resisted the independent directors' efforts to obtain a copy of his personnel file and otherwise investigate his misconduct, on the purported grounds that the contents of the file would be leaked to the press if disclosed to the Board. There was no basis for this claim; instead, HW sought to prevent access to his personnel file to avoid discovery of the extent of his own misconduct. A majority of the Board refused to back the independent Directors' efforts to obtain HW's personnel file; thus, the Board failed to undertake efforts that may have resulted in discovery of at least a portion of HW's misconduct.

107.   Rather than investigate claims of misconduct by HW or take appropriate steps to protect TWC employees from HW's unlawful conduct, the Board in 2015 negotiated a contract extension with HW that placed no effective restrictions on his activity. The Board did require HW to, as of 2016, promise to comply prospectively with a Code of Conduct that was written to address what the Board understood to be HW's prior misconduct, including sexual harassment and financial impropriety. HW's 2015 contract extension, however, only permitted termination of HW's employment due to a Code of Conduct violation if the violation was "willful" and a majority of the Board, as well as RW, determined that the willful violation had "caused serious harm to the company."

108.    HW's contract extension also contained an unusual provision that effectively
monetized, rather than prohibited, ongoing acts of sexual harassment and misconduct. In
particular, it stated that if TWC had to "make a payment to satisfy a claim that you [i.e., HW]
have treated someone improperly in violation of the Company's Code of Conduct," he would
face escalating financial penalties: $250,000 for the first such instance, "$500,000, for the second
such instance, $750,000 for the third such instance, and $1,000,000 for each such additional
instance." This contract contained no provision for any penalties if HW personally covered the
costs of any payments necessary to satisfy claims of improper treatment, and it provided for no
adverse employment consequences in the event that one, two, three, or even four or more such
payments had to be made by TWC and/or HW as a result of HW's sexual harassment or
misconduct. Thus, pursuant to HW's employment contract, HW could continue engaging in
sexual harassment and misconduct with impunity, provided that he paid the costs of any
settlements and that he avoided disclosure of misconduct that might risk causing "serious harm
to the company."

109.    Board minutes reflect that the Board ratified HW's new employment contract
unanimously. No future efforts were undertaken by the Board to investigate HW's misconduct or
TWC's practices concerning that conduct until HW's termination in October 2017. Any efforts
by independent directors to restrain HW's conduct were overcome by HW, RW, and directors
friendly to HW and RW. No penalty payments ever were made by HW pursuant to the
employment contract, and HW was not terminated until after his misconduct was revealed to the
public in October 2017.

110.    In November 2015, after renewal of HW's employment contract, TWC was
presented with specific and detailed allegations of sexual harassment and misconduct by a TWC

31

Case 1:18-cv-04115-PAE Document 12-1 Filed 05/16/18 Page 108 of 157

employee. Those allegations referenced other witnesses and victims within the company who could have been interviewed about the claims. That employee also was available to be interviewed and questioned.

111. Out of fear of retaliation and adverse career consequences, the employee agreed to withdraw the complaint in exchange for a settlement with TWC—not HW personally—that included an NDA. In connection with that settlement, however, the employee specifically informed TWC through its counsel that she was not withdrawing any of the allegations contained in the complaint; TWC's counsel agreed to confirm this understanding in writing, informing the complainant's counsel in a November 6, 2015 letter that in connection with the settlement, "your client's withdrawal of the Complaint she previously made does not imply any retraction of the statements made in that Complaint." Despite this reaffirmation, no effort was made to investigate any of the allegations contained within the complaint. To the contrary, upon information and belief, TWC's Human Resources Director was instructed to remove the complaint from HW's personnel file because it had been withdrawn, and the issues identified by the complaint remained unexamined and unremedied until HW's expulsion from the company almost two years later.

112. Absent these failings of corporate management and oversight described herein, HW would not have been able to continue to engage in the repeated and persistent unlawful conduct described herein for several years with impunity.

### FIRST CAUSE OF ACTION
**Pursuant to Exec. Law § 63(12)**
**Violation of NYSHRL § 296(1)**
**Against Respondents HW and TWC**

113. The Attorney General repeats and re-alleges, as though fully set forth herein, all of the preceding paragraphs.

32

114.     New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §
296(1)(a), provides that it is an unlawful practice for "an employer . . . because of the . . . sex . . .
of any individual, to refuse to hire or employ or to bar or to discriminate against such individual
in compensation or in terms, conditions or privileges of employment." The NYSHRL is violated
when a workplace is permeated by discriminatory intimidation, ridicule, or insult sufficient to
alter the conditions or employment ("hostile workplace harassment").

115.     The NYSHRL is also violated when a managerial or supervisory employee trades
or attempts to trade favorable employment terms, conditions, or privileges for sexual favors
("quid pro quo harassment").

116.     Through the actions and inactions described above, Respondents HW and TWC
repeatedly and persistently violated the NYSHRL by subjecting employees to a sex-based hostile
work environment, targeting female employees for *quid pro quo* harassment, and otherwise
discriminating against female employees in the terms, conditions, and privileges of employment.

117.     Such conduct was willful, wanton, and malicious.

118.     By reason of the conduct alleged above, Respondents HW and TWC engaged in
repeated and persistent illegal conduct in violation of NYSHRL § 296(1).

## SECOND CAUSE OF ACTION
### Pursuant to Executive Law § 63(12)
### Violations of NYSHRL § 296(6)
### Against Respondents RW and TWC

119.     The Attorney General repeats and re-alleges, as though fully set forth herein, all
of the preceding paragraphs.

120.     The NYSHRL, N.Y. Executive Law § 296(6), provides that it is "an unlawful
discriminatory practice for any person to aid, abet, [or] compel … the doing of any of the acts
forbidden under this article."

33

121.    As alleged above, Respondents RW and TWC repeatedly and persistently aided and abetted conduct that violates the NYSHRL, namely, the gender-based hostile work harassment of, *quid pro quo* harassment of, and discrimination against female employees by HW.

122.    RW holds an ownership interest in TWC and was a senior executive of the company at all times relevant to the allegations set forth above.

123.    TWC, through the actions and inactions of its executives and senior management, condoned and/or acquiesced in HW's sexual harassment of and gender-based discrimination against female employees.

124.    Such conduct was willful, wanton, and malicious.

125.    Through such unlawful conduct, Respondents RW and TWC engaged in repeated and persistent illegal conduct in violation of NYSHRL § 296(6).

<u>**THIRD CAUSE OF ACTION**</u>
**Pursuant to Executive Law § 63(12)**
**Violation of NYCHRL § 8-107**
**Against All Respondents**

126.    The Attorney General repeats and re-alleges, as though fully set forth herein, all of the preceding paragraphs.

127.    The New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107(1)(a), prohibits discrimination on the basis of gender.

128.    The NYCHRL is violated when employees are treated "less well" than others, because of their gender.

129.    As alleged above, Respondents repeatedly and persistently treated female employees less well than male employees through gender-based hostile workplace harassment, quid pro quo harassment, and discrimination.

130.    Pursuant to N.Y.C. Admin. Law 8-107(13)(b), TWC is liable for the violations of

the NYCHRL because the individual who personally engaged in the harassment and

discrimination, Harvey Weinstein, was an executive employee with managerial responsibilities.

131.    TWC is also liable because its executives and senior management knew of HW's

harassing and discriminatory conduct but through their actions and inactions, acquiesced in such

conduct.

132.    TWC is also liable because TWC executives and senior management failed to

take immediate and appropriate investigative or remedial action despite knowledge of HW's

unlawful conduct.

133.    Alternatively, TWC is liable for HW's unlawful conduct because it should have

known of HW's actions and failed to exercise reasonable diligence to prevent his sexual

harassment of and gender-based discrimination against employees.

134.    The unlawful discriminatory practices described herein were the result of the

Respondents' willful, wanton, and malicious acts.

135.    By reason of the conduct alleged above, Respondents engaged in repeated and

persistent illegal conduct in violation of NYCHRL § 8-107.

