USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/1/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                        :

ALEXANDRA CANOSA,                :       18 Civ. 4115 (PAE)

                Plaintiff,    :

                        :       OPINION & ORDER

          -v-             :

DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK  :
BEN AMMAR, LANCE MAEROV, RICHARD    :
KOENIGSBERG, PAUL TUDOR JONES, JAMES L.  :
DOLAN, JEFF SACKMAN, THE WEINSTEIN    :
COMPANY HOLDINGS, LLC, THE WEINSTEIN  :
COMPANY, LLC, HARVEY WEINSTEIN, and ROBERT:
WEINSTEIN,                     :

                        :

                Defendants.  :

                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      This case involves claims of rape, abuse, and harassment by the movie producer Harvey

Weinstein. Plaintiff Alexandra Canosa brings claims not only against Weinstein, but also against

two of his companies and their board members. She alleges their complicity in and facilitation

of his acts. Pending now is Canosa's motion to remand this case to New York state court, from

which it was removed by a defendant. For the reasons explained below, the Court denies that

motion, holding that removal was proper. This case will now proceed in this Court.

**I.      Background**

      **A.    Facts[1]**

---

[1] The Court's account of the facts is drawn from the filings made in connection with the removal
of this case, from the parties' submissions on the instant remand motion, and from counsel's
representations at argument. The Court provides these facts merely as background and context.
*See, e.g.*, *Intelligen Power Sys., LLC v. dVentus Techs. LLC*, 73 F. Supp. 3d 378, 379 (S.D.N.Y.
2014).

1.     **The Complaint's Allegations**

On April 30, 2018, Canosa filed her Complaint in New York State Supreme Court in Manhattan.  The Complaint alleges that, since 2010, Canosa has worked in various capacities for Weinstein and two companies affiliated with him: The Weinstein Company Holdings LLC ("TWC Holdings") and The Weinstein Company LLC ("TWC," and together, "TWC" or the "Company").  Dkt. 1 (Notice of Removal), Ex. A ("Compl.") ¶ 1.  It alleges that, between approximately August 2010 and June 2015, Weinstein verbally abused, sexually assaulted, and raped Canosa in hotel rooms in Los Angeles, New York, Malaysia, and Budapest.  *Id.* ¶¶ 28–37. The Complaint further alleges that Weinstein threatened Canosa with the loss of her job and other retaliation were she were to tell anyone about his abuse.  *Id.* ¶¶ 27, 38.  This, the Complaint alleges, was in keeping with Weinstein's common practice of making "*quid pro quo* offers or demands for sexual favors in exchange for career advancement" at TWC.  *Id.* ¶ 41; *see id.* ¶ 42.

The Complaint alleges that TWC, its executives, and its directors knew, or should have known, of Weinstein's abuse of Canosa (and others) and that they did nothing to stop or prevent it.  *Id.* ¶¶ 40, 49.  In particular, it alleges, the Company facilitated Weinstein's meetings in hotel rooms with women, knowing that he used these meetings for perpetrating abuse; paid off victims of Weinstein's abuse without imposing corrective measures to guard against abuse; continued to allow Weinstein "to operate improperly"; and attempted to keep his abusive behavior a secret. *Id.* ¶ 51; *see id.* ¶¶ 52–85.

The Complaint further alleges that the Company's directors "solicited, requested, commanded, importuned, or intentionally aided Harvey Weinstein in engaging in the illicit conduct" alleged.  These directors, as alleged, are Robert Weinstein (who is Harvey Weinstein's brother and the chairman of the brothers' production company, Miramax); Dirk Ziff; Tim Sarnoff; Marc Lasry; Tarak Ben Ammar; Lance Maerov; Richard Koenigsberg; Jeff Sackman;

and James Dolan (together, the "Directors").  *Id.* ¶¶ 86, 119; *see id.* ¶¶ 13, 15–22.  The

Complaint alleges that the Directors had notice of Harvey Weinstein's conduct and failed to

investigate further, *id.* ¶¶ 88, 121, instead relying on non-disclosure agreements in settlements

with his victims to prevent others from discovering his abuse, *id.* ¶¶ 99, 132.

