HERMAN LAW
5200 Town Center Circle, Suite 540
Boca Raton, Florida 33486
Jeff Herman
(pending *pro hac vice* admission)
Daniel Ellis
California Bar No. 298639
dellis@hermanlaw.com
Arick Fudali
California Bar No. 296364
afudali@hermanlaw.com
Tel: (305) 931-2200
Fax: (305) 931-0877

FILED
Superior Court of California
County of Los Angeles
OCT 24 2017
Sherri R. Carter, Executive Officer/Clerk
By_____ Marlon Gomez _____ Deputy

*Attorneys for Plaintiff, Dominique Huett*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

BC680869

| | |
|---|---|
| DOMINIQUE HUETT, | ) CASE NO: |
| Plaintiff, | ) CIVIL COMPLAINT ALLEGING |
| vs. | ) DAMAGES FOR NEGLIGENCE |
| THE WEINSTEIN COMPANY LLC, | ) DEMAND FOR JURY TRIAL |
| Defendant. | ) |

FAX FILE

### PARTIES AND JURISDICTION

1.  Plaintiff Dominique Huett is a citizen and resident of New York.

2.  Defendant The Weinstein Company LLC (hereinafter referred to as "TWC") is a Delaware limited liability company whose principle place of business is in New York, New York.

3.  Venue properly lies in this county in that Defendant regularly conducts business in this county, and the torts described herein were committed in this county. This Court has

jurisdiction in that this is a claim for damages of not less than $5 million, well in excess of the jurisdictional minimum of $25,000.

## FACTUAL ALLEGATIONS

4.  In or about November 2010, Plaintiff Dominique Huett and Harvey Weinstein arranged to meet each other at The Peninsula Beverly Hills hotel in Beverly Hills, California. Plaintiff was an aspiring actress at the time and the purpose of the meeting was to discuss Weinstein's offer to assist Plaintiff in procuring future television and/or film roles. The communications to arrange this meeting included e-mails from the e-mail address of Weinstein's assistant at TWC.

5.  Plaintiff and Weinstein initially met at the bar of The Peninsula hotel, where they discussed Weinstein's interest in assisting Plaintiff with her acting career. During their conversation, Plaintiff noticed Weinstein staring at her breasts. Weinstein asked Plaintiff is she had ever had a "boob job" and asked her to show him her breasts. Plaintiff refused and was made uncomfortable by the question and the request. However, Weinstein informed Plaintiff that the purpose of the questioning was that it would be beneficial for securing future roles if she did not have breast augmentation.

6.  At some point during their conversation, Weinstein, who was at the time living at the hotel, invited Plaintiff to his room under the guise of continuing their business meeting. Plaintiff agreed to move the meeting to his hotel room, believing they were to continue their discussion regarding her career.

7.  While in Weinstein's room, the two continued their conversation regarding Plaintiff's career. At some point, Weinstein excused himself to use the restroom. After several minutes, Weinstein returned from the restroom wearing only a bathrobe.

8. Upon returning, Weinstein asked Plaintiff to perform a massage on him. Plaintiff said, "No," and that she did not feel comfortable by his request. However, Weinstein persisted and would not take "no" for an answer. Weinstein laid on the bed and demanded that Plaintiff perform a massage on him. Plaintiff ultimately complied with his demands and performed the massage.

9. Subsequently, Weinstein requested to perform oral sex on Plaintiff. Plaintiff was shocked and alarmed by the request and initially refused. Again, Weinstein displayed persistence and would not take "no" for an answer. Weinstein initiated and Plaintiff froze as Weinstein removed her clothing and performed oral sex on her. Weinstein performed oral sex on Plaintiff for several minutes. After performing oral sex on Plaintiff, Weinstein masturbated in front of Plaintiff until he reached orgasm.

10. At some point during their communications, Weinstein gave Plaintiff the contact information for an executive producer with *Project Runaway*, a television program produced by Defendant, and offered to secure a role for Plaintiff on the program.

11. Prior to the incident involving Plaintiff, Defendant TWC's executives, officers and employees had actual knowledge of Weinstein's repeated acts of sexual misconduct with women. In particular, Defendant was aware of Weinstein's pattern of using his power to coerce and force young actresses to engage in sexual acts with him. This knowledge was possessed by Defendant's Board of Directors including, upon information and belief, Bob Weinstein.

12. Upon information and belief, Defendant was aware of allegations of sexual misconduct against Weinstein going back to the 1990s. Upon information and belief, prior to the incident involving Plaintiff, Defendant was aware of multiple claims of sexual misconduct

which were settled with the victims prior to the filing of suit. This knowledge was possessed by Defendant's Board of Directors including, upon information and belief, Bob Weinstein.

