UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDRA CANOSA,<br><br>                              Plaintiff,<br><br>          -against-<br><br>DIRK ZIFF, TIM SARNOFF, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN, ROBERT WEINSTEIN and DOES 1-10,<br><br>                              Defendants. | No. 18 Civ. 4115 (PAE) |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS
<u>TO DISMISS THE AMENDED COMPLAINT</u>**

Thomas P. Giuffra
Jeremy A. Hellman
RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorneys for Plaintiff Alexandra Canosa
551 Fifth Avenue, 29th Floor
New York, NY 10176
Tel.: (212) 684-1880
Fax: (212) 689-8156
tgiuffra@rheingoldlaw.com
jhellman@rheingoldlaw.com

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………….. iv

Statement of Facts…………………………………………………….… 1

    Parties………………………………………………………...…… 1

    The Assaults……………………………………………………… 1

    The TWC Financed/Arranged Trap…………………………………… 2

    The Weinstein Company Defendants
    Provided the Means and Methods of the Assaults……………………...……… 2

    HW and TWC Arranged Plaintiff's Interstate/International Travel………….......... 4

    Financial Consequences to Plaintiff…………………………………….. 4

    All Defendants Knew About Harvey Weinstein's Misconduct…………………… 5

    The Active Cover-Up…………………………………………… 5

    Acts of TWC Employees Within Scope of Employment…………………………7

    Facilitating HW's Sexual Assaults was Financially Beneficial to TWC………….. 7

Standard of Motion to Dismiss…………………………………………… 8

TPVA Claims…………………………………………………… 9

Timeliness of New York Incident Under Five Year Statute of Limitations……………… 13

Timeliness of Malaysia Incident Under New York
State's Five Year Statute of Limitations………………………………………... 14

Timeliness of Ontario Incident…………………………………………… 16

Liability of All Defendants Under the Doctrine of Aiding and Abetting ………………... 18

Applicability of NYC and NYS Human Rights Laws
Due to Pervasive and Continuing Assaults in New York……………………………… 19

Scope of Employment of Harvey Weinstein and TWC's Actions………………………… 22

Director Liability……………………………………………………..…… 24

Inapplicability of Workers Compensation Law……………………………………….. 25

Request for Leave to Replead……………………………………………………….. 25

# TABLE OF AUTHORITIES

CASES:

Ananiadis v. Mediterranean Gyros Prods., Inc.,
151 A.D.3d 915, 918, 54 N.Y.S.3d 155, 159 (2nd Dept 2017)……………………………… 19

Aragon v. Che Ku,
277 F. Supp. 3d 1055, 1061 n.2 (D. Minn. 2017)……………………………………………… 12

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
493 F.3d 87, 98 (2d Cir. 2007)……………………………………………………………….. 8

Blake v. Bronx Lebanon Hosp. Ctr.,
No. 02 CIV. 3827 (CBM), 2003 WL 21910867, at *6 (S.D.N.Y. Aug. 11, 2003)………... 20

Bristol–Myers Squibb Co. v. Matrix Labs. Ltd.,
655 F. App'x 9, 13 (2d Cir. 2016)……………………………………………………………. 15, 16

Burlington Indus., Inc. v. Ellerth,
524 U.S. 742, 756 (1998)…………………………………………………………………….. 24

Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc.,
899 F. Supp. 1248, 1253 (S.D.N.Y. 1995)………………………………………………… 17

Chapin Home for the Aging v. McKimm,
No. 11-CV-667 FB RER, 2013 WL 948110, at *5 (E.D.N.Y. Mar. 11, 2013)…………… 24

Cunard S.S. Co. Ltd. v. Salen Reefer Servs.,
773 F.2d 452, 461 (2d Cir. 1985)……………….…………………………………………… 17

Dist. Attorney of New York Cty. v. Republic of the Philippines,
307 F. Supp. 3d 171, 200 (S.D.N.Y. 2018)………………………………………………... 18

Doe v. Kolko,
No. 06-CV-2215SLTMDG, 2008 WL 4146199 (E.D.N.Y. Sept. 5, 2008)……………….. 8

Doe v. State,
89 A.D.3d 787, 788 (2nd Dept. 2011)……………………………………………………… 20

Jane Doe v. Weinstein,
2018 ONSC 1126 (Ontario Superior Ct.)(February 16, 2018)(Monahan, J.)……………… 17

DP Aviation v. Smith Industries,
268 F.3d 829 at 848 (9th Cir. 2001)……………………………………………………... 16

Father Belle Community Center v NYSDHR on Complaint of King,
221 AD2d 44, (4th Dept 1996)…………………………………………………..… 22

Greene v. St. Elizabeth's Hosp.,
66 N.Y.2d 684, 496 N.Y.S.2d 411, 487 N.E.2d 268 (1985)………………………..… 21

Hart v. Sullivan,
84 A.D.2d 865 (3rd Dept. 1981)………………………………………………… 21

Haybeck v. Prodigy Servs. Co.,
944 F. Supp. 326, 328–29 (S.D.N.Y. 1996)…………………………………………..8

Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.,
241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002)…………………………………………... 17

Hongxia Wang v. Enlander,
No. 17 CIV. 4932 (LGS), 2018 WL 1276854, at *6 (S.D.N.Y. Mar. 6, 2018)…………… 9

Huett v. Weinstein,
2:18-cv-06012 (SVW)(November 5, 2018)……………………………………….…… 9

Krish v. Balasubramaniam,
2006 WL 2884794, at *3 (E.D. Ca. Oct. 10, 2006)………………………………….… 17

Larsen v. A.C. Carpenter, Inc.,
620 F. Supp. 1084, 1103 (E.D.N.Y. 1985), aff'd, 800 F.2d 1128 (2d Cir. 1986)…..…..… 15

Lesnik v. Eisenmann SE,
No. 16-CV-01120-LHK, 2018 WL 4700342, at *13 (N.D. Cal. Oct. 1, 2018)…………… 12

Lewis v. Triborough Bridge and Tunnel Auth.,
77 F. Supp. 2d 376, 384 (S.D.N.Y 1999)…………………………………………….. 19, 21

Lombardo v. Mastec N. Am., Inc.,
893 N.Y.S.2d 78, 80 (2d Dep't 2009)………………………………………………… 24

Lopez v. Annucci,
690 F. App'x 56, 58–59 (2d Cir. 2017)……………………………………………..… 20

Lumberland v NYSDHR,
229 AD2d 631 (3rd Dept. 1996)……………………………………………………22

Magnotti v. Crossroads Healthcare Management, LLC,
No. 14-cv-6679 (ILG) (RML), 2016 U.S. Dist. LEXIS 69929 at *5-6 (E.D.N.Y 2016)….. 19

Maher v. All. Mortg. Banking Corp.,
650 F. Supp. 2d 249, 261 (E.D.N.Y. 2009)……………………………………..…… 21

Marasco v. Am. Expediting Co., Inc.,
No. 16CV0232PKCJO, 2018 WL 2074154, at *3 (E.D.N.Y. Jan. 12, 2018)…………….. 24. 25

Matson v. Bd. of Educ. of City Sch. Dist. of New York,
631 F.3d 57, 63 (2d Cir. 2011)……………………………………………………… 8

McRedmond v Sutton Place Restaurant and Bar, Inc.,
95 AD3d 671, 945 NYS2d 35 (1st Dept. 2012)…………………………………… 22