**FOURTH CAUSE OF ACTION**
**Pursuant to Executive Law § 63(12)**
**Denial of Equal Protection Under the New York Civil Rights Law**
**Against All Respondents**

136.    The Attorney General repeats and re-alleges, as though fully set forth herein, all

of the preceding paragraphs.

137.    New York Civil Rights Law § 40-c provides that "No person shall, because of

race, creed, color, national origin, sex, marital status or disability . . . be subjected to any

35

discrimination of his civil rights . . . by any other person or by any firm, corporation or institution

. . . ."

138.    Respondents have knowingly, repeatedly, and persistently, deprived women of

equal treatment in terms, conditions, and privileges of employment and of the right to be free

from severe or pervasive hostile treatment because of their sex.

139.    By reason of the conduct alleged above, Respondents discriminated against

persons based on sex in violation of New York Civil Rights Law §40-c.

**FIFTH CAUSE OF ACTION**
**Pursuant to Executive Law § 63(12)**
**Persistent or Repeated Illegal Business Conduct**
**Against All Respondents**

140.    The Attorney General repeats and re-alleges, as though fully set forth herein, all

of the preceding paragraphs.

141.    A violation of state, federal or local law constitutes illegality within the meaning

of Executive Law § 63(12) and is actionable thereunder when persistent or repeated.

142.     HW, operating in his capacity as TWC's co-owner and co-CEO, and using TWC

employees and resources to facilitate his unlawful activities, repeatedly and persistently violated

New York Penal Law provisions prohibiting forcible touching (Penal Law § 130.52), sexual

abuse (Penal Law § 130.55), and coercion (Penal Law § 135.60), unlawful sexual misconduct

(Penal Law § 130.20), criminal sexual acts (Penal Law § 130.40), and attempts to commit the

same.  TWC is liable for such misconduct.

143.    Through the conduct, policies, and/or practices described herein, Respondents

engaged in persistent and repeated violations of NYSHRL, NYCHRL, NYCRL, and NY Penal

Law in the carrying on, conducting, and transaction of business in violation of New York

Executive Law § 63(12).

36

**WHEREFORE**, Petitioner requests an order and judgment pursuant to Executive Law § 63(12) and NYSHRL § 296(1) & 296(6), CRL § 40(c), and NYCHRL § 8-107(1)(a):

1. Permanently enjoining Respondents from violating Executive Law §63(12), NYSHRL § 296(1) & 296(6), CRL § 40(c), NYCHRL § 8-107(1)(a), and relevant provisions of the Penal Law, and from engaging in the illegal acts and practices alleged in the Verified Petition;

2. Directing Respondents to pay a civil penalty to the State of New York in the sum of $100,000 for each violation of NYSHRL § 296(1) and of NYSHRL § 296(6), $250,000 for each violation of NYCHRL § 8-107(1)(a), and $500 for each violation of CRL § 40(c);

3. Directing Respondents to pay restitution and damages in the amount of the harm to the victims of Respondents' illegal conduct in connection with its hostile workplace environment and sexual harassment of women;

4. Ordering such remedial equitable relief as is warranted based on the illegal acts and practices described above, including judicial or other supervision of compliance with the prohibitions on continued unlawful conduct; freeing women who signed NDAs negotiated by Respondents from those NDAs; prohibiting any corporate or financial transaction that would enable Respondents to evade the continued jurisdiction of the Attorney General and this Court, undermine compliance with the terms of any judgment, or conceal proceeds of any sale of TWC or any of its assets;

5. Awarding Petitioner the costs of this proceeding pursuant to CPLR § 8303(a)(6); and

6. Granting such other and further relief as the Court deems just and proper.

37

Dated:  February 11, 2018
        New York, New York

                Respectfully Submitted,


                ERIC T. SCHNEIDERMAN
                Attorney General of the State of New York
                Attorney for Petitioner
                120 Broadway
                New York, NY 10271
                212-416-8250


By: _____/s_____

                ANJANA SAMANT
                Assistant Attorney General
                Civil Rights Bureau
                Anjana.samant@ag.ny.gov

                HOWARD MASTER
                Senior Enforcement Counsel

                AMANDA ADDISON
                Volunteer Assistant Attorney General
                Civil Rights Bureau

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 115 of 157

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, | ATTORNEY AFFIRMATION IN SUPPORT OF VERIFIED PETITION |
| Petitioner, | Index No. IAS Part Assigned to Justice |
| v. | |
| THE WEINSTEIN COMPANY LLC, THE WEINSTEIN COMPANY HOLDINGS LLC,  HARVEY WEINSTEIN, and ROBERT WEINSTEIN, | |
| Respondents. | |

ANJANA SAMANT, an attorney duly admitted to practice before the courts of this State, makes the following affirmation under the penalties of perjury:

1.       I am an Assistant Attorney General in the Office of Eric T. Schneiderman, Attorney General of the State of New York (the "State" or "NYAG"), assigned to the Civil Rights Bureau, and am duly authorized to make this verification.

2.       I have read the foregoing Petition and know the contents thereof, which are to my knowledge true, except as to matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

3.       The basis for my belief as to all matters stated upon information and belief are the investigatory materials contained in the files of the Civil Rights Bureau of the New York State Office of the Attorney General.

4.       The reason this verification is not made by the Petitioner is that the Petitioner is a body politic and the Attorney General is their duly authorized representative.

WHEREFORE, it is respectfully requested that the petition be granted in all respects.


Dated:  February 11, 2018
       New York, New York

                          Respectfully Submitted,




                  By: _____/s_____

                        ANJANA SAMANT
                        Assistant Attorney General
                        Civil Rights Bureau
                        Anjana.samant@ag.ny.gov

2

# EXHIBIT

# B

RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorney for Plaintiff
551 Fifth Avenue, 29th Floor
New York, N.Y. 10176
Tel:    (212) 684-1880
Fax:   (212) 689-8156

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF   NEW YORK
-------------------------------------------

SANDEEP REHAL

Plaintiff(s),

*-against-*

HARVEY WEINSTEIN, THE WEINSTEIN COMPANY LLC,
THE WEINSTEIN COMPANY HOLDINGS LLC, ROBERT
WEINSTEIN, AND FRANK GIL

Defendant(s).
-------------------------------------------

Index No.

**Summons**

Date Index No. Purchased:   February 27, 2018

To the above named Defendant(s)

Harvey Weinstein, The Weinstein Company LLC, The Weinstein Company Holdings LLC, Robert Weinstein and
Frank Gil

You are hereby summoned to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, on the Plaintiff's attorney within 20 days after the service of
this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

The basis of venue is   CPLR 503(a)
which is   the county in which a substantial part of the events or omissions giving rise to the complaint occurred.

Dated:   New York, New York

February 27, 2018

Eisenberg & Schnell LLP

by_____

Laura S. Schnell

Attorneys for Plaintiff

Eisenberg & Schnell LLP
233 Broadway, Suite 2704
New York, NY 10279
lschnell@eisenbergschnell.com
212-966-8900

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | | |
|---|---|---|
| SANDEEP REHAL, | ) | Index No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| - against - | ) | |
| | ) | |
| HARVEY WEINSTEIN, THE WEINSTEIN | ) | |
| COMPANY LLC, THE WEINSTEIN | ) | |
| COMPANY HOLDINGS LLC, ROBERT | ) | |
| WEINSTEIN, AND FRANK GIL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Sandeep Rehal by her attorneys, the Genie Harrison Law Firm, APC, and Eisenberg & Schnell LLP, as and for her Complaint against Defendants Harvey Weinstein, The Weinstein Company LLC, The Weinstein Company Holdings LLC, Robert Weinstein and Frank Gil, alleges as follows:

### NATURE OF THE ACTION

1.     For over two years Plaintiff Sandeep Rehal was forced to work in a pervasive and severe sexually hostile work environment at The Weinstein Company LLC and The Weinstein Company Holdings LLC (collectively referred to as "TWC"), defined by endless offensive, degrading, and sexually harassing actions, statements, and touching at the hands of her boss, Harvey Weinstein.  Plaintiff brings this action against Defendants under the New York City Human Rights Law ("NYCHRL" or the "City law"), Administrative Code of the City of New York §§ 8-101 et seq.