The Complaint brings 12 state-law causes of action against the defendants.  These include

battery, assault, intentional and negligent infliction of emotional distress, negligent supervision

and retention, aiding and abetting, sexual harassment, quid pro quo harassment, discrimination in

violation of both the New York State and New York City Human Rights Laws, hostile work

environment, and ratification.  *Id.* ¶¶ 170–374.  The Complaint seeks to hold all defendants

vicariously liable for the conduct of the others.  *See id.*

### 2.      The Bankruptcy Proceedings

On March 19, 2018, after this action had been initiated, TWC and TWC Holdings filed

voluntary petitions for relief, under Chapter 11 of the U.S. Bankruptcy Code, in the United States

Bankruptcy Court for the District of Delaware.  *In re The Weinstein Company Holdings LLC, et

al.*, Case No. 18-10601 (MFW) (Bankr. D. Del.).  That filing has the effect, pursuant to 11

U.S.C. § 362, of automatically staying this case (and other parallel civil actions, described

below) as against TWC and TWC Holdings (but not as to any other defendant).

### 3.      Parallel Actions

This case is one of several similar actions brought against Harvey Weinstein, TWC, and

its directors.  In this District, four other actions are currently pending:

- On November 14, 2017, *Doe v. The Weinstein Company LLC*, 18 Civ. 5414 (RA), was

    filed in the Superior Court of the State of California, Los Angeles County.  On May 3,

    2018, the case was removed to the United States District Court for the Central District of

3

California pursuant to 28 U.S.C. § 1452(a).  The Complaint in that action, too, names TWC, TWC Holdings, and the individual defendants named in this action, as defendants. On June 14, 2018, on Sarnoff's motion, the Central District of California (Fitzgerald, *J.*) transferred this case under 28 U.S.C. § 1412, to the Southern District of New York.

- On November 27, 2017, *Noble v. Weinstein*, 17 Civ. 9260 (RWS) was filed in this District.  That suit names Harvey Weinstein, Robert Weinstein, TWC and TWC Holdings, but not the other directors, as defendants.  It brings claims under the federal sex-trafficking statute, 18 U.S.C. § 1591.

- On December 6, 2017, *Geiss v. The Weinstein Company Holdings LLC*, 17 Civ. 9554 (AKH), was filed in this District as a putative class action.  It asserts federal claims (including under the federal racketeering statute), as well as state claims, against TWC, TWC Holdings, and the individual defendants named in this action.  Between February and April 2018, defendants in *Geiss* filed a series of motions to dismiss.  On June 19, 2018, plaintiffs in *Geiss* informed the district court that, upon plaintiffs' motion in the bankruptcy court, the bankruptcy court had lifted the automatic bankruptcy stay to allow plaintiffs to pursue their claims in *Geiss* against TWC Holdings.

- Finally, on June 1, 2018, *Dulany v. Miramax Film NY, LLC*, 18 Civ. 4857 (AKH), was filed in this District as a putative class action.  Like *Geiss*, the complaint in *Dulany* brings claims under both federal law (including the federal racketeering statute) and state law against TWC, TWC Holdings, and the individual defendants named in this action.  The *Dulany* complaint also names as defendants Miramax Film NY, LLC, The Walt Disney Company, and Disney Enterprises, Inc.

The *Dulany* and *Geiss* cases have been assigned to the Hon. Alvin K. Hellerstein.  The *Doe* case

has been assigned to the Hon. Ronnie Abrams.  The *Noble* case has been assigned to the Hon.

Robert W. Sweet.[2]

> **B.     Procedural History of This Action**

On December 20, 2017, Canosa brought this action (assigned index no. 161254/2017) via

a summons in the New York State Supreme Court in Manhattan.  *See* Notice of Removal, Ex. C.

On January 4, 2018, Canosa filed an amended summons, which added as defendants Dolan,

Sackman, and TWC.  *Id.*, Ex. B.

In early April 2018, counsel for several defendants appeared in state court and entered

demands for the complaint.  *Id.*, Ex. D.  On April 30, 2018, Canosa filed the initial complaint in

state court.  *See id.*, Ex. A.

On May 8, 2018, Sarnoff removed this action to this Court, invoking the Court's

jurisdiction under 28 U.S.C. § 1452.  *See* Notice of Removal.