13. Prior to the incident involving Plaintiff, Defendant often aided and abetted Weinstein in the commission of his sexual misconduct. For example, female Weinstein Company employees were often used as "honeypots" to lure his victims into a false sense of security. The "honeypots" would initially join a meeting along with a woman Weinstein was interested in, but then Weinstein would dismiss them, leaving him alone with the woman.

14. Plaintiff did not discover, and a reasonable and diligent investigation would not have disclosed, that prior to her incident Defendant was aware of numerous allegations of sexual misconduct involving Weinstein. Upon information and belief, the allegations of sexual misconduct involving Weinstein that Defendant was aware of were subject to nondisclosure agreements and/or confidential settlements, and were otherwise only known inside TWC. Upon information and belief, the nondisclosure agreements and/or confidential settlements legally prohibited Defendant TWC, Weinstein, and the victims of the sexual misconduct from discussing the allegations and Defendant's knowledge thereof. As such, even if Plaintiff had conducted a timely and reasonable investigation, she could not have discovered Defendant's prior knowledge of Weinstein's sexual misconduct. Plaintiff was unable to discover Defendant's knowledge of Weinstein's propensity to engage in sexual misconduct until the story of Weinstein's pattern of sexual misconduct with young actresses broke in October 2017.

## COUNT I
(Negligence)

15. Plaintiff repeats and realleges the allegations in paragraphs 1 through 14 above.

16. At all relevant times, Defendant owed a duty to use reasonable care in the retention and supervision of its employee Harvey Weinstein.

17. This included a duty to control Weinstein in his interactions with women during meetings taking place within the course and scope of his employment in order to prevent foreseeable harm.

18. Prior to the sexual misconduct with Plaintiff, Defendant knew or had reason to believe Weinstein was likely to engage in sexual misconduct with women he came into contact with during the course and scope of his employment. In particular, upon information and belief, Defendant knew or should have known that Weinstein would lure young aspiring actresses into compromising situations under the guise of business meetings. Prior to the incident involving Plaintiff, Defendant's Board of Directors possessed knowledge of Weinstein's propensity to engage in sexual misconduct. Knowledge of Weinstein's propensity to engage in sexual misconduct was additionally possessed by Defendant's executives, officers and employees. At all relevant times Defendant's Board of Directors maintained a supervisory position over Weinstein.

19. By possessing knowledge of Weinstein's prior sexual misconduct, Defendant knew or should have known that Weinstein was unfit and that this unfitness created a particular risk to others.

20. Defendant did not act in a reasonable manner by failing to terminate Weinstein and instead continued to allow him to meet with prospective actresses in private areas with the knowledge that there was a substantial likelihood for sexual misconduct.

21. Weinstein's meeting with Plaintiff at the Peninsula hotel occurred within the course and scope of his employment. The contact between Plaintiff and Weinstein was generated by the employment relationship between Defendant and Weinstein.

22. Defendant's negligence in supervising and/or retaining Weinstein was a substantial factor in causing Plaintiff's harm.

23. It was foreseeable that Weinstein would engage in sexual misconduct if Defendant continued to allow Weinstein to have private business meetings with actresses. At all relevant times, Defendant knew Weinstein was using his power and position to coerce women into engaging in sexual contact and knew that this sexual misconduct would cause harm.

24. Defendant failed to institute corrective measures to protect women coming into contact with Weinstein, including Plaintiff, from sexual misconduct despite the Board of Directors possessing actual notice of Weinstein's sexually inappropriate behavior. Such acts and omissions demonstrate a conscious disregard of the safety of others. The Board of Directors was aware of the probable dangerous consequences of failing to remove or adequately supervise Weinstein. In failing to do so, Defendant acted with actual malice and with conscious disregard to Plaintiff's safety.

25. As a direct and proximate result of Defendant's negligence, Plaintiff was a victim of Weinstein's sexual misconduct. The sexual misconduct has caused Plaintiff to suffer continuing, severe and permanent psychological and emotional issues, and the loss of enjoyment of life.

**PRAYER FOR RELIEF**

26. General damages in an amount to be shown according to proof at the time of trial.

27. Special damages including medical and psychological care expenses in an amount to be shown according to proof at the time of trial.

28. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendant.

29. Costs of suit.

30. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action.

Dated: Oct. 24, 2017

HERMAN LAW

By: _____
Daniel Ellis
California Bar No. 298639
dellis@hermanlaw.com
Arick Fudali
California Bar No. 296364
afudali@hermanlaw.com
Jeff Herman
(pending *pro hac vice* admission)
*Attorneys for Plaintiff*

| SHORT TITLE: Dominique Huett v. The Weinstein Company LLC | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☒ 11. | 9882 S. Santa Monica Boulevard |

| CITY: Beverly Hills | STATE: CA | ZIP CODE: 90212 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____Central_____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: October 24, 2017

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).
5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)  
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM  
AND STATEMENT OF LOCATION**

Local Rule 2.3  
Page 4 of 4