Melendez v. Int'l Serv. Sys., Inc.,
1999 WL 187071 (S.D.N.Y. Apr. 6, 1999)…………………………………………... 21

Miotto v. Yonkers Pub. Sch.,
534 F. Supp. 2d 422, 428–29 (S.D.N.Y. 2008)…………………………………… 21

Mouloki v. Epee,
262 F. Supp. 3d 684, 698 (N.D. Ill. 2017)……………………………………...… 9

Naughright v. Weiss,
826 F. Supp. 2d 676 (S.D.N.Y. 2011)………………………………………...… 18

National R.R. Passenger Corp. v Morgan,
536 US 101 (2002)…………………………………………………………… 20

Noble v. Weinstein,
No. 17 CIV. 9260 (RWS), 2018 WL 3863452, at *1 (S.D.N.Y. Aug. 14, 2018)…...……..10, 12

Novoa v. GEO Grp., Inc.,
No. EDCV172514JGBSHKX, 2018 WL 4057814 (C.D. Cal. 2018)…………………... 13

Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.,
No. SACV101172AGMLGX, 2011 WL 13153190, at *10 (C.D. Cal. 2011)…………….. 13

Parris v. Hirtenfeld,
7 Misc. 3d 1024(A) (N.Y. Sup. Ct. 2005)………………………………………….…… 14

Pomerance v. McGrath,
124 A.D.3d 481, 484 (2015)……………………………………………………… 18

Quinn v Green Tree Credit Corp.,
159 F3d 759, 765 (2d Cir. 1998)…………………………………………………….. 19

Reed v. Paramount Wire Co.,
2005 WL 1476455 (S.D.N.Y. June 21, 2005)……………………………………………... 25

Rella v. N. Atl. Marine, Ltd.,
No. 02 CIV. 8573(GEL), 2004 WL 1418021, at *9 (S.D.N.Y. June 23, 2004)………….. 25

Riviello v. Waldron,
47 N.Y.2d 297, 303 (1979)………………………...…………………………………...….. 23

Sachs v. Cantwell,
No. 10 CIV. 1663 JPO, 2012 WL 3822220, at *17–18 (S.D.N.Y. Sept. 4, 2012)………… 23

Sier v Jacobs Persinger & Parker,
276 AD2d 401, 714 NYS2d 283 (1st Dept. 2000)…………………………………..……… 22

Small v. Chao,
398 F.3d 894, 898 (7th Cir. 2005)……………………………………………………….… 8

Smith v. United States,
508 U.S. 223, 228 (1993)………………………………………………………………..… 9

Soojung Jang v. Trustees of St. Johnsbury Acad.,
No. 2:17-CV-162-JMC, 2018 WL 3352923, at *8–9 (D. Vt. July 9, 2018)………………. 15

Staff v. Pall Corp.,
233 F.Supp.2d 516, 527 (S.D.N.Y. 2002), *aff'd,* 76 Fed.Appx. 366 (2d Cir. 2003)……… 20

Tejada v. LittleCity Realty LLC,
308 F. Supp. 3d 724, 731 (E.D.N.Y. 2018)……………………………………………….. 20

Tidball v Schenectady City School Dist.,
122 A.D.3d 1131 (3rd Dept. 2014)………………………………………………………… 22

Tome Engenharia E. Transportes, Ltd. v. Malk,
2003 WL 21372466, at *5 (N.D. Ill. June 21, 2003)…………………………………….… 17

Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.,
65 N.Y.2d 300 (1985)………………………………………………………………….…. 20

United States v. Estrada-Tepal,
57 F. Supp. 3d 164 (E.D.N.Y. 2014)…………………………………………………….... 13

United States v. Todd,
627 F.3d 329 (9th Cir. 2010)…………………………………………………………….… 12

<u>United States v. Townsend,</u>
521 Fed. Appx. 904 (11th Cir. 2013)……………………………………………… 13

<u>Weiss v. Nat'l Westminster Bank, PLC,</u>
2007 WL 1460933 (E.D.N.Y. May 14, 2007)…………………………………….…… 17


**STATUTES:**

F.R.C.P. §8(c)……………………………………………………………….... 8

F.R.C.P. §12(b)(6)……………………………………………………………… 8, 25

New York City Human Rights Law §8-107…………………………………….……… 19

N.Y. C.P.L.R. 203(f)…………………………………………………………… 14

N.Y. C.P.L.R. §213-c…………………………………………………………… 14, 15

N.Y. Executive Law §290……………………………………………………… 19

N.Y. G.C.L. §20……………………………………………………………………14

N.Y. Penal Law §20.20……………………………………………………………14

N.Y. Penal Law §130.35……………………………………………………………14

N.Y. Penal Law §130.50……………………………………………………………14

N.Y.S.H.R.L. §296(6)…………………………………………………………… 21

Restatement §228(1)(c)………………………………………………………………...24

18 U.S.C. §1591……………………………………………………………………12, 13

18 U.S.C. §1595…………………………………………………………………9, 11, 12, 13

Plaintiff submits this Memorandum of Law in opposition to the motions to dismiss of defendants DIRK ZIFF, TIM SARNOFF, LANCE MAEROV, RICHARD KOENIGSBERG, JEFF SACKMAN, THE WEINSTEIN COMPANY HOLDINGS, LLC, THE WEINSTEIN COMPANY, LLC, HARVEY WEINSTEIN and ROBERT WEINSTEIN.

## STATEMENT OF FACTS

### Parties

Harvey Weinstein (hereinafter referred to as "**HW**") and Robert Weinstein were the heads of THE WEINSTEIN COMPANY HOLDINGS, LLC and THE WEINSTEIN COMPANY, LLC (hereinafter collectively referred to as "**TWC**") (¶[1]17; 19; 170; 176; 178; 313; 381; 391), and Harvey Weinstein was exercising managerial or supervisory responsibilities over plaintiff (¶330; 369). The other defendants herein were members of the board of directors of TWC. Alexandra Canosa worked with HW on various productions (¶ 32).

### The Assaults

The Amended Complaint recounts acts of assault in hotels around the world (¶35-47):

> ¶35: August 12, 2010: Sexual assault - Manhattan.
> ¶36: September 9-19, 2010: Sexual assault - Toronto
> ¶37: November 4, 2011: Sexual assault - New York[2]
> ¶38: November, 2011 to March, 2012: sexual assaults - Los Angeles
> ¶39: May 2, 2012: Sexual assault - Manhattan
> ¶40: October 22, 2012: sexual assault – Los Angeles
> ¶41: December 20, 2012: oral sex – Manhattan
> ¶42: 2010-2014: Sexual assault/rape
> ¶43: May 29, 2014: sexual assault and rape - Malaysia
> ¶44: December 2, 2014: threatened and verbally abuse - Manhattan
> ¶45: December 21, 2014: sexual assault - Beverly Hills
> ¶46: June 24, 2015: physical assault/verbal abuse - Budapest
> ¶47: August 29, 2017: verbal abuse/threat

---

[1] "¶" refer to numbered paragraphs in the Amended Complaint of October 4, 2018.
[2] This assault was in Harvey Weinstein's house. The other assaults were all in hotels.

The circumstances behind these incidents have common denominators (many of which are shared with other victims of HW's assaults) and are discussed below in detail.