1

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 120 of 157

2.      By February 2015, the hostile work environment created by Harvey Weinstein and condoned and enabled by TWC, Robert Weinstein, and the head of Human Resources Frank Gil, escalated to an emotional breaking point for Ms. Rehal.  She had no choice but to leave the job she needed to support herself.

3.      As a result of the hostile work environment caused by the incessant sexual harassment Ms. Rehal has suffered, and continues to suffer from severe emotional distress, anxiety, depression, humiliation, fear, anguish and loss of self-esteem.

<u>PARTIES, JURISDICTION AND VENUE</u>

4.      Plaintiff Sandeep Rehal was a female employee of Defendants employed as a personal assistant to Harvey Weinstein in TWC's New York City office located in the County of New York from approximately February 2013 to February 13, 2015.  She is a citizen of the state of California and at all relevant times met the definition of an "employee" under the NYCHRL.

5.      Defendants The Weinstein Company LLC and The Weinstein Company Holdings LLC are Delaware limited liability companies whose principal places of business are in New York City, in the County of New York (collectively referred to as "TWC"). TWC is an employer within the meaning of the NYCHRL.

6.      Upon information and belief Defendant Harvey Weinstein is a citizen of the State of New York. He was a Director of the Weinstein Company and was, until he was fired on approximately October 8, 2017, the co-chairman of TWC.  Ms. Rehal was his personal assistant at TWC's New York City office in the County of New York. Harvey Weinstein was Ms. Rehal's employer within the meaning of the NYCHRL.

7.      Defendant Robert Weinstein is a citizen of the State of New York. He was and is a Director of the Weinstein Company, serves as its co-chairman, and is, upon information and

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 121 of 157

belief, an owner of a significant portion of TWC. Robert Weinstein is an employer within the meaning of the NYCHRL. Robert Weinstein aided and abetted his brother Harvey Weinstein's creation of a sexually hostile work environment at TWC for Ms. Rehal and other women.

8.      Upon information and belief Defendant Frank Gil is a citizen of the State of New York. He was TWC's Senior Vice President of Human Resources during Ms. Rehal's employment with TWC, worked in TWC's New York City office, and aided and abetted Harvey Weinstein's creation of a sexually hostile work environment at TWC for Ms. Rehal and other women.

9.      This Court has jurisdiction of this action under NYCHRL §8-502(a).

10.     This Court is an appropriate venue for this action pursuant to CPLR §503(a).

<u>PROCEDURAL REQUIREMENTS</u>

11.     Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

<u>FACTUAL ALLEGATIONS</u>

12.     Ms. Rehal commenced her employment at TWC in approximately February 2013, at age 26, as Harvey Weinstein's personal assistant.

13.     Although Harvey Weinstein told Ms. Rehal when he hired her that "he was "a tough guy and hard to work for," she could never have imagined how awful and terrifying her job would be.

3

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 122 of 157

14.     As Ms. Rehal soon learned, Harvey Weinstein's assistants were expected to be available at all times; there was no boundary between Harvey Weinstein's work life and personal life. Much of Ms. Rehal's work as an employee of TWC involved catering to Harvey Weinstein's sexual appetites and activities, and catering to his demeaning and often abusive family members.

15.     Among Ms. Rehal's myriad tasks was listening to Harvey Weinstein's calls, reading and responding to his emails, managing his doctors' appointment, managing his drivers, doing his shopping, and even getting him clean underwear.

16.     Ms. Rehal was required to be involved in and aware of the preparations for, and clean up after, Harvey Weinstein's extremely prolific sexual encounters.

17.     Throughout her employment with Defendants Ms. Rehal was required, as a condition of her employment, to work with Harvey Weinstein when he was naked.  On an almost weekly basis, she was required to take dictation of emails from him while he was naked.

18.     Harvey Weinstein subjected Mr. Rehal to unwelcome touching.  Almost every time Ms. Rehal accompanied Harvey Weinstein in his chauffeured Lexus SUV, he made her sit in the back with him and touched her thigh.  After Ms. Rehal started wearing pants instead of skirts, Harvey Weinstein would rub between her thighs.  When Ms. Rehal sat cross legged in an attempt to prevent him from being able to touch her thigh, Harvey Weinstein would touch the back of her legs and butt.

19.     When Harvey Weinstein followed Ms. Rehal out to the chauffeured Lexus SUV, he frequently would walk very close to her so that his large belly would touch her. When Ms. Rehal attempted to move away he came even closer and pressed himself against her.

4

20.     Ms. Rehal was also subjected to other extremely offensive physical contact, which should never occur in the work environment and to which she would not have been subjected but for Harvey Weinstein's depraved abuses of power, that were aided and abetted for years by Defendants' acts and omissions.

21.     Harvey Weinstein used sexist and sexual language to refer to Ms. Rehal, *regularly* referring to her as "cunt" or "pussy." On numerous occasions he said, "What's wrong Sandeep, is the tampon up too far today?" His offensive sexist comments about and to Ms. Rehal were constant and were made openly in the presence of other employees of TWC.

22.     Harvey Weinstein repeatedly made remarks to Ms. Rehal about her appearance, and her clothes. Harvey Weinstein told Ms. Rehal she looked good and leered at her. When in a futile attempt to minimize Harvey Weinstein's comments about her appearance, Ms. Rehal started wearing pants, Harvey Weinstein complained to her "you used to dress so cute and now what's going on?"

23.     Harvey Weinstein repeatedly emphasized his absolute power to Ms. Rehal and others. He constantly bragged about his power, stating to Ms. Rehal and other employees, "I am Harvey Weinstein and you are at Weinstein University. I decide whether or not you graduate."

24.     Among Ms. Rehal's responsibilities was to maintain Harvey Weinstein's list of contacts with a special asterisk that identified Harvey Weinstein's "girls," his many sexual partners.

25.     Harvey Weinstein also ordered Ms. Rehal to obtain and set up an apartment close to the office for him to use with one of his sexual liaisons, and purchase women's lingerie for the woman in that apartment as well as gifts for other women.

26.     In addition to maintaining his list of available women, Ms. Rehal was forced to do many other offensive chores to "assist" in Harvey Weinstein's sex life. She was required to manage the stock of Caverject shots for his erectile dysfunction. She had to obtain the shots and keep them stocked in cabinet behind her desk at Harvey Weinstein's TWC office.  Every time Harvey Weinstein went to meet a woman at a hotel, in the office, or elsewhere, which occurred on average at least three times a week when he was in New York, Ms. Rehal was required as part of her job to provide Harvey Weinstein with a shot, which she placed in his jacket pocket or in a brown paper bag.

27.     At one point in Ms. Rehal's employment, the Caverject shots were no longer available from the London doctor who had been prescribing them.  Harvey Weinstein ordered Ms. Rehal to find a supply in the United States and gave her a bonus of $500 paid by TWC for doing so.  Frank Gil, knowing that the bonus was for Ms. Rehal's procurement of erectile dysfunction drugs, authorized the payment.

28.     Another "task" Ms. Rehal was forced to do to aid Harvey Weinstein's sexual encounters was to clean up the semen on the couch in Harvey Weinstein's office. This happened on a regular basis, three or so times a week when Harvey Weinstein was in New York.

29.     Ms. Rehal had to pick up Harvey Weinstein's used Caverject shots, which he tossed on the floor in his office, hotel rooms and his apartment. She also had to pick up his used condom, and clean up rooms before housekeeping personnel would do their work.

30.     Of course, Ms. Rehal was not the only victim of Harvey Weinstein. Upon information and belief and as reported in the New York Times, The New Yorker, and Vanity Fair, Harvey Weinstein's sexual abuse and conduct, and his use of the office, TWC and the staff

6

Case 1:18-cv-04115-PAE   Document 12-1   Filed 05/16/18   Page 125 of 157

to enable it, was common knowledge in the office, to management, to his brother Robert Weinstein and to Frank Gil.

31.     Before she was forced to quit, Ms. Rehal reported various matters relating to Harvey Weinstein to others within the company. Ms. Rehal was the author of a document entitled "Harvey's Friends." On information and belief, Harvey Weinstein has recently had that document destroyed. Also on information and belief, Ms. Rehal's personnel file is missing and may have been destroyed at Harvey Weinstein's request.