On June 6, 2018, Canosa and Lasry filed a stipulation agreeing to dismiss, without

prejudice, Canosa's claims against Lasry.  Dkt. 30.  On June 8, Canosa and Dolan similarly

agreed to dismiss, without prejudice, Canosa's claims against Dolan.  Dkt. 36.[3]

On June 7, 2018, Canosa filed a motion to remand this case to state court, Dkt. 32, as

well as a memorandum of law, Dkt. 33 ("Pl. Br."), and declaration, Dkt. 34, in support.

---

[2] At argument on this motion, counsel for defendants represented that, although other actions
bringing similar claims are pending in foreign fora, all actions currently pending in the United
States are now in this District.

[3] Counsel represented at argument that these dismissals were based on Canosa's counsel
receiving evidence that Dolan and Lasry had not been on TWC's board during the relevant
period.  For apparently similar reasons, Jones had been previously dismissed from this case while
the action was pending in state court.  *See* Def. Br. at 3 n.3.

On June 21, 2018, Sarnoff filed a brief in opposition to Canosa's motion, Dkt. 41 ("Def. Br."), and a declaration in support, Dkt. 42.  Sarnoff also filed a request to take judicial notice of various filings in this Court, the bankruptcy court, and the state court.  Dkt. 45 ("RJN").

That same day, several of Sarnoff's co-defendants filed notices joining in his opposition to the remand motion.  *See* Dkt. 43 (Ziff); 44 (Harvey Weinstein); 48 (Koenigsberg); 49 (Robert Weinstein).  Although counsel for Sackman and Maerov have appeared in this action, *see* Dkts. 10, 56, Sackman and Maerov have not taken a position on the remand motion.  Ammar has not been served and thus has not appeared.  TWC and TWC Holdings, being subject to the automatic bankruptcy stay, have not participated in litigating this motion.

On June 28, 2018, Canosa filed a brief in reply.  Dkt. 53 ("Pl. Reply Br.").

On July 25, 2018, the Court heard argument on Canosa's motion to remand.

## II.     Legal Standard

Under 28 U.S.C. § 1452, a "party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).  Section 1334, in turn, provides, in relevant part, for "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Thus, a cause of action may be removed from state court to federal court where that claim is "related to" a case in bankruptcy.

Section 1452 further provides that, upon removal, "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  28 U.S.C. § 1452(b).

### III.    Analysis

The Court inquires first whether removal of this proceeding was justified on the ground that this proceeding is "related to" a Title 11 case; and second, if so, whether equitable considerations nevertheless support remand.

### A.    Related to Bankruptcy

"In this Circuit, 'a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate.'" *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)). "While 'related to' jurisdiction is not 'limitless,' it is fairly capacious, and includes 'suits between third parties which have an effect on the bankruptcy estate.'" *Id.* (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08 & n.5 (1995)). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Celotex*, 514 U.S. at 308 n.6. "In determining whether potential claims by third party defendants against the debtor for either indemnification or contribution give rise to 'related to' jurisdiction over litigation to which the debtor is not a party, courts in this circuit . . . have generally found jurisdiction where there is a 'reasonable' legal basis for the claim." *SPV Osus*, 882 F.3d at 340 (quoting *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 319 (S.D.N.Y. 2003)).

This is very much such a case.  Indeed, Canosa does not dispute that the director defendants—other than Harvey and Robert Weinstein—may properly remove the claims against them under Section 1452(a).  *See* Pl. Br. at 2–4; *see also In re WorldCom*, 293 B.R. at 318.  That is because, as all parties recognize, each such director is the beneficiary of an indemnification

and advancement agreement with TWC. *See* Dkt. 42 ("Rocos Decl."), Ex. A ("TWC LLC Agreement") § 10.02 (c)(i) (the "Indemnification Agreement").