### The TWC Financed/Arranged Trap

For many years HW, with the full knowledge of employees and directors of TWC, made it a pattern and practice to conduct business meetings in hotel suites throughout the world, and even in New York and Los Angeles despite HW maintaining personal offices in those cities. This conduct was widely known and accepted by TWC.

HW insisted on meeting with Plaintiff in his hotel room for business related purposes, and once Ms. Canosa was there, he physically forced himself on her despite repeated requests to stop (¶33; 52; 308; 405-406). In order to lure Ms. Canosa to his hotel, HW would intersperse legitimate work meetings with illegitimate meetings (¶412). Using his authority and power in TWC and in the entertainment business, HW abused his position of power and authority over Plaintiff, who was either his subordinate or otherwise in no position to reject his requests for business meetings at his hotel due to his intimidation (¶272; 330). This was the modus operandi of HW and TWC, whose employees worked to lure Plaintiff to cities where HW was working, so that HW could perform sexual assault acts at locations arranged and paid by TWC (¶60; 171). HW would use TWC corporate resources and employees to facilitate his unlawful conduct and to dupe victims into believing that they were attending legitimate business meetings (¶172).

### The Weinstein Company Defendants Provided the Means and Methods of the Assaults

Employees of Defendants TWC aided and abetted HW in committing each of the above acts of sexual assault by obtaining and providing HW with medications and other paraphernalia such as caverject shots needed to perform the sexual acts described herein[3], arranged for HW to

---

[3] Without these shots, which are intended for erectile dysfunction, HW would not have been able to sexually assault plaintiff, thus demonstrating the scope of assistance TWC provided him.

have use of the hotel rooms where the sexual assaults took place, set up the meetings with Ms. Canosa and HW, covered up the occurrences though they knew what had happened[4], cleaned up after the sexual assaults to avoid detection by others, gave plaintiff false assurances that she would not be secluded with HW and then deserted her, and providing Ms. Canosa with jobs and production opportunities promised to her by HW- all while knowing that HW would threaten plaintiff, and overpower her (¶ 57).

TWC employees facilitated the ostensibly business-related meetings that lead to illicit sexual activity complained of herein, while knowing that same was unwanted (¶173). TWC paid for hotel rooms for HW while knowing that same were intended for the purpose of facilitating the illicit acts complained of herein (¶174), and the expenses needed for each sexual encounter was treated as a business expense of TWC (¶175; 177). TWC employees acted as "wing women" who would accompany HW to events and give Ms. Canosa, an impression that HW could be trusted and would not assault her on that occasion, only for the women to suddenly and purposefully leave so that Ms. Canosa could become secluded with HW who would then assault her (¶429-431). Other TWC employees took steps to notify HW which "Friends of Harvey" (women he could sexually assault), happened to be available for HW, and arranged for Ms. Canosa to meet him for sexual assault purposes under the guise of a legitimate business purpose (¶432).

TWC facilitated HW's conduct by, among other things: (1)  using employees to arrange for meeting in HW's hotel rooms and paying for costs associated with the room, even though he had a history of misconduct in what he termed 'business meetings' in such places; (2) paying off multiple claims of sexual misconduct without adequate corrective actions; (3) continuing to allow HW to operate improperly, and (4) attempting to keep HW's misconduct a secret thereby allowing

---

[4] The complaint uses language of constructive notice as well as actual notice.

HW to continue his predatory and threatening behavior to Ms. Canosa and others who thought her circumstance was one that she suffered alone and therefore no one would believe her (¶75). Employees of TWC were aware that HW would advance the career of people he sexually assaulted and facilitated same by assigning people such as plaintiff to production teams (¶63).

### HW and TWC Arranged Plaintiff's Interstate/International Travel

HW and TWC directed, arranged and paid for plaintiff to go to New York, Toronto, California, Malaysia and Budapest for TWC business purposes, and would then sexually assault her there. Plaintiff resided in California at the times of the assaults herein, and HW, TWC and Robert Weinstein provided for plaintiff's travel and hotels to the locations with the intention that she would later be sexually assaulted by HW there (¶34; 403-404; 421-422; 425; 427-428; 451).

### Financial Consequences to Plaintiff

Ms. Canosa worked for or with HW in varying capacities (¶49-51). HW advanced plaintiff's career (¶35) and provided plaintiff with jobs and production opportunities, and plaintiff was working on said jobs producing several film projects with HW and was assaulted and forcibly sexually assaulted against her will several times under the guise of production work (¶54). HW used his power in the movie industry and personality to force plaintiff to attend what he said would be business meetings. HW, aided by TWC, created an environment in which there was no choice but to do his bidding or suffer dire consequences both physically and to plaintiff's career (¶69; 407-408). These sexual assaults were then performed explicitly or implicitly, as the basis for employment decisions affecting compensation, terms, conditions, or privileges of Ms. Canosa (¶355) regardless of whether she consented to the assault, and all defendants expressly or tacitly linked tangible job benefits to the commission of the forced sexual advances and sexual assaults (¶356; 388).

**All Defendants Knew About Harvey Weinstein's Misconduct**

All Defendants were aware of HW's long history of illicit predatory sexual conduct towards women (¶20-26; 53; 134-136; 140; 144; 166; 181; 192; 203; 214; 316; 410; 424; 428).

Sixteen current and former executives and assistants at TWC told a reporter from *The New Yorker* about a pattern of professional meetings that were pretexts for sexual advances on young actresses and models. "All sixteen said that the behavior was widely known within both Miramax and the Weinstein Company." (¶ 76). Irwin Reiter, the Executive Vice President of Accounting and Financial Reporting at TWC from 2005 and forward and who previously worked in the same capacity from 1989 to 2005 at Miramax, sent messages to Emily Nestor, a temporary employee of TWC, who alleged that she was harassed, describing HW's "mistreatment of women" as a serial problem at TWC (¶77). Defendant Tarak Ben Ammar admitted that the TWC Board were aware that HW had been accused of groping model Ambra Gutierrez in 2015 (¶23). Defendant Maerov has admitted that for years prior to the 2015 Gutierrez allegations, he had heard from TWC employees about complaints against HW (¶ 24). Despite knowing full well of HW's conduct, Defendants took no steps whatsoever to remove him from TWC and permitted him to engage in his reign of terror over women. Had Weinstein not had the full backing of TWC, he would not have had the means, methods or opportunity to dupe women into his hotel rooms for legitimate business purposes. TWC was the shield which enabled his outrages to go on for so long at the expenses of many women.

**The Active Cover-Up**

Individuals who complained to HW or to the Human Resources Department of TWC, for similar transgressions as those complained of herein were subject to retaliation by HW as a result of their complaints; they were not kept anonymous from HW, allowing him to exact revenge (¶65). This conduct in effect gave HW the proverbial keys to do exactly what he wanted without

consequence. Employees of TWC and HW also spoliated HW's personnel file (¶55). Defendant HW similarly sexually assaulted and threatened numerous other women similarly situated to plaintiff Alexandra Canosa, before these aforesaid acts to Ms. Canosa, yet despite knowledge by TWC nothing was done to prevent future acts, including those complained of herein, nor was HW disciplined (¶68). TWC was aware of repeated unlawful conduct with plaintiff and other women which amounted to a recurring issue, yet failed to investigate further, and/or failed to take reasonable steps to become aware of such recurring issues, or to do anything about them (¶83).