32.     By February 2015, Ms. Rehal could not take it anymore. The cumulative effect of the sexually charged environment she was forced to endure, the demeaning tasks she had to perform to enable Harvey Weinstein's sexual behavior, and the physical and emotional abuse she was subjected to left her no choice but to resign.

## CLAIMS FOR RELIEF

### COUNT I
#### (Discrimination and Harassment in Violation of the NYCHRL)
#### (Against Defendants Harvey Weinstein Robert Weinstein and TWC)

33.     Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

34.     Defendants have discriminated against Plaintiff on the basis of her sex in violation of the NYCHRL by denying her equal terms and conditions of employment, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination and sexual harassment, leading to her constructive termination.

35.     Defendants have discriminated against Plaintiff on the basis of her sex in violation of the NYCHRL by creating, fostering, and condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

36.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

37.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

38.     Defendants' unlawful and discriminatory conduct constitutes willful or wanton negligence, or recklessness, or a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard in violation of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

COUNT II
(Aiding and Abetting in Violation of the NYCHRL)
(Against Defendants Harvey Weinstein Robert Weinstein and Frank Gil)

39.     Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs as if set forth fully herein.

40.     Defendant Harvey Weinstein, as set forth above, directly participated in the discriminatory conduct perpetrated against Plaintiff.

8

41.     Defendants Robert Weinstein and Frank Gil aided and abetted Harvey Weinstein's discriminatory conduct.

42.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income for which Plaintiff is entitled to an award of damages.

43.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

44.     Defendants' unlawful and discriminatory conduct constitutes willful or wanton negligence, or recklessness, or a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard in violation of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

(a)     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the City of New York;

(b)     An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Plaintiff for all monetary and/or economic harm, including, but not limited to, loss of income, reputational harm and harm to professional reputation; for harm to her professional and personal reputations and loss of career fulfillment; for all non-monetary and/or compensatory harm, including, but not

9

limited to, compensation for physical injury, pain and suffering, serious psychological and

emotional distress, mental anguish, stress and anxiety, embarrassment and humiliation; all other

monetary and/or non-monetary losses suffered by Plaintiff;

     (c)     An award of punitive damages in an amount to be determined at trial;

     (d)     An award of costs that Plaintiff has incurred in this action, including, but not

limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the

fullest extent permitted by law; and

     (e)     Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      February 27, 2018

Respectfully submitted,

Laura S. Schnell
Eisenberg & Schnell LLP
233 Broadway, Suite 2704
New York, NY 10279
212-966-8900
lschnell@eisenbergschnell.com
*Attorneys for Plaintiff*

Genie Harrison, Esq.
Genie Harrison Law Firm, APC
523 W. 6th Street, Suite 450
Los Angeles, CA 90014
213-805-5301
genie@genieharrisonlaw.com
*Attorneys for Plaintiff*

10

# EXHIBIT
# C

RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorney for Plaintiff
551 Fifth Avenue, 29th Floor
New York, N.Y. 10176
Tel:    (212) 684-1880
Fax:    (212) 689-8156

1  HERMAN LAW
2  5200 Town Center Circle, Suite 540
   Boca Raton, Florida 33486
3  Jeff Herman
   (pending *pro hac vice admission*)
4  Daniel Ellis
   California Bar No.  298639
5  dellis@hermanlaw.com
6  Arick Fudali
   California Bar No. 296364
7  afudali@hermanlaw.com
   Tel:  (305) 931-2200
8  Fax:  (305) 931-0877

9
   *Attorneys for Plaintiff, Dominique Huett*
10

**FILED**
Superior Court of California
County of Los Angeles

**OCT 24 2017**

Sherri R. Carter, Executive Officer/Clerk
By_____
Marion Gomez            Deputy

11     **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
            **FOR THE COUNTY OF LOS ANGELES**
12

BC 6 8 0 8 6 9

13  DOMINIQUE HUETT,                     )  CASE NO:
                                          )
14            Plaintiff,                   )  **CIVIL COMPLAINT ALLEGING**
15        vs.                             )  **DAMAGES FOR NEGLIGENCE**
                                          )
16  THE WEINSTEIN COMPANY LLC,            )  **DEMAND FOR JURY TRIAL**
                                          )
17            Defendant.                  )
                                          )
18                                        )
                                          )
19                                        )
                                          )
20  _____  )

21                    **PARTIES AND JURISDICTION**

22        1.     Plaintiff Dominique Huett is a citizen and resident of New York.

23        2.     Defendant The Weinstein Company LLC (hereinafter referred to as "TWC") is a

24  Delaware limited liability company whose principle place of business is in New York, New

25  York.

26        3.     Venue properly lies in this county in that Defendant regularly conducts business

27  in this county, and the torts described herein were committed in this county. This Court has

28

– 1 –
CIVIL COMPLAINT

1   jurisdiction in that this is a claim for damages of not less than $5 million, well in excess of the

2   jurisdictional minimum of $25,000.

3   **FACTUAL ALLEGATIONS**

4   4.      In or about November 2010, Plaintiff Dominique Huett and Harvey Weinstein

5   arranged to meet each other at The Peninsula Beverly Hills hotel in Beverly Hills, California.

6   Plaintiff was an aspiring actress at the time and the purpose of the meeting was to discuss

7   Weinstein's offer to assist Plaintiff in procuring future television and/or film roles. The

8   communications to arrange this meeting included e-mails from the e-mail address of

9   Weinstein's assistant at TWC.

10  5.      Plaintiff and Weinstein initially met at the bar of The Peninsula hotel, where they

11  discussed Weinstein's interest in assisting Plaintiff with her acting career. During their

12  conversation, Plaintiff noticed Weinstein staring at her breasts. Weinstein asked Plaintiff is she

13  had ever had a "boob job" and asked her to show him her breasts. Plaintiff refused and was

14  made uncomfortable by the question and the request. However, Weinstein informed Plaintiff

15  that the purpose of the questioning was that it would be beneficial for securing future roles if

16  she did not have breast augmentation.

17  6.      At some point during their conversation, Weinstein, who was at the time living at

18  the hotel, invited Plaintiff to his room under the guise of continuing their business meeting.

19  Plaintiff agreed to move the meeting to his hotel room, believing they were to continue their

20  discussion regarding her career.

21  7.      While in Weinstein's room, the two continued their conversation regarding

22  Plaintiff's career. At some point, Weinstein excused himself to use the restroom. After several

23  minutes, Weinstein returned from the restroom wearing only a bathrobe.

– 2 –
CIVIL COMPLAINT

8.      Upon returning, Weinstein asked Plaintiff to perform a massage on him. Plaintiff said, "No," and that she did not feel comfortable by his request. However, Weinstein persisted and would not take "no" for an answer. Weinstein laid on the bed and demanded that Plaintiff perform a massage on him. Plaintiff ultimately complied with his demands and performed the massage.

9.      Subsequently, Weinstein requested to perform oral sex on Plaintiff. Plaintiff was shocked and alarmed by the request and initially refused. Again, Weinstein displayed persistence and would not take "no" for an answer. Weinstein initiated and Plaintiff froze as Weinstein removed her clothing and performed oral sex on her. Weinstein performed oral sex on Plaintiff for several minutes. After performing oral sex on Plaintiff, Weinstein masturbated in front of Plaintiff until he reached orgasm.

10.     At some point during their communications, Weinstein gave Plaintiff the contact information for an executive producer with *Project Runaway*, a television program produced by Defendant, and offered to secure a role for Plaintiff on the program.

11.     Prior to the incident involving Plaintiff, Defendant TWC's executives, officers and employees had actual knowledge of Weinstein's repeated acts of sexual misconduct with women. In particular, Defendant was aware of Weinstein's pattern of using his power to coerce and force young actresses to engage in sexual acts with him. This knowledge was possessed by Defendant's Board of Directors including, upon information and belief, Bob Weinstein.

12.     Upon information and belief, Defendant was aware of allegations of sexual misconduct against Weinstein going back to the 1990s. Upon information and belief, prior to the incident involving Plaintiff, Defendant was aware of multiple claims of sexual misconduct

which were settled with the victims prior to the filing of suit. This knowledge was possessed by Defendant's Board of Directors including, upon information and belief, Bob Weinstein.