Critically here, that Indemnification Agreement, which is provided for by the TWC LLC Agreement, commits TWC to "indemnify, defend and hold harmless" the directors "against any losses, claims, damages, liabilities, expenses (including all reasonable fees and expenses of counsel), judgments, fines, settlements, and other amounts arising from any and all claims, demands, actions, suits or proceedings, in which [the directors] may be involved or become subject to, in connection with any matter arising out of or in connection with the Company's business or affairs," subject only to an exception for bad faith or willful misconduct. *Id.*[4] The Indemnification Agreement further provides that TWC will "reimburse" directors for their "reasonable legal and other reasonable out-of-pocket expense (including the cost of any investigation and preparation) *as they are incurred.*" *Id.* (emphasis added). Thus, TWC agreed not only to indemnify its directors, but to cover and indeed advance their legal fees and expenses during the course of litigation. Finally, the Agreement provides that the directors are "entitled to[] a rebuttable presumption that [they] acted in good faith." *Id.*

Those agreements directly implicate the debtors' estate. Sarnoff and Koenigsberg have already filed proofs of claim in the bankruptcy court asserting their right to indemnification. *See* RJN Ex. 14 (Sarnoff Proof of Claim).[5] Although the other directors have not yet done so— counsel represented at argument that the deadline to do so has not yet been set—the Court expects that all directors will seek indemnification and/or advancement of legal fees and

---

[4] That exception is for claims resulting from directors "not acting in good faith on behalf of the Company or [resulting from] the willful commission by [the directors] of any act that is dishonest and materially injurious to the Company." *Id.*

[5] Counsel for Koenigsberg represented at argument that he, too, has filed a proof of claim.

expenses from the estate.  Litigation here, therefore, will lead directly to claims upon the debtors'

estates.  The scale of this litigation will directly affect the scale of the fees and expenses for

which coverage is sought by the defendant directors here from the bankruptcy estate.  The

management and course of this litigation therefore has potential meaningfully to affect the

bankruptcy estate.

Further, the claims brought by defendant directors here against the bankruptcy estate

pursuant to the Indemnification Agreement may be monetarily substantial.  As the Court

explored with counsel at argument, depending on the duration and course of this lawsuit, the

legal fees and expenses generated by a director defendant covered by the Indemnification

Agreement—quite apart from any possible recovery by the plaintiff—could easily run into the

millions of dollars.  Such is the practical reality of a case in which discovery (including

electronic discovery) may probe numerous episodes of alleged parallel wrongdoing by Weinstein

spanning many years and the knowledge of the board and each defendant, and which has

potential to result in a lengthy trial.  While the Court is not privy to the size of the bankruptcy

estate, there is a real possibility that the claims for indemnification and advancement for this and

the other pending civil lawsuits could alone exhaust the available resources of the estate.[6]

---

[6] Independently, as argument illuminated, the parties here anticipate requiring substantial document discovery from the bankrupt entities, and that the present bankruptcy stay will be lifted, at a minimum, to the extent necessary to permit such discovery.  Such discovery may, for example, consist of emails and other electronic documents resident on TWC's servers and other computer devices.  Such discovery has obvious potential to be relevant in this case, given the nature of the claims.  Electronic discovery from TWC may shed light on Canosa's claims as to Harvey Weinstein's illegal conduct as well as on her claims that the other defendants knew of Weinstein's predations yet failed to act.  The process of providing such discovery, which may involve imaging hard-drives and reviewing documents prior to their production, would impose additional costs on the bankruptcy estate.

Canosa contends that, as to defendants Harvey and Robert Weinstein, the Indemnification Agreement does not apply because their conduct, as alleged, was patently in bad faith. But that argument assumes the conclusion of this litigation. The Court cannot make such a determination on the basis of the pleadings. Vitally important, the Indemnification Agreement, as is customary, provides not only for indemnification—subject to the bad-faith exception—but also for the advancement of fees during the pendency of the litigation, while its outcome is unknown. To be sure, that advancement provision is subject to a clawback provision: If the director is found to have acted in bad faith, the director is required to "promptly repay to the Company the amount of any such reimbursed expenses paid to [him] if it shall be finally judicially determined that [the director] was not entitled to indemnification." *See* Indemnification Agreement. But that clawback provision is triggered only by a "final[] judicial[] determination." Therefore, until there has been such a determination, the agreement entitles all covered directors—including Harvey Weinstein and Robert Weinstein—to reimbursement of legal fees and expenses from TWC "as they are incurred." To be sure, the bankruptcy court will be called upon to respond to requests for advancement. It, not this Court, will determine how to prioritize such requests given the doubtless competing demands upon the bankruptcy estate. It may choose not to permit advancement, or only limited advancement, of fees, given the estate's limited resources. For present purposes, though, such requests for advancement will necessarily implicate the debtors' estate even if advancement is deferred, and even if, in the end, bad faith were found so as to disqualify one, more, or all director defendants to indemnification. In sum, as to the paramount question, whether there is a reasonable legal basis for a claim on the debtors' estate, the answer, at this preliminary stage, is clearly yes. *See SPV Osus*, 882 F.3d at 340.