Instead of investigating and taking prompt corrective action, TWC, Robert Weinstein and the Director Defendants, used settlements that contained strict Non-Disclosure Agreements to keep law enforcement, the public, and even other TWC employees from discovering the extensive scope of his misconduct (¶89). TWC itself entered into several of these Non-Disclosure agreements, containing settlements with company employees. Many witnesses to HW's unlawful conduct separately were subject to broad Non-Disclosure Agreements pursuant to their TWC employment agreements, preventing them from revealing their own observations of misconduct to law enforcement as well. In this way, HW, TWC, Robert Weinstein and the Director Defendants enabled the unlawful conduct to continue far beyond the date when, through reasonable diligence, it should have been stopped (¶90; 118; 148; 183). Defendants were complicit in permitting HW's outrages to continue unabated due to their ongoing efforts to shield him from disclosure.

TWC lacked an effective process for reporting and investigating complaints of sexual harassment or other sexual misconduct, as is required by law: it did not train employees on sexual harassment policies or laws; it did not have a meaningful or consistent process for documenting claims of sexual harassment or other misconduct; and, when individuals did complain, Human Resources was not empowered to address claims related to HW (¶91). TWC and Robert Weinstein's decision to avoid utilizing their power to investigate credible claims of misconduct,

and to shield HW from consequences of that misconduct, enabled HW to continue victimizing employees of TWC and coworkers (¶95; 124).

### Acts of TWC Employees Within Scope of Employment

All of these activities were part and parcel of the employment duties for employees of TWC, such as Sandeep Rehal (see Complaint - Exhibit 2), and others, and were within the specific scope of employment said employees were hired for, as directed by HW, Robert Weinstein, Frank Gil (the head of human resources), and others in executive and managerial positions for the companies (¶ 58). The above acts, and the assaults of HW, were all undertaken within the scope of employment for TWC as a causal nexus existed between (i) HW's grooming of women in the entertainment industry to work with him and TWC and (ii) HW's sexual assault of those women (¶59). In exchange for facilitating and covering up HW's assaults, TWC employees progressed in their careers at TWC and received financial benefits (¶433), and received better assignments and compensation for doing so (¶434).

### Facilitating HW's Sexual Assaults was Financially Beneficial to TWC

By facilitating HW's commercial sex acts in foreign and interstate commerce, TWC got HW to work for it, and enjoyed the promotion and promulgation of TWC projects nationally and internationally (¶436). HW was the face of TWC and his presence and promotion in foreign and interstate commerce brought exposure and prestige to TWC films (¶437). TWC facilitated HW's commercial sex acts in foreign commerce to obtain the enormous publicity HW garnered by promoting TWC films nationally and internationally, which financially benefitted TWC (¶438). The same benefits were realized by Robert Weinstein as well (¶446-449). This enterprise was a win-win for HW, TWC, Robert Weinstein and the Directors. HW had his fantasies fulfilled, and TWC, Robert Weinstein and the Directors made money through HW's working for them. If they did not provide him with the means, method and opportunity for sexual assault, the profitability of

TWC would have plummeted as HW had been the producer of numerous Academy Award and multi-million-dollar films. In contrast, Robert Weinstein would produce lower budget and less profitable films. Thus, there was a financial motivation by all defendants for facilitating HW's sexual conquests and keeping "Harvey happy."

<u>STANDARD OF MOTION TO DISMISS</u>

Defendants' motions are expressly made solely on the grounds of <u>FRCP §12(b)(6)</u>. In such a motion, "[a]llegations contained in the complaint must be construed favorably to the plaintiff … Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" <u>Haybeck v. Prodigy Servs. Co.</u>, 944 F. Supp. 326, 328–29 (S.D.N.Y. 1996). "A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged … While a complaint need not contain "detailed factual allegations," it requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation" <u>Matson v. Bd. of Educ. of City Sch. Dist. of New York</u>, 631 F.3d 57, 63 (2d Cir. 2011). A Court must accept "all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor… we may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference. <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007).

As many of defendants' arguments revolve around statute of limitations, it bears noting that "defendants have the initial burden of demonstrating that the time within which to commence the action had expired". <u>Doe v. Kolko</u>, No. 06-CV-2215SLTMDG, 2008 WL 4146199 (E.D.N.Y. Sept. 5, 2008). "Although the statute of limitations is ordinarily an affirmative defense that must be pled under Fed. R. Civ. P. 8(c), a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred" <u>Small v. Chao</u>, 398 F.3d 894, 898 (7th Cir. 2005).

8

It should also be noted that the motion made by Harvey Weinstein only regards causes of action in plaintiff's original complaint, not new claims made in the amended complaint, such as the sex trafficking claims, RICO and an incident that occurred in Toronto (¶36).

## TPVA CLAIMS

Plaintiff pled causes of action pursuant to 18 USC §1591 and 18 USC §1595 (¶¶402-452), which has a statute of limitations of ten years, and therefore encompasses all of plaintiff's incidents alleged in the amended complaint, as the Summons with Notice was filed on December 20, 2017 (Exhibit 4), and the first assault was on August 12, 2010 (¶35). The facts (see Statement of Facts) alleged in this matter fit squarely within a plain reading of the text of 18 USC §1591:

*(a) Whoever knowingly*

Plaintiff has alleged that Harvey Weinstein, Robert Weinstein and the Weinstein Company Defendants, acted with knowledge, and purposefully.

*(1) in or affecting interstate or foreign commerce*

Not only was the business of defendants international in nature, as were the jobs given to plaintiff as a result of the assaults forced upon her, but defendants arranged for plaintiff to travel from Los Angeles to various cities across the globe, for the dual purpose of defendants and plaintiff's business as well as Harvey Weinstein's desire for sexual assault wherever he goes.

*recruits[5], entices, harbors[6], transports, provides, obtains,*

---

[5] Hongxia Wang v. Enlander, No. 17 CIV. 4932 (LGS), 2018 WL 1276854, at *6 (S.D.N.Y. Mar. 6, 2018) ("The dictionary definition of "recruit" is consistent with this reading of § 1590 and includes "to secure the services of," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/recruit, and "persuade to do or help with something," Oxford Dictionaries, https://en.oxforddictionaries.com/definition/recruit. *See generally Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.").").

[6] Mouloki v. Epee, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) ("providing lodging to someone for the purposes of obtaining her labor or services against her will constitutes "harboring." Under this definition, it is reasonable to infer that the Epees could have "harbored" Mouloki, since it is

> *[advertises][7], maintains, [patronizes], or [solicits] by any means a person;*

The complaint is replete with allegations regarding how defendants purposefully directed plaintiff to go to these varied locations, arranged for and paid for plaintiff's transportation to the various locations at issue, and then enticed her to meet Harvey Weinstein in his hotel. Furthermore, she only went under the impression that she was going for work purposes, which only defendants knew would not materialize.