13.    Prior to the incident involving Plaintiff, Defendant often aided and abetted Weinstein in the commission of his sexual misconduct. For example, female Weinstein Company employees were often used as "honeypots" to lure his victims into a false sense of security. The "honeypots" would initially join a meeting along with a woman Weinstein was interested in, but then Weinstein would dismiss them, leaving him alone with the woman.

14.    Plaintiff did not discover, and a reasonable and diligent investigation would not have disclosed, that prior to her incident Defendant was aware of numerous allegations of sexual misconduct involving Weinstein. Upon information and belief, the allegations of sexual misconduct involving Weinstein that Defendant was aware of were subject to nondisclosure agreements and/or confidential settlements, and were otherwise only known inside TWC. Upon information and belief, the nondisclosure agreements and/or confidential settlements legally prohibited Defendant TWC, Weinstein, and the victims of the sexual misconduct from discussing the allegations and Defendant's knowledge thereof. As such, even if Plaintiff had conducted a timely and reasonable investigation, she could not have discovered Defendant's prior knowledge of Weinstein's sexual misconduct. Plaintiff was unable to discover Defendant's knowledge of Weinstein's propensity to engage in sexual misconduct until the story of Weinstein's pattern of sexual misconduct with young actresses broke in October 2017.

<u>**COUNT I**</u>
(Negligence)

15.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 14 above.

16.    At all relevant times, Defendant owed a duty to use reasonable care in the retention and supervision of its employee Harvey Weinstein.

– 4 –
CIVIL COMPLAINT

17.    This included a duty to control Weinstein in his interactions with women during meetings taking place within the course and scope of his employment in order to prevent foreseeable harm.

18.    Prior to the sexual misconduct with Plaintiff, Defendant knew or had reason to believe Weinstein was likely to engage in sexual misconduct with women he came into contact with during the course and scope of his employment. In particular, upon information and belief, Defendant knew or should have known that Weinstein would lure young aspiring actresses into compromising situations under the guise of business meetings. Prior to the incident involving Plaintiff, Defendant's Board of Directors possessed knowledge of Weinstein's propensity to engage in sexual misconduct. Knowledge of Weinstein's propensity to engage in sexual misconduct was additionally possessed by Defendant's executives, officers and employees. At all relevant times Defendant's Board of Directors maintained a supervisory position over Weinstein.

19.    By possessing knowledge of Weinstein's prior sexual misconduct, Defendant knew or should have known that Weinstein was unfit and that this unfitness created a particular risk to others.

20.    Defendant did not act in a reasonable manner by failing to terminate Weinstein and instead continued to allow him to meet with prospective actresses in private areas with the knowledge that there was a substantial likelihood for sexual misconduct.

21.    Weinstein's meeting with Plaintiff at the Peninsula hotel occurred within the course and scope of his employment. The contact between Plaintiff and Weinstein was generated by the employment relationship between Defendant and Weinstein.

22.     Defendant's negligence in supervising and/or retaining Weinstein was a substantial factor in causing Plaintiff's harm.

23.     It was foreseeable that Weinstein would engage in sexual misconduct if Defendant continued to allow Weinstein to have private business meetings with actresses.  At all relevant times, Defendant knew Weinstein was using his power and position to coerce women into engaging in sexual contact and knew that this sexual misconduct would cause harm.

24.     Defendant failed to institute corrective measures to protect women coming into contact with Weinstein, including Plaintiff, from sexual misconduct despite the Board of Directors possessing actual notice of Weinstein's sexually inappropriate behavior. Such acts and omissions demonstrate a conscious disregard of the safety of others. The Board of Directors was aware of the probable dangerous consequences of failing to remove or adequately supervise Weinstein. In failing to do so, Defendant acted with actual malice and with conscious disregard to Plaintiff's safety.

25.     As a direct and proximate result of Defendant's negligence, Plaintiff was a victim of Weinstein's sexual misconduct. The sexual misconduct has caused Plaintiff to suffer continuing, severe and permanent psychological and emotional issues, and the loss of enjoyment of life.

## **PRAYER FOR RELIEF**

26.     General damages in an amount to be shown according to proof at the time of trial.

27.     Special damages including medical and psychological care expenses in an amount to be shown according to proof at the time of trial.

1    28.    Punitive and exemplary damages in an amount appropriate to punish or set an

2    example of Defendant.

3    29.    Costs of suit.

4    30.    Such other and further relief as this Court deems just and proper.

5

6

7                              **DEMAND FOR JURY TRIAL**

8    Plaintiff hereby demands a jury trial in this action.

9

10

11

12   Dated: Oct. 24, 2017                          HERMAN LAW

13

14                                       By:  _____

15                                            Daniel Ellis
                                             California Bar No. 298639
16                                           dellis@hermanlaw.com
                                             Arick Fudali
17                                           California Bar No. 296364
                                             afudali@hermanlaw.com
18                                           Jeff Herman
                                             (pending *pro hac vice* admission)
19                                           *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

                                         – 7 –
                                    CIVIL COMPLAINT

| SHORT TITLE: Dominique Huett v. The Weinstein Company LLC | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☒ 11. | ADDRESS:<br>9882 S. Santa Monica Boulevard |
|---|---|
| CITY: Beverly Hills | STATE: CA | ZIP CODE: 90212 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____ Central _____ District of the Superior Court of California, County of Los Angeles. [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: October 24, 2017 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# EXHIBIT

# D

RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorney for Plaintiff
551 Fifth Avenue, 29th Floor
New York, N.Y. 10176
Tel:    (212) 684-1880
Fax:    (212) 689-8156



GLORIA ALLRED SBN 65033
NATHAN GOLDBERG SBN 62192
CHRISTINA CHEUNG, SBN 280148
LAW OFFICES
**ALLRED, MAROKO & GOLDBERG**
SUITE 1500
6300 WILSHIRE BOULEVARD
LOS ANGELES, CALIFORNIA  90048-5217
Telephone No. (323) 653-6530
Fax No. (323) 653-1660

**FILED**
Superior Court of California
County of Los Angeles

NOV 1 4 2017

Sherri R. Carter, Executive Officer/Clerk

By _____ , Deputy
Moses Soto

Attorneys for <u>Plaintiff, JANE DOE</u>

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

JANE DOE, an Individual,

    Plaintiff,

        vs.

THE WEINSTEIN COMPANY LLC, a
Corp.; THE WEINSTEIN COMPANY
HOLDINGS LLC, a Corp.; HARVEY
WEINSTEIN, an individual;  and DOES 1
through 25, inclusive,

        Defendants.

CASE NO: BC 6 8 3 4 1 1

**COMPLAINT FOR DAMAGES**

1.  SEXUAL BATTERY IN
    VIOLATION OF CAL. CIV.
    CODE § 1708.5

2.  GENDER VIOLENCE IN
    VIOLATION OF CAL. CIV.
    CODE § 52.4

3.  BATTERY

4.  ASSAULT

5.  NEGLIGENCE

6.  NEGLIGENT RETENTION
    OR SUPERVISION

7.  INJUNCTIVE RELIEF

<u>**JURY TRIAL DEMAND**</u>

Plaintiff hereby alleges as follows:

<u>**GENERAL ALLEGATIONS**</u>

1.      Plaintiff **JANE DOE** ("Plaintiff" or "Doe"), at all relevant times mentioned herein,

and currently, resides in the County of Los Angeles, State of California.

2.      Plaintiff is informed and believes, and based thereon alleges that Defendant **THE**

1
COMPLAINT FOR DAMAGES

1  WEINSTEIN COMPANY LLC (hereinafter "Weinstein Co.") is now and at all relevant times a

2  corporation or other form of legal entity doing business in the County of Los Angeles, State of

3  California.

4      3.    Plaintiff is informed and believes, and based thereon alleges that Defendant **THE**

5  **WEINSTEIN COMPANY HOLDINGS, LLC** (hereinafter "Weinstein Co. Holdings") is now

6  and at all relevant times a corporation or other form of legal entity doing business in the County of

7  Los Angeles, State of California.

8      4.    **DEFENDANT WEINSTEIN CO. HOLDINGS** and **DEFENDANT**

9  **WEINSTEIN CO.** hereinafter shall be collectively referred to as "the Companies."