A separate intersection with the bankruptcy estate is presented by the fact, presented to the Court by counsel at argument, that the directors intend to assert claims for indemnification and/or advancement on the ground that they are beneficiaries of TWC's director & officer ("D&O") insurance.  The proceeds of such an insurance policy may be held to be the property of the employer and thus the estate of the employer in bankruptcy.  *See generally In re Cont'l Airlines*, 203 F.3d 203, 217 (3d Cir. 2000) ("[C]ourts of appeals have disagreed as to the circumstances under which the proceeds of a D&O policy can be considered property of the estate."); *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (explaining that "some courts have held that the proceeds of a D & O policy are property of the debtor's estate," "others have held to the contrary" and no "decision by the Second Circuit" addressed the subject); *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002) ("The majority view is that insurance *policies* are property of the bankruptcy estate . . . .  However, courts are in disagreement on whether or not insurance *proceeds* are property of the estate." (internal citations omitted)).

To determine whether such proceeds are the property of the estate or of the directors themselves requires a "fact-intensive" analysis, *In re Cont'l Airlines*, 203 F.3d at 217, which the Court is ill-equipped to conduct at this preliminary stage.  But "[a] claim need not be certain to provide a federal court with jurisdiction: 'contingent outcomes can satisfy the "conceivable effects" test, so long as there is the *possibility* of an effect on the estate.'"  *SPV Osus*, 882 F.3d at 340 (quoting *N.Y. Commercial Bank v. Pullo*, No. 12-02052 (BRL), 2013 WL 494050, at *3 (Bankr. S.D.N.Y. Feb. 7, 2013)).  The directors' claims on the proceeds of TWC's D&O insurance policy have the "possibility of an effect on the estate" of TWC.  Given the uncertain facts of the D&O insurance policy at issue here, as well as the unsettled legal standard that may

govern this question in this Circuit, the directors have a "'reasonable legal basis for [their] claim" to draw upon the insurance policy, which is sufficient to invoke this Court's related-to jurisdiction. *Id.* (quoting *In re WorldCom*, 293 B.R. at 319).

For all the above reasons, relating both to the Indemnification Agreement and the D&O insurance policy, the requirements of "related to" jurisdiction are met here.

## B.      Equitable Remand

Having determined that these claims have been properly removed under Section 1452(a), the Court turns to Canosa's argument that, exercising its equitable discretion, the Court should remand the claims to state court under Section 1452(b).

In this Circuit, courts considering whether to remand pursuant to Section 1452(b) consider the following factors: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants." *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008).

The Court finds that the balance of these factors overwhelmingly supports its exercising jurisdiction here.

### 1.      Efficient Administration of Bankruptcy Estate

Most important here is the concern for efficient administration of the bankruptcy estate. Such is clearly advanced by maintaining this suit in federal court. As noted above, three other actions in this District present substantially overlapping issues against substantially identical defendants (and *Noble*, too, presents overlapping questions against a subset of defendants). This

12

action, brought by a distinct plaintiff who is not party to the other actions, is not formally related to the other parallel actions under the District's rules. *See* Local Rule 13. Nevertheless, these actions are clearly "related" in the practical sense, insofar as those that reach discovery will almost certainly implicate common incidents, issues, witnesses, and records. In the event that this and any other such case reaches discovery, this Court expects, in consultation with the judge or judges supervising such matters, to carefully coordinate discovery and related pretrial matters to prevent, to the maximum extent possible, duplicative and wasteful litigation. *See* Dkt. 14 (noting, in memo endorsement denying extension of deadline to answer, possible need for "coordination of discovery in this case with discovery in another case filed in this district, 17 Civ. 9554, which appears to present overlapping issues").[7]