> *or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),*

All participants in this scheme were made to benefit. Plaintiff received lucrative work with defendants. The complaint details that these sexual assaults were performed explicitly or implicitly, as the basis for employment decisions affecting compensation, terms, conditions, or privileges of Ms. Canosa (¶355), and all defendants expressly or tacitly linked tangible job benefits to the commission of the forced sexual advances and sexual assaults as aforesaid (¶356; 388). In exchange for facilitating and covering up HW's assaults, TWC employees progressed in their careers at TWC and received financial benefits (¶433-434). By facilitating HW's commercial sex acts in foreign and interstate commerce, TWC got HW to work for it, and enjoyed the promotion and promulgation of TWC projects, thus leading to more money and fame (¶436-438). The same benefits were realized by Robert Weinstein as well (¶446-449). Harvey Weinstein received personal gratification.

> *knowing, or, …, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used*

---

undisputed that they provided lodging and a question remains as to whether that was intended to obtain her labor or services").

[7] Words in brackets were added in May, 2015. <u>Noble v. Weinstein</u>, No. 17 CIV. 9260 (RWS), 2018 WL 3863452, at *1 (S.D.N.Y. Aug. 14, 2018)

The complaint details that this was a non-consensual sexual assault which defendants knew that if a target did not relent to HW's financial pressure, HW would get his way by any means necessary, including forcing himself upon his target as occurred here. It was well known within TWC of HW's aggressive behavior towards women based on the numerous sexual assault claims which were paid to his victims, non-disclosure agreements, and surreptitious use of wing-women.

*to cause the person to engage in a commercial sex act,*

As long as HW got what he wanted (however he went about forcing it to happen), he would make sure everyone that made it happen was financially rewarded. Not only was Ms. Canosa given the opportunity to continue working on lucrative projects with HW and TWC, but TWC and Robert Weinstein also were able to flourish financially by being associated with HW.

*(d) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section*

As detailed above, there was a tremendous amount of obstruction involved. Not only did HW and TWC cause for HW's personnel file to be spoliated, but TWC aides would rush in after an attack to clean up. TWC, HW and Robert Weinstein also made sure there were "iron-clad" non-disclosure agreements in place to prevent victims from getting their story out. Therefore, it is evident that HW, TWC and Robert Weinstein clearly violated this section.

These defendants also violated 18 USC §1595, which not only allows for the within lawsuit, but also permits a lawsuit against:

*whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*

This section would clearly include HW, Robert Weinstein and TWC, as the complaint demonstrates that they all benefited through the venture and knew what was taking place. While Robert Weinstein and TWC may not have liked the arrangement, per se, they knew that if they did

11

not facilitate HW's fantasies, HW (and all his skill and fame) would attach himself to others who would get him what he wanted.

Notably, Lesnik v. Eisenmann SE, No. 16-CV-01120-LHK, 2018 WL 4700342, at *13 (N.D. Cal. Oct. 1, 2018) found that "Rule 9(b) does not apply to Plaintiffs' § 1595 claim because it does not sound in fraud." See Aragon v. Che Ku, 277 F. Supp. 3d 1055, 1061 (D. Minn. 2017).

The matter of Noble v. Weinstein, No. 17 CIV. 9260 (RWS), 2018 WL 3863452 (S.D.N.Y. Aug. 14, 2018) upheld the TPVA claims against HW, but dismissed the TPVA claims as against Robert Weinstein. However, the detailed factual allegations herein force a different result because unlike in Noble, the role of all Defendants aiding and abetting the conduct of HW is extensively pled and must be accepted as true.

Noble does provide for a "broad interpretation" of the statute since it is remedial in nature. Additionally, the Court in Noble recognized "that broad, expansive language is employed … Congress's use of the word "whoever" and its repeated use of the word "any" "does not lend itself to restrictive interpretation." United States v. Todd, 627 F.3d 329, 336 (9th Cir. 2010) (Smith, M., *concurring*) ("[Section 1591] allows for a conviction even where the defendant did not personally use force, fraud or coercion," so long as he knew such means would be used).

The Court in Huett v. Weinstein, 2:18-cv-06012 (SVW)(November 5, 2018) (Exhibit 3) which also denied summary judgment to HW under a TWC theory, did not rule on Robert Weinstein's liability, and neither Noble nor Huett discussed TWC liability, as said entities were still stayed by the pending Bankruptcy, presumably. The Court in Huett also found that the statute is broad in nature:

> there are reasons to believe that Sections 1591 and 1595 should be interpreted broadly. First, Section 1595 is a remedial provision that permits civil actions for damages under Section 1591. The Supreme Court has recognized a "canon of construction" that remedial statutes should be liberally construed. *Peyton v. Rowe*, 391 U.S. 54,

> 65 (1968). Second, Sections 1591 and 1595 utilize expansive language with words and phrases such as "whoever," "any means," and "any combination of such means."

Similarly, the Court in United States v. Estrada-Tepal, 57 F. Supp. 3d 164 (E.D.N.Y. 2014), declared that it "finds 18 U.S.C. § 1591 plain and unambiguous" and therefore applied the statute according to its plain language in simple terms, without an evaluation of the statutory purpose or resort to legislative history:

> The plain language of the statute requires only that a person have knowledge that he or she is committing any of the seven prohibited actions enumerated in 18 U.S.C. §1591(a)(1) and knowledge, or reckless disregard of the fact, that a person subject to any of the prohibited actions will engage in an underage or coerced commercial sex act.

Likewise, United States v. Townsend, 521 Fed. Appx. 904 (11th Cir. 2013), found that irrespective of the initial conceptualized purpose of the statute, "[t]he statutory language [of § 1591] is broader than this purpose. By its plain terms, § 1591(a) criminalizes trafficking in 'person[s],' not just in slaves or women from other countries."

The statutes at issue apply to TWC, as it applies to corporate entities. Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd., No. SACV101172AGMLGX, 2011 WL 13153190, at *10 (C.D. Cal. 2011) ("§1595 allows liability against "whoever knowingly benefits" from a TVPA violation. Under the Dictionary Act, "the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.1 U.S.C. § 1."); Novoa v. GEO Grp., Inc., No. EDCV172514JGBSHKX, 2018 WL 4057814 (C.D. Cal. 2018) ("Defendant argues TVPA does not apply to a corporate defendant … However, the Court already found "no basis for Defendant's proposition that a federal detention center run by a private entity is excluded from the reach of the TVPA").

**TIMELINESS OF NEW YORK INCIDENT UNDER FIVE YEAR STATUTE OF LIMITATIONS**

Defendants all state that the statute of limitations for assault is one year. That deadline is not applicable to sexual assaults. CPLR §213-c allows for a five-year statute of limitation for acts that violate N.Y. Penal Law § 130.35 and §130.50. The former states in pertinent part: "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person: 1. By forcible compulsion." N.Y. Penal Law § 130.50 states in pertinent part: "A person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person: 1. By forcible compulsion".

Plaintiff has alleged that Harvey Weinstein forced plaintiff to perform oral sex on December 20, 2012, in New York (¶41). This fits squarely within N.Y. Penal Law § 130.50. The Summons with Notice was filed on December 20, 2017 (Exhibit 4), exactly five years later, and therefore within the statute of limitations.[8]

Of note, NY Penal Law §20.20 provides for direct liability on a corporation, stating:

> 2.   A corporation is guilty of an offense when:
> (a)  The conduct constituting the offense consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by law; or
> (b)  The conduct constituting the offense is engaged in, authorized, solicited, requested, commanded, or recklessly tolerated by the board of directors or by a high managerial agent acting within the scope of his employment and in behalf of the corporation;  or
> (c)  The conduct constituting the offense is engaged in by an agent of the corporation while acting within the scope of his employment and in behalf of the corporation, and the offense is (i) a misdemeanor or a violation, (ii) one defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation, or (iii) any offense set forth in title twenty-seven of article seventy-one of the environmental conservation law.