10      5.    Plaintiff is informed and believes, and based thereon alleges that at all relevant

11  times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling

12  shareholder, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in

13  interest of some or all of the other Defendants, and was engaged with some or all of the other

14  Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the

15  other Defendants so as to be liable for their conduct with respect to the matters alleged below.

16      6.    Plaintiff is informed and believes, and based thereon alleges that each Defendant

17  acted pursuant to and within the scope of the relationships alleged above, that each Defendant

18  knew or should have known about, and authorized, ratified, adopted, approved, controlled, and

19  aided and abetted the conduct of all other Defendants.

20      7.    Plaintiff is informed and believes, and based thereon alleges that at all relevant

21  times, the Companies are joint ventures in that each business combined their property, skill or

22  knowledge with intent to carry out a single business undertaking, each has an ownership interest in

23  the business, they have joint control over the business even if they agreed to delegate control, and

24  they have agreed to share the profits and losses of the business and that together, at all relevant

25  times herein, the Companies regularly conducted business in California in the production of films.

26      8.    Plaintiff is informed and believes, and based thereon alleges that Defendant

27  **HARVEY WEINSTEIN** (hereinafter "Weinstein") is an individual who at all relevant times

28  herein, is a resident of the County of New York who regularly came to this County to conduct

1   business.

2        9.      Venue properly lies in this county in that all Defendants regularly conduct business

3   in this county and that the conduct described herein were committed in this county.

4        10.     The true names and capacities, whether individual, corporate, partnership, associate

5   or otherwise, of Defendants sued herein as DOES 1 through 25, inclusive, are currently unknown

6   to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and

7   believes, and based thereon alleges, that each of the Defendants designated herein as a DOE is

8   legally responsible in some manner for the events and happenings referred to herein, and caused

9   injury and damage proximately thereby to Plaintiff as hereinafter alleged.  Plaintiff will seek leave

10  of court to amend this Complaint to show the true names and capacities of the Defendants

11  designated herein as DOES when the same have been ascertained.  Whenever in this complaint

12  reference is made to "Defendants," such allegation shall be deemed to mean the acts of Defendants

13  acting individually, jointly, and/or severally.

14       11.     Except as hereinafter specifically described, Defendants and each of them, are and

15  were the agents and/or employees of the other Defendants, and in acting as described herein were

16  acting within the scope of their authority or employment as agents and/or employees thereof, and

17  with the permission and consent of the other Defendants.

18       12.     In late 2011, Plaintiff met Defendant Weinstein at a party that Defendants were

19  hosting at the Chateau Marmont.  Plaintiff was an actress and informed Weinstein of the same

20  when she was introduced to him at the event.  Upon learning that Plaintiff was an actress,

21  Weinstein offered to assist her with her acting career and requested her telephone number.  She

22  obliged.

23       13.     Over the next few years, Weinstein invited Plaintiff to attend awards show parties

24  that the Defendants hosted and maintained regular communication with Plaintiff every few months

25  thereafter.

26       14.     In late 2015, Plaintiff met Weinstein at the Montage Hotel in Beverly Hills,

27  California to discuss a prospective acting job on a television show called "Marco Polo" as well as

28  acting in two to three other projects.   At some point, he said he wanted to masturbate in front of

3

COMPLAINT FOR DAMAGES

1    her.  Plaintiff told Weinstein that she did not want him to masturbate in front of her.  Weinstein

2    told her that he would not touch her, but "only" wanted her to watch him.  Despite her telling

3    Weinstein "no," Weinstein proceeded to grip her wrist with one hand while using the other to

4    masturbate in front of her until completion.

5         15.    In early spring of 2016, Weinstein contacted Plaintiff again to meet with him at the

6    Montage Hotel in Beverly Hills to celebrate her upcoming role in Marco Polo giving her the

7    impression that she had been chosen for the part.  Plaintiff agreed.  At some point, Weinstein

8    excused himself and returned wearing a bathrobe.  Before Plaintiff could leave, Weinstein grabbed

9    her and pulled her into the bedroom.  Plaintiff told Weinstein that she did not want to do anything

10   sexual with him.  He forcefully threw Plaintiff onto the bed.  He pulled down her jeans and started

11   to orally copulate her.  Plaintiff pushed Weinstein's head off of her and told him, "Stop!"

12   Weinstein then used his massive weight and strength to force himself on her, pushing his penis

13   inside of her vagina without a condom.  After he withdrew, he gripped her with one hand while

14   using his other hand to masturbate.  Plaintiff finally broke free from his grasp and immediately left

15   the bedroom and suite.

16        16.    Weinstein contacted her thereafter and acted as if nothing had happened.  He told

17   her he was coming to Los Angeles.  Plaintiff swore at him and hung up the phone.

18        17.    Plaintiff never received a job offer for the Marco Polo project even though she had

19   been previously told that she would be a perfect addition for the show.  Nor did she receive any

20   offers for other projects that Weinstein had discussed with her.

21        18.    Prior to the incidents involving Plaintiff, the Companies' executives, officers,

22   directors, managing agents, and employees had actual knowledge of Weinstein's repeated acts of

23   sexual misconduct with women.  In particular, the Companies were aware of Weinstein's pattern

24   of using his power and the promise of procuring jobs to coerce and force actresses to engage in

25   sexual acts with him.

26        19.    Based upon information and belief, the Companies were aware of multiple claims

27   of sexual misconduct against Weinstein, which were settled prior to the initiation of litigation.

28        20.    Based upon information and belief, the Companies' knowledge of multiple claims

4

COMPLAINT FOR DAMAGES

1  of sexual misconduct against Weinstein is evidenced in their 2015 employment contract with

2  Weinstein.  The contract with Weinstein states that if Weinstein is sued for sexual harassment or

3  other "misconduct" that results in a settlement or judgment against the Companies, Weinstein

4  must reimburse the Companies for such settlements or judgments and that Weinstein must pay the

5  Companies liquidated damages of $250,000 for the first such instance, $500,000 for the second

6  such instance, $750,000 for the third such instance, and $1,000,000 for each additional instance.

7  Moreover, the contract states that as long as Weinstein pays, it constitutes a "cure" for the

8  misconduct and the Companies can take no further action against Weinstein, such as terminating

9  him.

10      21.     Plaintiff further alleges that the Companies and DOES 1-25 are strictly liable for

11 Defendant Weinstein's actions under the principles of respondeat superior, as alleged herein, and

12 had advance knowledge that Defendant Weinstein would engage in this despicable conduct while

13 acting within the scope of his employment and by their actions and inactions ratified, authorized

14 and condoned this unlawful behavior.

15      22.     As a direct and proximate result of Defendants' unlawful conduct as alleged

16 hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation,

17 embarrassment, mental and emotional distress and anxiety, and economic harm, all in an amount

18 exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

19      23.     The aforementioned conduct by Defendants was willful, wanton, and malicious.  At

20 all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings.

21 Defendants also acted with the knowledge of or with reckless disregard for the fact that their

22 conduct was certain to cause injury and/or humiliation to the Plaintiff.  Plaintiff is further informed

23 and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to

24 the Plaintiff.  By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary

25 damages from Defendants according to proof.

## FIRST CAUSE OF ACTION

### (Sexual Battery in Violation of Cal. Civ. Code § 1708.5 Against All Defendants)

28      24.     Plaintiff repeats and realleges by reference each and every allegation contained

1  hereinabove and incorporates the same herein as though fully set forth herein.

2       25.    Cal. Civ. Code Section 91708.5(a)  provides: A person commits a sexual battery

3  who does any of the following: (1) acts with the intent to cause a harmful or offensive contact with

4  an intimate part of another, and a sexually offensive contact with that person directly or indirectly

5  results. (2) Acts with the intent to cause a harmful or offensive contact with another by use of his

6  or her intimate part, and a sexually offensive contact with that person directly or indirectly results.