> By contrast,
>
> if this Court were to . . . remand the litigation originally filed in state court, motion practice and discovery would proceed separately in [at least two] jurisdictions. The litigation that would ensue in the various fora would be entirely duplicative and wasteful. It would eat into the funds available to pay the alleged victims identified in this litigation. As deep as some of the pockets in this action may be, they are in all likelihood not limitless. A remand would encourage a race for assets, a race that may deprive many victims of the alleged fraud of their fair share of any recover.

*In re WorldCom*, 293 B.R. at 333–34.[8]

Litigating these claims in this District, rather than in state court, enhances the possibility that the cost of litigation will be limited, to a degree, by opportunities for coordination across the

---

[7] *See also* RJN Ex. 8 (*Doe*, June 14, 2018 Order of Judge Fitzgerald) (noting, in deciding to transfer that action to this District, that "[c]oordinating production of documents and litigation of discovery disputes in a single jurisdiction is more efficient and cost-effective").

[8] Although the *WorldCom* court assessed the remand motion as a matter of abstention under Section 1334, it recognized that "[t]he equitable remand analysis . . . is essentially the same as the Section 1334(c)(1) abstention analysis." *In re WorldCom*, 293 B.R. at 334. This Court agrees and finds the *WorldCom* analysis applicable here.

cases pending in a common district.  Such coordination may, for example, result in singular, rather than multiple, depositions being taken of parties and third-party witnesses relevant to multiple actions.  Harnessing these efficiencies limits the potential drain on the bankruptcy estate.  Thus, it is "beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists." *Id.* at 333.

Canosa contends that efficiency would be better promoted by remand because, she claims, only a subset of the claims in this action are properly removed.  Pl. Br. at 3 (citing *Ret. Sys. of Ala. v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257, 1264 (M.D. Ala. 2002)).  But that argument reprises Canosa's incorrect argument, addressed above, that her claims against Harvey and Robert Weinstein are not related to bankruptcy and thus may not be removed.  *See id.*  As discussed above, at this stage, the claims against Harvey and Robert Weinstein are related to bankruptcy because each has an arguable right to advancement and indemnification from TWC Holdings.  To be sure, either or both of the Weinstein brothers may, eventually, be held ineligible for such coverage, because of bad faith or criminal conduct that disqualifies them from coverage under these agreements.  *See* Pl. Reply Br. at 2.  But that possibility does not defeat "relating to" jurisdiction:  A claim for indemnification "need not be certain to provide a federal court with jurisdiction: 'contingent outcomes can satisfy the "conceivable effects" test, so long as there is the *possibility* of an effect on the estate.'"  *SPV Osus*, 882 F.3d at 340 (quoting *N.Y. Commercial Bank*, 2013 WL 494050, at *3).

Finally, Canosa notes that another action, *Rehal v. Weinstein*, Index No. 151738/2018, is pending in New York state court.  Pl. Reply Br. at 6.  It is as yet unknown whether that case may be removed.  To the extent *Rehal* and the five cases pending in this District have the potential to be consolidated in one jurisdiction, this Court alone is a possible forum for that consolidation.

*Noble*, *Geiss* and *Dulany*, which include federal-law claims, cannot be remanded to state court. Thus, to the extent some duplication of litigation across jurisdictions may prove unavoidable, it will only be because *Rehal* remains in state court, not because this case stays here.

### 2.      Other Factors

The other factors may be quickly addressed.

First, while claims based on state law predominate in this action—indeed, the claims arise only under state law—that is only a "modest factor" in favor of remand. *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 145 (Bankr. S.D.N.Y. 2002). "[P]articularly where," as here, "the state law claims are not novel or complex," "[t]he fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand." *Neuman v. Goldberg*, 159 B.R. 681, 688 (S.D.N.Y. 1993). Courts in this District are well familiar with New York law in the areas relevant to the claims in this case.[9]  That Canosa's claims are weighty, and that the broader controversy regarding Harvey Weinstein to which this case relates is of public interest, do not make the legal issues complex.