---

[8] See NY GCL §20 "The day from which any specified period of time is reckoned shall be excluded in making the reckoning". Parris v. Hirtenfeld, 7 Misc. 3d 1024(A) (N.Y. Sup. Ct. 2005) ("injuries were sustained on January 18, 1994. Three years from that date would be January 18, 1997…". See NY CPLR 203(f) (amending pleading does not nullify timeliness).

All three have relevance. (b) is relevant as the conduct was performed by HW himself, and was tolerated as a business decision by the Board of Directors, Robert Weinstein, TWC and HW himself. Therefore, not only is HW implicated by the five-year statute of limitations, but TWC and the Board of Directors are, as well. (a) is relevant since this entire sex scheme was undertaken in the scope of employment of TWC, as will be discussed below. (c) is relevant given that these facilitating acts were committed in the scope of employment, as described herein.

### TIMELINESS OF MALAYSIA INCIDENT UNDER NEW YORK STATE'S FIVE YEAR STATUTE OF LIMITATIONS

Defendants' memoranda of law limits itself to discussing New York law and California law. Since New York is the forum state of this action, and no one has argued otherwise to date, New York law may also apply to incidents that occurred in Malaysia. Soojung Jang v. Trustees of St. Johnsbury Acad., No. 2:17-CV-162-JMC, 2018 WL 3352923, at *8–9 (D. Vt. July 9, 2018) ("the parties impliedly consent to the law of the forum state"); Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239 (2d Cir. 1989) (concluding New York law should apply in lieu of Iranian law because parties' briefs relied on New York law and "implied consent to use a forum's law is sufficient to establish choice of law"); Larsen v. A.C. Carpenter, Inc., 620 F. Supp. 1084 (E.D.N.Y. 1985), aff'd, 800 F.2d 1128 (2d Cir. 1986) ("By their conduct, the parties have impliedly consented to an adjudication under this forum's jurisprudence").

Here, plaintiff has alleged a sexual assault/rape that occurred on May 29, 2014, in Malaysia (¶43). Plaintiff contends that the law of New York and its five-year statute of limitations pursuant to CPLR §213-c should apply.

The Second Circuit in Bristol–Myers Squibb Co. v. Matrix Labs. Ltd., 655 F. App'x 9, 13 (2d Cir. 2016) shows that, at the very least, New York law cannot be ruled out at this stage:

> Numerous district courts in this Circuit have concluded that choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage ... Such a choice-of-law determination is premature on this motion to dismiss, since the record lacks facts necessary to conduct the context-specific 'center of gravity' or 'grouping of contacts' analysis required by New York's choice-of-law principles.

It would be especially early to determine this at this stage given that defendants have not even raised the issue, and if anything, have impliedly consented to New York law applying to this occurrence.

### TIMELINESS OF ONTARIO INCIDENT

Plaintiff contends that Ontario law should apply to plaintiff's claim of sexual assault that took place in Toronto in September, 2010 (¶36). By disclosing plaintiff's intention to rely on Ontario law in opposition to pre-answer motions to dismiss, plaintiff is timely raising this reliance.

Bristol–Myers Squibb Co. v. Matrix Labs. Ltd., 655 F. App'x 9, 11–12 (2d Cir. 2016) provides:

> As a preliminary matter, we emphasize that BMS was not required to identify in the SAC which law was applicable … "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." ... and *Iqbal* "concern[s] the *factual* allegations a complaint must contain to survive a motion to dismiss," those cases do not require BMS to identify the substantive legal basis for its claim, much less the law that governs an agreement to which it was not a party.

See DP Aviation v. Smith Industries, 268 F.3d 829 at 848 (9th Cir. 2001) ("Absent extenuating circumstances, notice of issues of foreign law that reasonably would be expected to be part of the proceedings should be provided in the pretrial conference and contentions about applicability of foreign law should be incorporated in the pretrial order. This gives parties ample opportunity to marshal resources pertinent to foreign law, which normally will not be as well-known as domestic law to parties and courts").

16

Courts have approved of the timeliness of notice of the intention to rely on non-U.S. law when made in a declaration and/or memorandum of law in conjunction with a pretrial motion raising particular aspects of foreign law, such as: (1) a motion to vacate order of attachment. Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB, 773 F.2d 452, 461 (2d Cir. 1985); (2) motion to dismiss. Krish v. Balasubramaniam, 2006 WL 2884794, at *3 (E.D. Ca. Oct. 10, 2006); (3) motion in limine seeking order recognizing certain principles of foreign law as controlling. Tome Engenharia E. Transportes, Ltd. v. Malk, 2003 WL 21372466, at *5 (N.D. Ill. June 21, 2003); (4) motion for summary judgment. Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc., 899 F. Supp. 1248, 1253 (S.D.N.Y. 1995); (5) in motion for summary judgment. Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc., 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002); (6) in response to document requests and requests for admissions and related interrogatories. Weiss v. Nat'l Westminster Bank, PLC, 2007 WL 1460933, at *5 (E.D.N.Y. May 14, 2007). Therefore, plaintiff has now timely raised this intention to rely on foreign law.

Ontario law dictates that there is no statute of limitations for sexual assault.[9] This law is part of the Limitation Act, which is discussed in the opinion of Jane Doe v. Weinstein, 2018 ONSC 1126 (Ontario Superior Ct.)(February 16, 2018)(Monahan, J.), which is attached herewith as Exhibit 1. Specifically, the law states:

> **No limitation period**
> **16 (1)** There is no limitation period in respect of, …
> **(h)** a proceeding based on a sexual assault;
> **(h.1)** a proceeding based on any other misconduct of a sexual nature if, at the time of the misconduct, the person with the claim was a minor or any of the following applied with respect to the relationship between the person with the claim and the person who committed the misconduct:
> (i) the other person had charge of the person with the claim,
> (ii) the other person was in a position of trust or authority in relation to the person with the claim,

---

[9] https://www.ontario.ca/laws/statute/02l24#BK18

(iii) the person with the claim was financially, emotionally, physically or otherwise dependent on the other person;

(**h.2**) a proceeding based on an assault if, at the time of the assault, the person with the claim was a minor or any of the following applied with respect to the relationship between the person with the claim and the person who committed the assault:

(i) they had an intimate relationship,

(ii) the person with the claim was financially, emotionally, physically or otherwise dependent on the other person;

…

(**1.3**) For greater certainty, clauses (1) (h), (h.1) and (h.2) are not limited in any way with respect to the claims that may be made in the proceeding in relation to the applicable act, which may include claims for negligence, for breach of fiduciary or any other duty or for vicarious liability. 2016, c. 2, Sched. 2, s. 4 (2).

It is submitted that all of these provisions apply herein, and pursuant to §1.3, would apply to claims against all defendants in this lawsuit. Pursuant to the law of aiding/abetting, negligent supervision/retention, and respondeat superior, all defendants are liable for failing to act despite the knowledge received, and due to their active participation in this venture, as described above.