7  (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a

8  sexually offensive contact with that person directly or indirectly results.

9       26.    Cal. Civ. Code Section 91708.5(d) defines "intimate part" as the sexual organ,

10  anus, groin, or buttocks of any person, or the breast of a female.

11       27.    Cal. Civ. Code Section 91708.5(f) defines "offensive contact" to mean contact that

12  offends a reasonable sense of personal dignity.

13       28.    Plaintiff alleges that Defendant Weinstein committed the act of civil sexual battery

14  in violation of Cal. Civ. Code  Section 1708.5, when on or about early 2016, Defendant, willfully,

15  maliciously, intentionally, and without the consent of Plaintiff subjected her to the forceful,

16  harmful and/or offensive touching of Plaintiff's breasts, buttocks, and/or vagina, including

17  viciously raping her by away of vaginal penetration against her will, without her consent, and in

18  spite of her express objection.

19       29.    Plaintiff further alleges that the Companies and DOES 1-25 are strictly liable for

20  Defendant Weinstein's actions under the principles of respondeat superior, as alleged herein and

21  otherwise had advance knowledge that Defendant Weinstein would engage in this despicable

22  conduct while acting within the scope of his employment and by their actions and inactions

23  ratified, authorized and condoned this unlawful behavior.

24       30.    As a direct and/or proximate result of Weinstein's unlawful conduct as alleged

25  hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation,

26  embarrassment, mental and emotional distress and anxiety, all in an amount exceeding the

27  jurisdictional minimum of the Superior Court according to proof at trial.

28       31.    As a direct and proximate result of Defendants' unlawful conduct as alleged

6

COMPLAINT FOR DAMAGES

1  hereinabove, Plaintiff has suffered economic harm, loss of earnings, and other damages, all in an

2  amount that exceeds the jurisdictional minimum of the Superior Court, according to proof at trial.

3      32.    The aforementioned conduct by Defendants was willful, wanton, and malicious.  At

4  all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings.

5  Weinstein also acted with the knowledge of or with reckless disregard for the fact that his conduct

6  was certain to cause injury and/or humiliation to the Plaintiff.  Plaintiff is further informed and

7  believes that Defendants intended to cause fear, physical injury and/or pain and suffering to the

8  Plaintiff.  By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary

9  damages from Defendants according to proof at trial.

10      33.    Plaintiff also seeks declaratory relief as set forth below.

11  **SECOND CAUSE OF ACTION**

12  **(Gender Violence in Violation of Cal. Civ. Code § 52.4 Against All Defendants)**

13      34.    Plaintiff repeats and realleges by reference each and every allegation contained

14  hereinabove and incorporates the same herein as though fully set forth herein.

15      35.    Cal. Civ. Code Section 52.4(c) defines "gender violence" as: (1) one or more acts

16  that would constitute a criminal offense under state law that has as an element the use, attempted

17  use, or threatened use of physical force against the person or property of another, committed at

18  least in part based on the gender of the victim, whether or not those acts have resulted in criminal

19  complaints, charges, prosecution, or conviction. (2) A physical intrusion or physical invasion of a

20  sexual nature under coercive conditions, whether or not those acts have resulted in criminal

21  charges, complaints, charges, prosecution, or conviction.  Cal. Civ. Code Section 52.4(d) provides:

22  Not withstanding any other laws that may establish the liability of an employer for the acts of an

23  employee, this section does not establish any civil liability of a person because of her or her status

24  as an employer, unless the employer personally committed an act of gender violence.

25      36.    Plaintiff further alleges that the Companies and DOES 1-25 are strictly liable for

26  Defendant Weinstein's actions under the principles of respondeat superior as alleged herein and

27  otherwise had advance knowledge that Defendant Weinstein would engage in this despicable

28  conduct while acting within the scope of his employment and by their actions and inactions

1   ratified, authorized and condoned this unlawful behavior.

2       37.    Plaintiff alleges that, on or about early 2016, and prior to that, Defendant Weinstein

3   violated Cal. Civ. Code Section 52.4 in that one or more acts he inflicted on Plaintiff constitutes a

4   criminal offense under state law that has an element of use, attempted use, or threatened use of

5   physical force against her person, committed at least in part based on Plaintiff's gender, whether or

6   not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

7       38.    Plaintiff alleges that, on or about early 2016, and prior to that, Defendant Weinstein

8   violated Cal. Civ. Code Section 52.4 in that he engaged in a physical intrusion or physical invasion

9   of a sexual nature under coercive conditions, even if those acts have not yet resulted in criminal

10  complaints, charges, prosecution, or conviction.

11      39.    As a direct and proximate result of Defendants' unlawful conduct as alleged

12  hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation,

13  embarrassment, mental and emotional distress and anxiety, all in an amount exceeding the

14  jurisdictional minimum of the Superior Court according to proof at trial.

15      40.    As a direct and proximate result of Defendants' unlawful conduct as alleged

16  hereinabove, Plaintiff has suffered economic harm and other consequential damages, all in an

17  amount according to proof at trial.

18      41.    The aforementioned conduct by Defendants was willful, wanton, and malicious.  At

19  all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings.

20  Defendants also acted with the knowledge of or with reckless disregard for the fact that their

21  conduct was certain to cause injury and/or humiliation to the Plaintiff.  Plaintiff is further informed

22  and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to

23  the Plaintiff.  By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary

24  damages from Defendants according to proof at trial.

25      42.    Plaintiff also seeks injunctive relief as set forth below.

26      43.    Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution

27  of this action and therefore demands such reasonable attorneys' fees and costs as set by the Court.

28  ///

### THIRD CAUSE OF ACTION

### (For Battery Against All Defendants)

44.     Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

45.     In performing the acts described herein, Defendant Weinstein acted with the intent to make a harmful and offensive contact with Plaintiff's person.

46.     Defendant Weinstein did, in fact, bring himself into offensive and unwelcome contact with Plaintiff as described hereinabove.

47.     At all relevant times, Plaintiff found the contact by Defendant to be offensive to her person and dignity.  At no time did Plaintiff consent to any of the acts by Defendant alleged hereinabove.

48.     As a result of Defendant Weinstein's acts as hereinabove alleged, Plaintiff was physically harmed and/or experienced offensive contact with her person.

49.     Plaintiff further alleges that the Companies and DOES 1-25 are strictly liable for Defendant Weinstein's actions under the principles of respondeat superior, as alleged herein and otherwise had advance knowledge that Defendant Weinstein would engage in this despicable conduct while acting within the scope of his employment and by their actions and inactions ratified, authorized and condoned this unlawful behavior.

50.     As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, economic harm and other consequential damages, all in an amount exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

51.     The aforementioned conduct by Defendants was willful, wanton, and malicious.  At all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings. Defendants also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to the Plaintiff.  Plaintiff is further informed and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to

9

1 | the Plaintiff. By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary

2 | damages from Defendants according to proof at trial.

3 | ### FOURTH CAUSE OF ACTION

4 | #### (Assault Against All Defendants)

5 | 52. Plaintiff repeats and realleges by reference each and every allegation contained

6 | hereinabove and incorporates the same herein as though fully set forth herein.

7 | 53. When Defendant Weinstein charged at Plaintiff, Weinstein intended to cause

8 | Plaintiff apprehension of an imminent harmful and offensive contact with her person.

9 | 54. As a result of Defendant Weinstein's acts, Plaintiff was in fact, placed in great

10 | apprehension of imminent harmful and offensive contact with her person.

11 | 55. In performing the acts alleged hereinabove, Defendant Weinstein acted with the

12 | intent of making contact with Plaintiff's person.

13 | 56. At no time did Plaintiff consent to any of the acts by Weinstein alleged

14 | hereinabove.

15 | 57. Defendant's conduct as described above, caused Plaintiff to be apprehensive that

16 | Defendant would subject her to further intentional invasions of her right to be free from offensive

17 | and harmful contact and demonstrated that at all times material herein, Defendant had a present

18 | ability to subject her to an intentional offensive and harmful touching.