Nor do the demands of comity require remand. The state court has not invested judicial resources in this action—this action was removed nine days after the complaint was filed.  There is thus little concern that a state court's efforts will have been wasted by removal to this Court. *See, e.g.*, *Krys v. Sugrue*, No. 08 CIV 3065 (GEL), 2008 WL 4700920, at *10 (S.D.N.Y. Oct. 23, 2008); *Kirschner ex rel. Refco Private Actions Tr. v. Bennett*, No. 07 CIV 8165 GEL, 2008 WL 1990669, at *8 (S.D.N.Y. May 7, 2008).  Nor do the facts that the New York Attorney General has brought a civil action and the New York County District Attorney's Office a criminal action

---

[9] This Court, as much as a New York court, will be able to provide the parties a jury trial in this case.  That factor, therefore, does not counsel in favor of remand.

arising from related activity compel remand to New York state court.  The intersection, if any,

between those regulatory proceedings and this case brought by a private civil plaintiff is as yet

unclear.  Further, as counsel at argument represented, New York is not the only sovereign that

has reportedly asserted a potential interest in the events giving rise to this suit.  Conceivably,

states other than New York, or an arm of the federal government, may come to bring actions

arising out of the facts at issue.

       This case's relatedness to the bankruptcy case, reviewed above, also weighs in favor of

retaining jurisdiction.  This action is not "remote" from the bankruptcy; rather, it asserts claims

directly against the debtors.  Although those claims are currently stayed, there is good reason to

believe that the bankruptcy court may lift the stay to allow adjudication of those claims here.

The bankruptcy court has already done so with regard to the parallel claims in *Geiss*.  In any

event, Canosa's claims against the non-debtor defendants also directly implicate the debtors

because of those defendants' advancement and indemnification agreements.  *See, e.g.*, *Nemsa*

*Establishment, S.A. v. Viral Testing Sys. Corp.*, No. 95 CIV. 0277 (LAP), 1995 WL 489711, at

*8 (S.D.N.Y. Aug. 15, 1995).

       Finally, no party has identified any prejudice to the involuntarily removed defendants.

Of the defendants who have appeared in this action, all but Sackman and Maerov affirmatively

join in Sarnoff's opposition to Canosa's remand motion.  No defendant objects to the removal.

      **C.**      **Timeliness of Removal**

       Apart from her arguments for equitable remand, Canosa contends that the removal in this

case was untimely.  *See* Pl. Br. at 6.  The parties agree that the timeliness of the removal is

assessed under Bankruptcy Rule 9027.  *See id.*; Def. Br. at 19; *see also In re Fairfield Sentry*

*Ltd.*, 452 B.R. 64, 87–88 (Bankr. S.D.N.Y.), *rev'd on other grounds*, 458 B.R. 665 (S.D.N.Y.

2011) ("As distinguished from general removal governed substantively by 28 U.S.C. section

1441 and procedurally by 28 U.S.C. section 1446, the removal of claims or causes of action related to bankruptcy cases is now governed substantively by 28 U.S.C.[ ] § 1452(a) and procedurally by [Bankruptcy Rule] 9027." (internal quotation omitted)).

That rule sets distinct deadlines for removal of civil cases filed before a bankruptcy action has commenced and of civil cases filed after a bankruptcy action has commenced. *See* Fed. R. Bank. P. 9027(a)(2), (3). This action was filed in state court prior to the debtors' filing for bankruptcy. The rule's provision governing the timing of removal of civil actions filed prior to the pendency of a bankruptcy action thus applies here. It provides that

> a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

Fed. R. Bankr. P. 9027 (a)(2).

The deadline set by "90 days after the order for relief in the case under the Code" was June 18, 2018—that is, 90 days following the filing of TWC and TWC Holdings' petition on March 19, 2018. Sarnoff's removal on May 8, 2018, therefore, was timely.

## CONCLUSION

For the foregoing reasons, Canosa's motion to remand this action to state court is denied. The case will now move forward promptly. An order setting a schedule for next steps, consistent with the Court's discussion with counsel at last week's hearing, will issue forthwith.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 1, 2018
       New York, New York