### LIABILITY OF ALL DEFENDANTS UNDER THE DOCTRINE OF AIDING AND ABETTING

As described above, there are at least three timely pled sexual assaults (and TPVA). All Defendants have liability therefore under the doctrine of aider and abettor liability. Dist. Attorney of New York Cty. v. Republic of the Philippines, 307 F. Supp. 3d 171, 200 (S.D.N.Y. 2018) ("The statute of limitations for each aiding and abetting claim is determined by the underlying tort"); Pomerance v. McGrath, 124 A.D.3d 481, 484 (2015) ("A claim that a person aided and abetted a tort is governed by the same statute of limitations that is applicable to the underlying tort allegedly aided and abetted"). Therefore, just as these assaults were timely filed as to HW, they are timely filed as to any aider and abettor – the rest of the defendants herein.

Naughright v. Weiss, 826 F. Supp. 2d 676 (S.D.N.Y. 2011) sets forth the legal standard:

> New York specifically recognizes a cause of action for aiding and abetting an assault and battery. The elements of aiding and abetting are (1) a wrongful act producing an injury; (2) the defendant's awareness of a role as a part of an overall illegal or tortious activity

18

at the time he provides the assistance; and (3) the defendant's
knowing and substantial assistance in the principal violation.

See Lewis v. Triborough Bridge and Tunnel Auth., 77 F. Supp. 2d 376, 384 (S.D.N.Y 1999); ("the

case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures"

can give rise to liability as an aider and abettor); Magnotti v. Crossroads Healthcare Management,

LLC, No. 14-cv-6679 (ILG) (RML), 2016 U.S. Dist. LEXIS 69929 at *5-6 (E.D.N.Y 2016);

Ananiadis v. Mediterranean Gyros Prods., Inc., 151 A.D.3d 915, 918 (2nd Dept 2017).

As described in the Statement of Facts above, there is ample evidence of all defendants

aiding and abetting the subject sexual assaults. Therefore, all defendants are liable for at least these

three timely pled sexual assaults, and are additionally liable for all assaults under the doctrine of

continuous violation, discussed in the next section.

## APPLICABILITY OF NYC AND NYS HUMAN RIGHTS LAWS
## DUE TO PERVASIVE AND CONTINUING ASSAULTS IN NEW YORK

Defendants contend that since no assaults took place in New York within three years before

the filing of this lawsuit, that plaintiff's claims are time-barred. However, the misconduct towards

plaintiff was clearly ongoing and pervasive, spanning years, which demoralized Ms. Canosa, and

there were instances of assault within that three-year period (¶45, December 21, 2014, California

sexually assault; ¶46: June 24, 2015, Budapest, Hungary, assault and verbal abuse; ¶47: August

29, 2017, verbal threat). HW also subjected Canosa to treatment which while not constituting

sexual assault caused her to be treated less well than other employees because of her gender; all in

violation of N.Y. Executive Law § 290 et seq. and New York City Human Rights Law §8-107.

Plaintiff argues that the statute should be tolled by the continuing violation doctrine, which

"extends the limitations period for all claims of discriminatory acts committed under an ongoing

policy of discrimination even if those acts, standing alone, would have been barred by the statute

of limitations". Quinn v Green Tree Credit Corp., 159 F3d 759, 765 (2d Cir. 1998). It is well

recognized that "a series of separate acts ... collectively constitute one 'unlawful employment practice,'" such as a hostile work environment can be subject to the continuing violation doctrine. National R.R. Passenger Corp. v Morgan, 536 US 101 (2002). Here it is specifically alleged that there was an organization-wide pattern and practice of facilitating HW's longstanding conduct of sexually abusing and assaulting women.

Therefore, the continuing violation doctrine may be relied upon to bring this matter within the statute of limitations. Lopez v. Annucci, 690 F. App'x 56, 58–59 (2d Cir. 2017) ("The continuing violation doctrine allows a plaintiff to challenge acts of misconduct occurring outside the statute of limitations period if at least one act of the ongoing misconduct occurred within the limitations period"); Tejada v. LittleCity Realty LLC, 308 F. Supp. 3d 724, 731 (E.D.N.Y. 2018) ("The continuing violations doctrine may be applied to New York City Human Rights Laws"); Staff v. Pall Corp., 233 F.Supp.2d 516, 527 (S.D.N.Y. 2002), aff'd, 76 Fed.Appx. 366 (2d Cir. 2003) (applying the continuing violations doctrine to New York State Human Rights Law); Blake v. Bronx Lebanon Hospt. Ctr., No. 02 CIV. 3827 (CBM), 2003 WL 21910867, at *6 (S.D.N.Y. Aug. 11, 2003) ("The court finds the [continuing violation doctrine] ... applicable to the City Human Rights Laws.").

The NYS/NYC Human Rights were violated by all defendants herein. Plaintiff has alleged being an employee of defendants (¶334).

As discussed at length in the Statement of Facts, above, defendants had a significant part in the sexual assaults of Ms. Canosa; they not only allowed it to happen, but facilitated the happening of the attacks. Under these circumstances, defendants have liability pursuant to these protective laws. Totem Taxi, Inc. v. New York State Human Rights Appeal Bd., 65 N.Y.2d 300, 305 (1985) ("The employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it"); Doe v. State, 89

A.D.3d 787, 788 (2nd Dept. 2011) ("[a]n employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it' …   It is only after an employer knows or should have known of improper discriminatory conduct that it can "undertake or fail to undertake action which may be construed as condoning the improper conduct").

Defendants are further liable under this section pursuant to the doctrine of aider and abettor liability. Maher v. All. Mortg. Banking Corp., 650 F. Supp. 2d 249, 261 (E.D.N.Y. 2009) ("Defendant concedes that an individual can be held liable pursuant to the NYSHRL § 296(6) as an aider and abettor"); Miotto v. Yonkers Pub. Sch., 534 F. Supp. 2d 422, 428–29 (S.D.N.Y. 2008)("Under the aiding and abetting provision of NYHRL, an employer can be held liable for an employee's discriminatory act if the employer encouraged, condoned, or approved it"); Greene v. St. Elizabeth's Hosp., 66 N.Y.2d 684, 496 N.Y.S.2d 411, 487 N.E.2d 268 (1985). ("Condonation ... contemplates a knowing, after-the-fact forgiveness or acceptance of an offense. An employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation"); Melendez v. Int'l Serv. Sys., Inc., 1999 WL 187071 (S.D.N.Y. Apr.6, 1999) (finding that plaintiff's allegations, that he reported his discriminatory treatment at the hands of individual employees to numerous people up the chain of command in the management of the company who took no remedial action, was sufficient to plead that the employer acquiesced or subsequently condoned the discriminatory conduct); Lewis v. Triborough, 77 F.Supp.2d 376 (S.D.N.Y. 1999) ("[A] supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL § 296(6)."); Hart v. Sullivan, 84 A.D.2d 865 (3rd Dept. 1981) ("To resist a motion to dismiss, the complaint must allege that the employer had knowledge or acquiesced in the discriminatory conduct of a supervisor or co-worker.").