19 | 58. Plaintiff further alleges that the Companies and DOES 1-25 are strictly liable for

20 | Defendant Weinstein's actions under the principles of respondeat superior, as alleged herein and

21 | otherwise had advance knowledge that Defendant Weinstein would engage in this despicable

22 | conduct while acting within the scope of his employment and by their actions and inactions

23 | ratified, authorized and condoned this unlawful behavior.

24 | 59. As a direct and proximate result of Defendants' unlawful conduct as alleged

25 | hereinabove, Plaintiff has suffered physical injury, severe emotional distress, humiliation,

26 | embarrassment, mental and emotional distress and anxiety, and economic harm, all in an amount

27 | exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

28 | 60. The aforementioned conduct by Defendants was willful, wanton, and malicious. At

10

1    all relevant times, Defendants acted with conscious disregard of the Plaintiff's rights and feelings.

2    Defendants also acted with the knowledge of or with reckless disregard for the fact that their

3    conduct was certain to cause injury and/or humiliation to the Plaintiff.  Plaintiff is further informed

4    and believes that Defendants intended to cause fear, physical injury and/or pain and suffering to

5    the Plaintiff.  By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary

6    damages from Defendants according to proof.

### FIFTH CAUSE OF ACTION

**(For Negligence against all Defendants)**

9    61.    Plaintiff repeats and realleges by reference each and every allegation contained

10   hereinabove and incorporates the same herein as though fully set forth herein.

11   62.    Defendants committed the negligent actions and/or negligent failures to act, as set

12   forth hereinabove and those acts proximately caused the emotional, physical, and financial injuries

13   visited upon Plaintiff.

14   63.    Defendants owed Plaintiff a duty of care not to cause her emotional distress.

15   64.    Defendants breached this duty of care by way of their own conduct as alleged

16   herein.

17   65.    As a direct and proximate result of Defendants' extreme and outrageous acts,

18   Plaintiff has suffered emotional distress, humiliation, and embarrassment, economic harm, all in

19   amount exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

### SIXTH CAUSE OF ACTION

**(For Negligent Retention or Supervision against the Companies Only)**

22   66.    Plaintiff repeats and realleges by reference each and every allegation contained

23   hereinabove and incorporates the same herein as though fully set forth herein.

24   67.    The Companies had a mandatory duty of care to properly hire, train, retain,

25   supervise, and discipline their employees so as to avoid unreasonable harm to citizens.  With

26   deliberate indifference, the Companies failed to take necessary, proper or adequate measures in

27   order to prevent the violation of Plaintiff's rights and injury to Plaintiff.  Among other acts and/or

28   failures to act, the Companies retained Defendant Weinstein and did not terminate him despite

11

1  knowing, or should have known of, his long and well-known history of abusing and sexually

2  harassing women based on sex.

3      68.    The Companies breached this duty of care by failing to adequately train employees

4  to not sexually discriminate and/or harass women. This lack of adequate supervisory training

5  and/or policies and procedures demonstrates a failure to make reasonable attempts and to prevent

6  sexually discriminatory behavior toward women. In addition, the retention of Defendant

7  Weinstein despite his well-known predatory pattern of abuse and harassment was negligent.

8      69.    The Companies had a duty to control Defendant Weinstein in his interactions with

9  women during meetings taking place within the course and scope of his employment in order to

10  prevent the reasonably foreseeable harm that he would sexually harass and/or sexually assault

11  them.

12      70.    The Companies' negligence in supervising and/or retaining Weinstein was a

13  substantial factor in causing Plaintiff's harm.

14      71.    As a direct and proximate result of the Companies' unlawful conduct, Plaintiff has

15  suffered emotional distress, humiliation, and embarrassment, economic harm, all in amount

16  exceeding the jurisdictional minimum of the Superior Court according to proof at trial.

17      72.    The aforementioned conduct by the Companies was willful, wanton, and malicious.

18  At all relevant times, the Companies acted with conscious disregard of the Plaintiff's rights and

19  feelings. The Companies were aware of the probable dangerous consequences of retaining or

20  adequately supervising Weinstein and allowing him to meet with women under the guise of

21  procuring work for them. The Companies acted with the knowledge of or with reckless disregard

22  for the fact that Weinstein's conduct was certain to cause injury and/or humiliation to the Plaintiff.

23  By virtue of the foregoing, the Plaintiff is entitled to recover punitive and exemplary damages

24  from the Companies according to proof at trial.

25                        **SEVENTH CAUSE OF ACTION**

26                **(Claim for Injunctive Relief Against All Defendants)**

27      73.    Plaintiff repeats and realleges by reference each and every allegation contained

28  hereinabove and incorporates the same herein as though fully set forth herein.

74.     Plaintiff seeks a Court Order enjoining Defendants from engaging in similar conduct toward other women.

**WHEREFORE,** Plaintiff prays judgment be entered in her favor against Defendants, and each of them, as follows:

1.     For a money judgment representing compensatory damages including consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts, according to proof;

2.     For an award of money judgment for mental pain and anguish and severe emotional distress, according to proof;

3.     For punitive and exemplary damages according to proof;

4.     For attorneys' fees and costs;

5.     For prejudgment and post-judgment interest;

6.     For injunctive relief; and

7.     For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff Jane Doe demands trial of all issues by jury.

DATED: November 14, 2017                    ALLRED, MAROKO & GOLDBERG

                                            By: _Gloria Allred_____
                                                GLORIA ALLRED
                                                NATHAN GOLDBERG
                                                CHRISTINA CHEUNG
                                                Attorneys for Plaintiff,
                                                **JANE DOE**

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>GLORIA ALLRED, ESQ.; SBN: 65033<br>NATHAN GOLDBERG, ESQ.; SBN: 62192<br>ALLRED, MAROKO & GOLDBERG<br>6300 WILSHIRE BOULEVARD, SUITE 1500<br>LOS ANGELES, CA 90048<br>TELEPHONE NO.: 323-653-6530   FAX NO.: 323-653-1660<br>ATTORNEY FOR *(Name):* JANE DOE | **FOR COURT USE ONLY**<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>NOV 14 2017<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _____, Deputy<br>Moses Soto |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. HILL STREET
MAILING ADDRESS: SAME AS ABOVE
CITY AND ZIP CODE: LOS ANGELES, CA 90012
BRANCH NAME: STANLEY MOSK COURTHOUSE

CASE NAME: JANE DOE v. THE WEINSTEIN COMPANY LLC; THE WEINSTEIN COMPANY HOLDINGS LLC; and HARVEY WEINSTEIN

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER BC 683411 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400-3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [X] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* (7) SEVEN
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: NOVEMBER 14, 2017
GLORIA ALLRED, ESQ.; SBN: 65033
_____          ▶ _____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

ORIGINAL

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice— Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

| SHORT TITLE: JANE DOE v. THE WEINSTEIN COMPANY LLC; THE WEINSTEIN COMPANY HOLDINGS LLC; and HARVEY WEINSTEIN | CASE NUMBER | BC 6 8 3 4 1 1 |
|---|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

BY FAX

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**
ORIGINAL

Local Rule 2.3
Page 1 of 4
LA-CV109

| SHORT TITLE: JANE DOE v. THE WEINSTEIN COMPANY LLC; THE WEINSTEIN COMPANY HOLDINGS LLC; and HARVEY WEINSTEIN | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☒ A6005 Civil Rights/Discrimination | 1, 2, ③ |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation     Number of parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: JANE DOE v. THE WEINSTEIN COMPANY LLC; THE WEINSTEIN COMPANY HOLDINGS LLC; and HARVEY WEINSTEIN | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

ACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: JANE DOE v. THE WEINSTEIN COMPANY LLC; THE WEINSTEIN COMPANY HOLDINGS LLC; and HARVEY WEINSTEIN | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have, selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: 225 N. Canon Drive |
|---|---|
| ☐1. ☐2. ☒3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. ☐11. | |

| CITY: Beverly Hills | STATE: CA | ZIP CODE: 90210 |
|---|---|---|

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the CENTRAL_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: NOVEMBER 14, 2017

_Gloria allred_

(SIGNATURE OF ATTORNEY/FILING PARTY)

GLORIA ALLRED, ESQ.

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4