Where, as here, the perpetrator is the highest-level employee, the company-employer is further liable. Father Belle Community Center v NYSDHR on Complaint of King, 221 AD2d 44, (4th Dept 1996) ("a corporate defendant may be held directly liable for the conduct of an alleged harasser who is a high-level managerial employee without regard to whether the employer condoned the conduct"); McRedmond v Sutton Place Restaurant and Bar, Inc., 95 AD3d 671, 945 NYS2d 35 (1st Dept. 2012) (suggesting that liability may be imposed on a corporate defendant for the misconduct of a supervisor "based on the nexus between [the wrongdoer's] supervisory authority and his discriminatory conduct"); Sier v Jacobs Persinger & Parker, 276 AD2d 401, 714 NYS2d 283 (1st Dept. 2000) (employer liable for hostile environment created by law firm partner who assigned work to plaintiff, voted for her termination, and was responsible for her job references).

Certainly, where an employer should know about the misconduct, liability can additionally be assessed. Tidball v Schenectady City School Dist., 122 AD3d 1131 (3rd Dept. 2014); Pace v Ogden Services Corp., 257 AD2d 101 (3rd Dept. 1999); Lumberland v NYSDHR, 229 AD2d 631 (3rd Dept. 1996). It cannot be seriously disputed that Defendants settled numerous sexual assault or harassment claims involving HW for decades[10] and yet the other Defendants did nothing to terminate or discipline him for this conduct until he was finally publicly unmasked in October 2017[11]. Instead it was accepted as "Harvey being Harvey."

## SCOPE OF EMPLOYMENT OF HARVEY WEINSTEIN AND TWC'S ACTIONS

There are two aspects to the issue of scope of employment in this matter. Harvey Weinstein, and the employees of TWC who aided him. As the head of the company, HW's actions speak for

---

[10] https://www.nytimes.com/2017/10/05/us/harvey-weinstein-harassment-allegations.html
[11] https://www.newyorker.com/news/news-desk/from-aggressive-overtures-to-sexual-assault-harvey-weinsteins-accusers-tell-their-stories

the company; he directed what the company is intended for in the first place, and he is the one who made the business of this company about serving himself. The operation that HW set up, and the well-tuned machine that he put in place, is the first of its kind. Therefore, although generally sexual assaults are deemed, by law, not within the scope of employment, this matter presents a matter of first impression, and is the exception. A company is what you make it, and in this circumstance, the company was centered around both facilitating sexual assaults and productions.

Certainly, given the gravity of the allegations herein, it would be premature to find the acts were not within the scope as a matter of law at this juncture. Riviello v. Waldron, 47 N.Y.2d 297, 303 (1979) ("because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury").

Due to the above arguments, including aider and abettor liability, HW is not the only one whose actions matter. The employees of TWC were acting in the scope of what they were hired to do for the company, and followed directives of their superiors in the company. Therefore, their actions aiding and abetting the assaults, as well as HW's own actions of assault, are all within the scope of what TWC was about.

The factors at issue are spelled out in Sachs v. Cantwell, No. 10 CIV. 1663 JPO, 2012 WL 3822220, at *17–18 (S.D.N.Y. Sept. 4, 2012):

> In considering whether a particular act falls within an employee's scope of employment, New York courts look to five factors: [1] the connection between the time, place and occasion for the act, [2] the history of the relationship between employer and employee as spelled out in actual practice, [3] whether the act is one commonly done by such an employee, [4] the extent of departure from normal methods of performance; [5] and whether the specific act was one that the employer could reasonably have anticipated.

Ultimately, as described in the Statement of Facts above, TWC and all defendants benefitted from being the ones to facilitate HW's sexual conquests, as HW would in return assure the financial success of defendants; everyone had what to gain here, and they did, until it all came crashing down. Therefore, the acts were both in the scope of employment, but in the furtherance of employment. Chapin Home for the Aging v. McKimm, No. 11-CV-667 FB RER, 2013 WL 948110, at *5 (E.D.N.Y. Mar. 11, 2013) ("in the case of intentional torts, like fraud, the plaintiff must show that the tort was committed in the employer's service. *See Lombardo v. Mastec N. Am., Inc.,* 893 N.Y.S.2d 78, 80 (2d Dep't 2009) ("[Vicarious] liability will not attach for torts committed by an employee who is acting solely for personal motives unrelated to the furtherance of the employee's business."); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 756 (1998) ("The Restatement defines conduct, including an intentional tort, to be within the scope of employment when "actuated, at least in part, by a purpose to serve the [employer]," even if it is forbidden by the employer. Restatement §§ 228(1)(c), 230. For example, when a salesperson lies to a customer to make a sale, the tortious conduct is within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies").

This case is a tragic example of a business being utilized as a front for the wrongful conduct of a principal. Had HW not had the imprimatur of TWC and its power in the entertainment industry he would not have been able to engage in his conduct. Significantly, on each and every occasion that Plaintiff was assaulted, she was lured to her attack based on the ostensible business of TWC.

## DIRECTOR LIABILITY

As described above, the director defendants aided and abetted sexual misconduct. The directors have additional liable by virtue of their bad faith in acting on behalf of TWC. Marasco v. Am. Expediting Co., Inc., No. 16CV0232PKCJO, 2018 WL 2074154,  (E.D.N.Y. 2018) states:

> "absent bad faith or fraud, corporate officers and directors acting within the scope of their employment cannot be held personally liable for ... tortious acts committed by their corporations." … He is also right that to withstand the instant motion to dismiss, Marasco must adequately plead "facts showing that [Finnegan] participated, directed, w[as] aware of, or benefitted from, the actions on which he bases his [conversion claim]."

See Rella v. N. Atl. Marine, Ltd., No. 02 CIV. 8573(GEL), 2004 WL 1418021, at

*9 (S.D.N.Y. June 23, 2004).

The scope of the inactions by the directors, even in the face of clear evidence of ongoing sexual misconduct by the principal of TWC, is evidence of clear bad faith (See Statement of Facts, above). The directors complain that there are no facts alleged, and any that are are only alleged to the group of directors as a whole, and are not specific as to each. However, the Statement of Facts demonstrates many facts that support director knowledge, inaction and even coverup. While many of the allegations point to the directors as a whole and do not specify specific actions by each director, that is because much of the liability regards inactions in the face of knowledge, which is the same as to all directors, knowledge of which is secreted in the documents currently in the possession of the Defendants.

### INAPPLICABILITY OF WORKERS COMPENSATION LAW

Defendants do not offer an explanation as to why the New York workers compensation law would be applicable to a California resident such as Ms. Canosa. Additionally, intentional acts are not covered. Reed v. Paramount Wire Co., 2005 WL 1476455 (S.D.N.Y. June 21, 2005).

### REQUEST FOR LEAVE TO REPLEAD

If the Court finds that any causes of action herein were inadequately pled, plaintiff requests leave to file a second amended complaint, as the instant motions were made solely on the grounds of FRCP §12(b)(6). Additionally, TWC defendants have only had to file one motion to dismiss.

WHEREFORE, Defendants motions should be denied in their entirety.

Dated: New York, NY
         November 8, 2018

RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorneys for Plaintiff

_____
By:     Thomas P. Giuffra (TG1274)
551 Fifth Avenue, 29th Floor
New York, NY 10176
Tel: (212) 684-1880
Fax: (212) 689-8156
tgiuffra@rheingoldlaw.com


RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorneys for Plaintiff

_____
By:     Jeremy A. Hellman (JH6372)
551 Fifth Avenue, 29th Floor
New York, NY 10176
Tel: (212) 684-1880
Fax: (212) 689-8156
jhellman@rheingoldlaw.com

26